UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VALERIO SANDERS, JANEKA HICKS, KENNETH JENNINGS, and KEVIN RINCK,<br><br>   Plaintiffs,<br><br>  v.<br><br>JGWPT HOLDINGS, INC., JGWPT HOLDINGS, LLC, J.G. WENTWORTH LLC, PEACHHI, LLC, PEACH HOLDINGS, INC., PEACHTREE FINANCIAL SOLUTIONS, LLC, PEACHTREE SETTLEMENT FUNDING LLC, SETTLEMENT FUNDING, LLC d/b/a PEACHTREE SETTLEMENT FUNDING, BRIAN P. MACK, and THE MACK LAW GROUP, P.C.,<br><br>   Defendants. | No. 14 C 9188<br><br>Judge Sara L. Ellis |

## OPINION AND ORDER

Plaintiffs Valerio Sanders, Janeka Hicks, Kenneth Jennings, and Kevin Rinck bring this putative class action against certain entities that purchase portions of settlement agreements for lump sum amounts, as well as the entities' lawyers, for an alleged conspiracy to induce Plaintiffs to transfer their deferred payments and to defraud the Illinois courts into approving these transfers. Before the Court are three motions to dismiss. Defendants Brian P. Mack and The Mack Law Group, P.C. (collectively, the "Mack Defendants") move to dismiss [63] all claims against them in the Second Amended Complaint ("Complaint"). Defendants JGWPT Holdings, Inc., JGWPT Holdings, LLC, J.G. Wentworth, LLC, PeachHI, LLC, Peach Holdings, Inc., Peachtree Financial Solutions, LLC, and Peachtree Settlement Funding LLC (collectively, the "JGWPT Defendants") similarly move to dismiss all claims [65]. Defendant Settlement

Funding, LLC d/b/a Peachtree Settlement Funding ("Settlement Funding") moves to dismiss the claims of Plaintiffs Janeka Hicks and Ramon Rosario on behalf of Tony Cook, deceased, or to transfer their claims to the Northern District of Illinois [67]. Since this motion was filed, Plaintiff Rosario has voluntarily dismissed his claims [76] and the case has been transferred to this Court.

For the following reasons, the Court finds that it does not have subject-matter jurisdiction over this matter. The case is therefore remanded to the Circuit Court of St. Clair County, Illinois, pursuant to 28 U.S.C. § 1447(c).

## BACKGROUND

**A.  Procedural Background**

Plaintiffs initially filed suit in the Circuit Court of St. Clair County, Illinois, Twentieth Judicial District. Defendants then removed the case to the Southern District of Illinois. Plaintiffs filed a motion to remand, which was withdrawn. The JGWPT Defendants requested and were granted a motion to transfer venue to this district, while Settlement Funding simultaneously filed, in this district, a separate motion to compel arbitration against Plaintiffs Sanders, Jennings, and Rinck based on the structured settlements and to enjoin the federal proceedings. *Settlement Funding, LLC v. Sanders*, No. 14 C 6266. The two cases were deemed related and assigned to this Court.

Plaintiffs have pleaded jurisdiction pursuant to 28 U.S.C. § 1331 and the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

**B.     Factual Background**[1]

Defendants in this putative class action are entities[2] engaged in the business of purchasing deferred payment annuities ("structured settlements") and their attorneys. Plaintiffs were beneficiaries of structured settlement contracts. Such settlement contracts often include a "Qualified Assignment, Release and Pledge Agreement," which conveys tax benefits to the payee—i.e. with such a qualified assignment agreement, the periodic payments received from the structured settlement are "tax-free" for the beneficiary. Because of these tax benefits, many structured settlement agreements contain anti-assignment clauses that prohibit the beneficiary from transferring or assigning their payments. The named Plaintiffs are beneficiaries of structured settlement agreements that contain non-assignment provisions.

Defendants directly solicited Plaintiffs or marketed themselves to Plaintiffs via television, radio, print advertising and the internet. Defendants' aim was to induce Plaintiffs to sell their structured settlement payments in exchange for a deeply discounted lump sum payment. The purchase of deferred payments for an amount discounted to present cash value is known as "factoring" and results in a payment far below the long-term value of the annuity. A factoring company may purchase structured settlement payments, but must pay a high tax penalty unless the transfer is approved in advance in a qualified state court order. Illinois passed the Structured Settlement Protection Act ("SSPA" or "the Act"), 215 Ill. Comp. Stat. § 153/1 *et seq.*, to facilitate the transfer of structured settlement payments.

---

[1] The facts in the background section are taken from Plaintiffs' Complaint and are presumed true for the purpose of considering Defendants' motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

[2] The Complaint contains detailed allegations about how Defendants have obscured their various corporate identities.

The SSPA was designed to protect individuals with structured settlement agreements from disreputable companies offering lump sum payments at a fraction of the settlements' actual value, "depriving victims and their families of the long-term financial security the structured settlements were designed to provide." *See Settlement Funding, LLC v. Brenston*, 998 N.E.2d 111, 119, 2013 IL App (4th) 120869, 375 Ill. Dec. 819 (2013). To this end, the Act requires that an individual seeking to transfer a portion of his or her settlement submit an application to the appropriate circuit court, which must make express findings that the transfer is in the best interest of the payee, that the payee has been advised in writing to seek independent professional advice, which the payee has either received or waived in writing, and that the transfer does not contravene any applicable statute or order of the court or other governmental authority. *See id.* at 119–20 (citing 215 Ill. Comp. Stat. §§ 153/15 & 152/25).

These kinds of transfers are often challenged by the insurer-payor and Illinois appellate courts routinely uphold anti-assignment clauses in the original settlement agreements, finding the circuit courts abused their discretion in approving transfers of settlements in which the parties agreed to such a restriction. *See, e.g.*, *In re Foreman*, 850 N.E.2d 387, 394, 365 Ill. App. 3d 608, 302 Ill. Dec. 950 (2006); *In re Nitz*, 739 N.E.2d 93, 105, 317 Ill. App. 3d 119, 250 Ill. Dec. 632 (2000). In a recent case, the Fourth District found that the funding company (and one of the Defendants in this case) committed fraud on the trial court by obtaining transfer orders when the underlying settlement agreement contained an anti-assignment clause and therefore the transfer orders were *void ab initio*. *Brenston*, 998 N.E.2d at 123. There the court remanded so that the trial court could make the plaintiff whole. *Id.*

Plaintiffs claim that Defendants and their lawyers conspired to defraud Plaintiffs and the Illinois courts by pushing through transfer orders when they knew the anti-assignment clauses in

Plaintiffs' settlement agreements made those payments non-transferable. Defendants assured Plaintiffs that they would explain the court-approval process to the Plaintiffs and shepherd them through the courts to obtain the transfer orders. Defendant Brian Mack then filed the necessary legal paperwork for the petition to transfer settlement rights.

Plaintiffs bring claims against Defendants, the solicitors and purchasers of the structured settlements, and the attorney and his law firm involved in presenting the transactions to the Illinois state courts for approval. Plaintiffs allege breach of fiduciary duty (Count I), tortious interference with contract (Count II), unjust enrichment (Count III), violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961(c) (Count IV) and § 1961(d) (Count V), civil conspiracy (Count VI), joint enterprise (Count VII), and conversion (Count VIII).

## ANALYSIS

At the core of Plaintiffs' allegations is Defendants' purported "joint enterprise" to commit fraud on the Illinois state courts by asking those courts to enter orders approving the transfer of settlements when the settlement agreements contained anti-assignment clauses. Plaintiffs claim these transfers were in violation of the SSPA and that Defendants have committed a vast fraud on the courts by researching judges and attorneys in particular Illinois districts to "develop locations" to request these illegal transfers. Plaintiffs assert these transfers were *void ab initio*, that Defendants knew these orders were illegal but pushed them through anyway, and therefore that Defendants have committed various state law torts against Plaintiffs and been unjustly enriched. Plaintiffs seek punitive and "compensatory damages for Plaintiffs' individual claims related to their losses as a result of the illegal and fraudulent transfer of his or her deferred payments," punitive and compensatory damages on behalf of the class, treble

5

damages under RICO, costs and attorneys' fees, and injunctive relief "to prohibit [Defendants] from continuing to defraud the class and the courts of Illinois." Compl. at 62–63.

This Court has an independent responsibility to satisfy itself that it has subject matter jurisdiction over an action. *See Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 645–46 (7th Cir. 2011). Plaintiffs initially filed this case in the Circuit Court of St. Clair County and moved to remand after removal, although that request was withdrawn before the Southern District made any determination. In their current Complaint, Plaintiffs assert federal jurisdiction is proper under RICO and the Class Action Fairness Act. However, both parties touch on *Rooker-Feldman* abstention in their dismissal briefs, and a thorough review of the Complaint convinces the Court that it must "decline to exercise equitable jurisdiction over matters within its statutory subject matter jurisdiction" because Plaintiffs are asking the Court to review and nullify the state court transfer orders. *See Myers v. Gen. Motors Corp.*, No. 11 C 8703, 2012 WL 3062013, at *2 (N.D. Ill. July 25, 2012) (citation omitted) (internal quotation marks omitted) (remanding case attacking structured settlement transfer orders).

Under *Rooker-Feldman*, "a federal district court has no power to hear cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Dawaji v. Kohlhoss*, No. 13 C 6404, 2014 WL 4913741, at *2 (N.D. Ill. Sept. 30, 2014) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed 2d 454 (2005)) (internal quotation marks omitted). Federal review is barred when the plaintiff requests that the federal court "overturn an adverse state court judgment" or when the federal claims "not raised in the state court or [that] do not on their face require review of the state court's decision" are nonetheless "inextricably intertwined" with the state court

6

judgment. *See Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012); *see also Dawaji*, 2014 WL 4913741, at *3 & n.4 (collecting Seventh Circuit cases approving the "inextricably intertwined" doctrine). Whether the federal claim is "inextricably intertwined" "hinges on whether it alleges that the supposed injury was caused by the state court judgment, or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Brown*, 668 F.3d at 442. Once a court has determined the claim is "inextricably intertwined" with the state court judgment, the court must decide whether the plaintiff had a "reasonable opportunity to raise the issue in state court proceedings." *Id.* If so, the court should not exercise jurisdiction. *Id.*

As another district court in this Circuit has recently and thoroughly explained, the Seventh Circuit has a long line of precedents holding that "claims that the federal plaintiff was harmed by a state court judgment procured through fraud or other misconduct committed by the federal defendant" are "inextricably intertwined" with the state court judgment and barred by *Rooker-Feldman*. *Dawaji*, 2014 WL 4913741, at *4 (reviewing abstention cases involving federal civil rights conspiracies based on alleged fraud in a foreclosure judgment, damages for liquor license revocation, and misrepresentations to obtain custody orders). That is exactly Plaintiffs' claim here: that Defendants, working together, procured transfer orders through fraudulent and illegal means, perpetrating an elaborate fraud on the Illinois circuit courts. In order to find a RICO conspiracy or any of the state court claims, this Court must find that the state court orders were fraudulently obtained and are therefore void.[3] Plaintiffs' damages request makes it clear that they are seeking a work-around of the state court orders: they request compensation for their losses as a result of the transfers, disgorgement of the transferred monies

---

[3] That the Plaintiffs pleaded that the Class Action Fairness Act provides the Court with subject matter jurisdiction is no obstacle to a *Rooker-Feldman* analysis. *See Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 818 (7th Cir. 2010) (affirming that *Rooker-Feldman* applies to proceedings under CAFA).

under an unjust enrichment theory, and punitive damages from Defendants for their role in securing those orders. All Plaintiffs' damages flow directly from the transfer orders—the accusations of conspiracy, joint enterprise, breach of contract and fiduciary duty, conversion and unjust enrichment are inextricably intertwined with the state court orders. *See id*.

Defendants argue that a recent Seventh Circuit case, *Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769 (7th Cir. 2014), precludes application of *Rooker-Feldman* when a party alleges fraudulent conduct resulting in an adverse state court judgment. In *Johnson*, the Seventh Circuit found that *Rooker-Feldman* did not bar a claim that a debt collector operating without an Illinois license violated the Illinois Consumer Fraud Act and committed common law torts of abuse of process and malicious prosecution as it attempted to collect. 748 F.3d at 773. Although the plaintiffs in that putative class action could not ask the district court to vacate the state default judgments against them, they could continue with their suit that sought "damages for a fraud that resulted in a judgment adverse to the plaintiff." *Id.* Judge Posner explained, "Such a suit does not seek to disturb the judgment of the state court, but to obtain damages for the unlawful conduct that misled the court into issuing judgment." *Id.*

There has been some recent confusion over the application of *Rooker-Feldman* to fraud claims, especially after *Johnson*, *see Dawaji*, 2014 WL 4913741, at *6 (noting "the Seventh Circuit's *Rooker-Feldman* jurisprudence is in some flux"), but the Seventh Circuit has just offered some additional guidance. In *Iqbal v. Patel*, --- F.3d ----, 2015 WL 859541 (7th Cir. Mar. 2, 2015), the Seventh Circuit reversed the *Rooker-Feldman* remand of a RICO conspiracy claim by a service station owner against his employee and gasoline provider. *Id.* at *3. The owner alleged that the employee, recommended to him by the gasoline provider, conspired with the gasoline provider to "set up" the owner so they could take over his business. *Id.* at *2. The

8

employee was responsible for paying the gasoline provider's bills, but did not and the provider sued. *Id.* at *1. A judgment was entered against the owner, who did not pay the judgment. *Id.* A settlement was reached, with the owner giving the provider a note secured by a mortgage on the service station. *Id.* When the owner again did not pay, a second judgment was entered and the property was sold in foreclosure. *Id.* The Seventh Circuit found that *Rooker-Feldman* did not allow the district court to overturn the state court foreclosure judgment; however, the owner could maintain a RICO claim for the pre-litigation conspiracy. *Id.* at *1, 3.

Specifically addressing the question of whether *Rooker-Feldman* applies to fraud (either out of court or during the litigation), the Seventh Circuit stated:

> The *Rooker-Feldman* doctrine is concerned not with *why* a state court's judgment might be mistaken (fraud is one such reason; there are many others) but with *which federal court* is authorized to intervene. The reason a litigant gives for contesting the state court's decision cannot endow a federal district court with authority; that's what it means to say that the *Rooker-Feldman* doctrine is jurisdictional.

*Id.* at *1 (citation omitted). Judge Easterbrook went on to clarify the effect of *Johnson*, which he explained did not implicitly overrule longstanding Seventh Circuit precedent that *Rooker-Feldman* abstention may still be warranted even if fraud is alleged. *Id.* at *2. Rather, *Johnson* made "a different point":

> [I]f a plaintiff contends that out-of-court events have caused injury that the state judiciary failed to detect and repair, then a district court has jurisdiction—but only to the extent of dealing with that injury. . . . [T]he federal court cannot set aside the state court's judgment.

*Id.* The court went on to find that the plaintiff in *Iqbal* did allege an injury separate from the debt and foreclosure judgments against him: that his employee and services provider conspired to "set [him] up" and take over his business, which was an out-of-court conspiracy of "pre-litigation fraud" that predated the state court's judgments and was therefore reviewable by the

9

district court. *Id.* *Iqbal* thus directs the Court to examine "what injury the plaintiff asks the federal court to redress, not whether the injury is 'intertwined' with something else." *Id.*

Looking specifically at the injury alleged here, Plaintiffs have not presented the Court with anything that is separate from the entry of the transfer orders themselves. All Plaintiffs' damages are a result of Defendants' actions in securing the transfer orders and from the transfer of annuity payments under the orders. Plaintiffs plead a conspiracy to obtain the fraudulent transfer orders. Compl. ¶¶ 32(b)(1) & (3) (Defendants "engaged in a common scheme to defraud the Illinois courts by using the Illinois Structured Settlement Protection Act to obtain a 'Qualified Order'"). Defendants allegedly violated fiduciary duties through false statements to the Plaintiffs and the Illinois state courts that helped obtain those orders. *Id.* ¶¶ 32(b)(4)–(5) (Defendants "violated their fiduciary duties by failing to represent, or falsely representing, that Plaintiffs and the members of the putative class were not legally allowed to sell or encumber their structured settlements"). Defendants engaged in a "common pattern of fraud" "by fraudulently filing requests for approval of transfers in Illinois circuit courts" and "by filing false pleadings" and were unjustly enriched by receiving the funds "from sellers who could not have legally transferred their deferred payments." *Id.* ¶¶ 32(b)(6)–(11). All Plaintiffs' claimed injuries—from the conversion of their annuity payments, to the tortious interference with their structured settlement contracts, to their reliance on Defendants' assurances that they would explain the court process to them—spring from the petitions to transfer the settlement payments. There is no "extra-judicial" injury or "pre-litigation fraud": the fraud was the judicial transaction itself. For this Court to make a finding on that fraud would undermine the state court judgments approving the transfers. *See Brenston*, 998 N.E.2d at 119 ("a decision produced by a fraud on the court is essentially not a decision at all").

In *Iqbal*, the Seventh Circuit explained the conspiracy to "set up" the plaintiff pre-dated the state court judgments that found plaintiff in default and eventually approved foreclosure. 2015 WL 859541, at *2. *Iqbal* does not detail the conspiracy, but does state the gasoline provider had recommended the corrupt employee to the plaintiff and the two worked together to take over the business. *Id.* Under this reasoning, that the scheme's outcome was the foreclosure judgment is immaterial: the conspiracy's goal was to take plaintiff's gas station business and "reap the profits [plaintiff] anticipated." *Id.* In our case the end game of the alleged conspiracy was the fraudulent transfer orders and their associated tax benefits (under the facts as alleged, Defendants could have purchased the annuities without the transfer orders if they had been willing to take the tax hit). Plaintiffs plead some acts on the part of Defendants that precede the court action, for example that Defendants "research[ed] attorneys and judges in various Illinois districts to determine the best locations to file petitions despite their shared knowledge that the petitions had no relation to the venue that they ultimately selected," *id.* ¶ 49, and that Defendants directly or indirectly solicited the Plaintiffs to transfer their settlements, *id.* ¶ 68. However, these actions are all necessary steps toward entry of the court orders, not separate actions that can be interpreted as having created injuries that do not involve the court process. *Cf. Iqbal*, 2014 WL 859541, at *2 (*Rooker-Feldman* does not apply to "fraud that imposes extra-judicial injury"). Although recent Seventh Circuit precedent trends toward exercising federal subject matter jurisdiction, applying *Iqbal* to this case, the Court cannot find that Plaintiffs claim harm or damages that pre-date and are distinct from the transfer orders.[4]

---

[4] Similarly, the *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995), limiting principle does not apply here. As another court in this district recently discussed at length, *Nesse* counsels a district court not to apply *Rooker-Feldman* in certain limited circumstances, i.e. "*only* where the federal plaintiff alleges that the state court itself was or became corrupt, and *not* where the federal plaintiff alleges merely that its state court opponent or the opponent's lawyer was corrupt or committed fraud." *Dawaji*, 2014 WL 4913741,

To finish the *Rooker-Feldman* analysis, the Court determines whether Plaintiffs had a "reasonable opportunity" to raise their claims in state court. *Brown*, 668 F.3d at 442. Plaintiffs initially brought their complaint in St. Clair Circuit Court and have expressed their desire to have the state courts review and nullify these orders. Doc. 80 (stating "Plaintiffs' consistent belief that these proceedings are so hopelessly intertwined with the state court judgments that this Court should err in favor of remand in order to ensure that Plaintiffs have the benefit of having the transfer orders nullified"). Plaintiffs attempted to seek a remedy in the state courts by first filing there. *See Dawaji*, 2014 WL 4913741, at *4 (reasonable opportunity found when plaintiff did, in fact, present the issue to the state court). Furthermore, in Illinois "[a] void judgment may be attacked at any time or in any court, either directly or collaterally." *See Brenston*, 998 N.E.2d at 119 ("It has long been recognized that a court has the inherent power to inquire into the integrity of its own judgments and to vacate a judgment where it finds that a fraud perpetrated by a party or an officer of the court has interfered such that the judiciary cannot perform its impartial task of judging the case before it."). Therefore, this aspect of *Rooker-Feldman* abstention is also satisfied.

Therefore this Court will follow its fellow district court judges in finding that *Rooker-Feldman* prohibits its review of Plaintiffs' Complaint. *See Dawaji*, 2014 WL 4913741, at *4 (remanding § 1983 claim based on divorce court agreed order); *Myers*, 2012 WL 3062013, at *2 (remanding request to void transfer orders and breach of contract claim); *Hartford Life Ins. Co. v. Solomon*, 910 F. Supp. 2d 1075, 1082 (N.D. Ill. 2012) (remanding request to invalidate transfer order and breach of contract counterclaim and cross-claims).

---

at *5. Plaintiffs do not allege that the Illinois circuit courts were somehow corrupted, but rather that Defendants conspired to commit a fraud on those courts.

## CONCLUSION

Because this Court lacks subject matter jurisdiction over Plaintiffs' claims, this action is remanded to the Circuit Court of St. Clair County, Illinois. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). The case is terminated.

This disposition renders moot the motion by Petitioner Settlement Funding, LLC to compel arbitration [17] and Respondents Sanders, Jennings, Rinck's motion to dismiss [26] filed in related case No. 14 C 6266, *Settlement Funding, LLC v. Sanders*. That case is also terminated.

Dated: March 5, 2015

SARA L. ELLIS
United States District Judge