# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| VALERIO SANDERS, JANEKA HICKS, KENNETH JENNINGS, and KEVIN RINCK, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | No. 14 C 9188 |
| v. | ) ) | |
| | ) | Judge Sara L. Ellis |
| JGWPT HOLDINGS, INC., JGWPT HOLDINGS, LLC, J.G. WENTWORTH LLC, PEACHHI, LLC, PEACH HOLDINGS, INC., PEACHTREE FINANCIAL SOLUTIONS, LLC, PEACHTREE SETTLEMENT FUNDING LLC, SETTLEMENT FUNDING, LLC d/b/a PEACHTREE SETTLEMENT FUNDING, BRIAN P. MACK, and THE MACK LAW GROUP, P.C., | ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiffs Valerio Sanders, Janeka Hicks, Kenneth Jennings, and Kevin Rinck all were

beneficiaries of periodic annuity payments paid to them as part of structured settlement contracts

who transferred their rights to annuity payments in exchange for an upfront lump sum from

Defendants JGWPT Holdings, Inc., JGWPT Holdings, LLC, J.G. Wentworth, LLC, PeachHI,

LLC, Peach Holdings, Inc., Peachtree Financial Solutions, LLC, or Peachtree Settlement

Funding LLC (collectively, the "JGWPT Defendants") or Defendant Settlement Funding, LLC

d/b/a Peachtree Settlement Funding ("Settlement Funding, LLC"). The exchange took place by

way of "factoring" transactions approved by Illinois courts after Defendants Brian P. Mack and

The Mack Law Group, P.C. (collectively, the "Mack Defendants") filed petitions for court orders

approving the transactions. Plaintiffs allege that Defendants misled them and other unsuspecting

individuals into selling their annuity payments for less than they were worth, despite an anti-assignment clause in their structured settlement contracts, and wrongly obtained orders approving the transactions under the provisions of the Illinois Structured Settlement Protection Act ("SSPA"), 215 Ill. Comp. Stat. § 153/1 *et seq.* In their Second Amended Complaint, Plaintiffs bring federal claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), conspiracy to violate RICO, 18 U.S.C. § 1962(d), and state law claims for breach of fiduciary duty, tortious interference with contract, civil conspiracy, joint enterprise, conversion, and unjust enrichment.[1] The Mack Defendants [63] and JGWPT Defendants [65] have moved to dismiss all claims in the SAC, and Settlement Funding, LLC moves to dismiss the claims of Plaintiffs Janeka Hicks [67].[2] The Court grants in part and denies in part Defendants' motions: First, the Court dismisses Plaintiffs' claims with prejudice to the extent Plaintiffs allege that Illinois court orders approving Plaintiffs' factoring transactions are void and to the extent Plaintiffs claims are based on the propriety of the

---

[1] Sanders originally filed his claims in St. Clair County, Illinois. After the JGWPT Defendants removed the suit, Sanders filed an amended complaint in the U.S. District Court for the Southern District of Illinois. After Defendants moved to dismiss the First Amended Complaint, Sanders filed the Second Amended Complaint ("SAC"), which also added Hicks, Jennings, and Rinck as Plaintiffs. In the SAC, Plaintiffs have pleaded jurisdiction pursuant to 28 U.S.C. § 1331 and the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

Also named as a Plaintiff in the SAC was Ramon Rosario, who brought similar claims on behalf of Tony Cook, deceased. Rosario voluntarily dismissed his claims, Doc. 76, after Defendants' pending motions to dismiss, so Defendants' arguments to dismiss his claims are now moot.

After the Southern District of Illinois transferred Plaintiffs' suit to this district, Doc. 90, this case was reassigned to this Court via an agreed motion based on relatedness with *Settlement Funding, LLC v. Sanders, et al.*, Case No. 14-6266, in which a petition to compel arbitration of Sanders, Rinck, and Jennings' claims against Settlement Funding is currently pending. In its motion to dismiss the SAC, Settlement Funding, LLC also moved to transfer the Plaintiffs' lawsuit to the Northern District of Illinois. This case has already been transferred, so those arguments are now moot as well.

[2] The Court previously dismissed the SAC on subject matter jurisdiction grounds, Doc. 113, but the Seventh Circuit reversed that decision and remanded the case for further proceedings, *In re JGWPT Holdings, Inc.*, No. 15-8005 (7th Cir. April 9, 2015); *see also* Doc. 118.

petitions' venues and disclosures.  The Court also dismisses JGWPT Holdings, Inc., JGWPT

Holdings, LLC, and Peachtree Settlement Funding, LLC without prejudice to the extent they are

alleged to be liable for harms that occurred prior to their incorporation.  Further, the Court

dismisses Plaintiffs' RICO claims without prejudice because Plaintiffs have not sufficiently

alleged predicate acts to support a § 1962(c) or § 1962(d) claim against any Defendant.  Finally,

the Court dismisses Plaintiffs' unjust enrichment claims with prejudice because Plaintiffs admit

they cannot pursue the theory on which the claims rely, dismisses with prejudice Plaintiffs' joint

enterprise claims, which are duplicative of Plaintiffs' conspiracy claims, and dismisses Plaintiffs'

conversion claims without prejudice to the extent they allege conversion of fees, costs, and

attorney's fees associated with petitions for approval of factoring transactions.  Because of the

nature of the SAC and in the interests of judicial economy, the Court orders Plaintiffs to file a

Third Amended Complaint by September 2, 2016, in a manner consistent with the Court's

opinion and order.

## BACKGROUND[3]

Plaintiffs were beneficiaries of structured settlement contracts, which provide periodic

payments from annuities to satisfy settlement obligations.  Such settlement contracts often

include a "Qualified Assignment, Release and Pledge Agreement," which conveys tax benefits to

the payee—i.e. with such a qualified assignment agreement, the periodic payments received from

the structured settlement are "tax-free" for the beneficiary.  The settlement contracts and annuity

---

[3] The facts in the background section are taken from the SAC and exhibits attached thereto and are presumed true for the purpose of resolving Defendants' motions to dismiss.  *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).  A court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment.  *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009).  Where a document is referenced in the complaint and central to the plaintiff's claims, however, the Court may consider it in ruling on the motion to dismiss.  *Id.*  The Court may also take judicial notice of matters of public record.  *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997).

payment mechanism also provides tax benefits to the entity or entities on the other side of the payments—the payor of the annuity and the entity directing the payments to the payee receive favorable tax treatment on the payments. Because of these tax benefits, many structured settlement agreements contain anti-assignment clauses that prohibit the beneficiaries from transferring or assigning their payments. Plaintiffs' structured settlement agreements contain such anti-assignment provisions.

Defendants in this putative class action are entities engaged in the business of purchasing structured settlement annuity payments, as well as their attorneys. The purchase of deferred payments for an amount discounted to present cash value is known as "factoring"—it often results in the annuity recipient receiving a lump sum payment from the factoring company for far below the long-term value of the annuity. A factoring company may purchase structured settlement payments, but must pay a high tax penalty to the Internal Revenue Service ("IRS") unless the transfer is approved in advance by a state court in what is known as a "qualified" approval order. *See* 25 U.S.C. § 5891.

Illinois passed the SSPA to regulate the transfer of structured settlement payments. The SSPA requires that an individual seeking to transfer a portion of his or her settlement submit an application to the appropriate circuit court, which must make express findings that the transfer is in the best interest of the payee, that the payee has been advised in writing to seek independent professional advice, which the payee has either received or waived in writing, and that the transfer does not contravene any applicable statute or order of the court or other governmental authority. *See generally* 215 Ill. Comp. Stat. §§ 153/15 & 152/25.

Plaintiffs claim that Defendants and their lawyers conspired to defraud Plaintiffs and the Illinois courts by engaging in factoring transactions and obtaining orders approving the

transactions even though Defendants knew the anti-assignment clauses in Plaintiffs' settlement agreements made those payments non-transferable. Plaintiffs allege that the JGWPT Defendants and Settlement Funding, LLC[4] directly solicited Plaintiffs or marketed themselves to Plaintiffs via television, radio, print advertising and the internet in order to induce Plaintiffs to sell their structured settlement payments in exchange for a deeply discounted lump sum payment. Plaintiffs allege that Defendants assured Plaintiffs that they would guide Plaintiffs' through the court-approval process, and Mack then filed the necessary legal paperwork for the petition to transfer settlement rights. Finally, they allege that the court orders approving their transactions were illegal and void because of the anti-assignment clauses in their structured settlement contracts.

Sanders was the beneficiary of a structured settlement contract that contained a non-assignment clause. When he became an adult, he began receiving calls on his cell phone from one of the JGWPT entities. Settlement Funding, LLC sent him samples of checks to entice him to sell. Sanders contacted a JGWPT entity in order to enter a factoring transaction for a portion of his annuity. In September 2006, Sanders sold future annuity payments totaling $47,101.00 dollars to Settlement Funding, LLC in exchange for a payment of $36,475.92, less legal and processing fees. In April 2007, Sanders sold future annuity payments totaling $74,500.00 to Settlement Funding, LLC in exchange for a payment of $22,253.00, less $2,200.00 in legal and processing fees. In September 2007, Sanders sold future annuity payments totaling $65,500.00 dollars to Settlement Funding, LLC in exchange for a payment of $19,200.00, less legal and processing fees.

---

[4] The SAC defines JGWPT Holdings, Inc., JGWPT Holdings, LLC, J.G. Wentworth LLC, PeachHI, LLC, Peach Holdings, Inc., Peachtree Financial Solutions, LLC, Peachtree Settlement Funding LLC, and Settlement Funding, LLC d/b/a Peachtree Settlement Funding, as well as other named subsidiaries and partners of JGWPT Holdings, Inc. that are not parties in this lawsuit, as the "JGWPT entities." *See* Doc. 49 at ¶ 21.

Jennings also was the beneficiary of a structured settlement contract that contained a non-assignment clause. In May 2011, he sold Settlement Funding, LLC future annuity payments totaling $360,000 in exchange for a lump sum of $112,200.00, less processing fees.

Similarly, Rinck was the beneficiary of a structured settlement contract that contained a non-assignment clause, along with another non-assignment clause in the qualified assignment agreement set up to pay the settlement's annuity. Rinck contacted an entity known to him as "J.G. Wentworth" to sell a portion of his structured settlement, and J.G. Wentworth Originations, LLC, a Nevada company, purchased annuity payments from him. Rinck started receiving solicitations[5] from a company known to him as "Peachtree," who informed him that he could sell his payments to companies other than J.G. Wentworth Originations, LLC, and that it could assist him. In January 2011, Rinck sold future annuity payments totaling $145,000 to Settlement Funding, LLC in exchange for $90,205.10, minus fees and expenses.

Hicks was also the beneficiary of a structured settlement contract that contained a non-assignment clause. In December 2009, she sold a future annuity payment totaling $31,291.00 to Settlement Funding, LLC for $20,797.78, less processing and legal fees. In February 2010, she sold future annuity payments totaling $41,000.00 in exchange for a lump sum payment of $12,134.76, less legal and processing fees. In October 2010, she sold a future annuity payment totaling $10,000.00 for $2,542.14.

Mack and The Mack Law Group, P.C., drafted and filed the petitions requesting that Illinois courts approve all of Plaintiffs' factoring transactions with Settlement Funding, LLC. Plaintiffs allege that while Mack was working for Settlement Funding, LLC, he represented himself to be Plaintiffs' attorneys as well.

---

[5] Rinck does not specify the method of the solicitation.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB*, 649 F.3d at 615 (citation omitted). Rule 9(b) applies to "all averments of fraud, not claims of fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'— in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Id.*

## ANALYSIS

Plaintiffs bring claims against the solicitors and purchasers of the structured settlements, Settlement Funding, LLC and the JGWPT Defendants, and against the Mack Defendants, the

attorney and law firm involved in finalizing the paperwork for the factoring transactions and presenting the transactions to the Illinois state courts for approval. They allege breach of fiduciary duty (Count I), tortious interference with contract (Count II), unjust enrichment (Count III), violations of § 1962(c) (Count IV) and § 1962(d) (Count V) of RICO, civil conspiracy (Count VI), joint enterprise (Count VII), and conversion (Count VIII).

The JGWPT Defendants move to dismiss all claims against them, asserting: (1) Defendants JGWPT Holdings, Inc., JGWPT Holdings, LLC, and Peachtree Settlement Funding, LLC, were formed after most of the events described in the SAC; (2) the SAC impermissibly groups the JGWPT Defendants together and does not allege sufficient facts specific to each; (3) the SAC does not satisfy Rule 9(b); (4) all Sanders' claims and any claims based on Rinck's 2001 assignment are barred by statutes of limitations and Hick's RICO claims are barred by the statute of limitations; (5) the RICO § 1962(c) claim is insufficiently pleaded; (6) the RICO § 1962(d) claims fail because a viable underlying RICO claim has not been alleged; (7) Illinois does not recognize a cause of action for joint enterprise liability outside the personal injury context; (8) the conversion claim fails because Plaintiffs do not sufficiently describe the allegedly converted monies or allege that Defendants had no right to the same; (9) the unjust enrichment claim fails because it is not an independent cause of action, and, even if it were, Plaintiffs do not allege any duty that could support such a claim; (8) similarly, the breach of fiduciary duty claim fails because Plaintiffs do not establish the existence of any such duty as a matter of law; and (9) Plaintiffs are judicially estopped from sustaining a tortious interference of contract claim.

The Mack Defendants move to dismiss Plaintiffs' RICO claims, arguing that (1) the equitable principle of judicial estoppel bars Plaintiffs from taking the new and inconsistent

position in these proceedings that the state court entry of the structured settlements, to which they were willing participants, was a fraud on the court; (2) the predicate acts for all of Sanders' claims and Rinck's claims regarding his 2010 petition are outside the RICO four-year statute of limitations; (3) the alleged fraud and misrepresentation committed by the Mack Defendants were statements of law and legal opinions; (4) Plaintiffs have not alleged any false statements of fact on the part of the Mack Defendants because their representations regarding the effect of an anti-assignment clause and proper venue under the Act were correct under the SSPA, and the disclosures to Rinck and Hicks were not untimely; and (5) Plaintiffs' RICO claim fails under Rule 9(b). The Mack Defendants also move to dismiss Plaintiffs' state law claims arguing: (1) Sanders' claims are barred by the six-year statute of repose, (2) all the state law claims are barred by the two-year statute of limitations for claims against attorneys, (3) Illinois does not permit a civil cause of action for misconduct in a prior litigation, and (4) absolute litigation privilege bars these claims.

Settlement Funding moves to dismiss all of Hicks' claims as premised on an incorrect interpretation of the effect of anti-assignment clauses under the SSPA and because she cannot sustain an unjust enrichment claim against a party to the contract governing the parties' relationship.[6]

---

[6] The Mack Defendants filed a supplemental reply brief after remand from the Seventh Circuit, arguing that the SAC fails to state any claim because Courts may hear petitions for approval orders even if the factoring transaction involves structured settlement contracts with anti-assignment clauses, to which Plaintiffs responded in their own opposition brief, Doc. 127. The Mack Defendants and the JGWPT Defendants and Settlement Funding, LLC sought leave from the Court to file a further supplemental brief, which the Court granted, Doc. 135 & Doc. 162, and the parties briefed whether 2015 amendments to the SSPA precluded Plaintiffs' claims.

In support of their motions to dismiss, each Defendant incorporates almost every argument advanced by the other Defendants.[7] "Because [Plaintiffs] had an adequate opportunity to respond to all of the Defendants' motions, the Court can impugn the arguments made by any [D]efendant to all of the Defendants to the extent the arguments are equally effective at barring a claim." *Gluck v. WNIN Tri-State Pub. Media, Inc.*, 879 F. Supp. 2d 999, 1001 n.3 (S.D. Ind. 2012) (citing *Malak v. Associated Physicians, Inc.,* 784 F.2d 277, 280 (7th Cir. 1986)). Plaintiffs have responded to all Defendants' arguments in separate briefing, but in their responses Plaintiffs often contemplate the applicability of arguments to all Defendants. *See, e.g.*, Doc. 80 at 12, 14–15, 15–16. Save for Defendants' timing arguments, the individual Defendants' arguments regarding the SSPA and anti-assignment clauses, the RICO claims, and the state law claims are equally applicable to each Plaintiff's claims against each Defendant, so the Court extends consideration to all Defendants as appropriate.

The Court addresses Defendants' arguments about the effect of the SSPA and anti-assignment clauses first. The Court then turns to Defendants' statute of limitations arguments and Defendants' other general defenses. Finally, the Court turns to arguments concerning Plaintiffs' RICO and state law claims.

## I.      Factoring Transactions and Anti-Assignment Clauses in Structured Settlement Contracts

Defendants argue that the SAC must be dismissed because the anti-assignment clauses in Plaintiffs' structured settlement contracts do not preclude factoring transactions. Settlement Funding, LLC argues that the SAC relies on an improper interpretation of the SSPA and that the

---

[7] *See* Doc. 63 at 1 n.1 (Mack Defendants incorporating the JGWPT Defendants motion to dismiss arguments); Doc. 66 at 5 n.3 (JGWPT Defendants incorporating the Mack Defendants' arguments and Settlement Funding, LLC's argument III(B)(1)); Doc. 67 (Settlement Funding, LLC incorporating the JGWPT Defendants' Arguments III–X and the Mack Defendants' arguments against Hicks); *see also* Doc. 137 at 2 n.1 (Mack Defendants adopting supplemental arguments of the JGWPT Defendants and Settlement Funding, LLC); Doc. 145 (Mack Defendants adopting supplemental briefing reply).

SAC does not state a claim if the proper interpretation of the SSPA is applied to the alleged facts. The Mack Defendants likewise argue that Plaintiffs have not alleged that the Mack Defendants made any false statements because everything the Mack Defendants allegedly told Plaintiffs (and the Illinois courts hearing petitions for qualified approval orders) about factoring transactions are consistent with both the SSPA and Illinois law, including that the factoring transactions could be approved despite the presence of the anti-assignment clauses in the structured settlement contracts, that petitions could be filed in the selected venues, and that the Mack Defendants timely disclosed information to Plaintiffs about their rights.

A.    The SSPA

Plaintiffs allege that Defendants misrepresented to them that an Illinois court could approve their factoring transactions, contending that the anti-assignment clauses in their structured settlement contracts prevented the trial courts from hearing the petitions to approve the factoring transactions with Settlement Funding, LLC.  Plaintiffs allege the Illinois courts could not hear the approval transactions for their factoring transactions because the SSPA does not apply to factoring transactions involving structured settlement contracts with anti-assignment clauses.  *See Settlement Funding v. Brenston*, 998 N.E.2d 111, 123, 2013 IL App (4th) 120869, 375 Ill. Dec. 819 (2013) ("[SSPA] did not apply because of the antiassignment clause in the settlement agreement and the annuity contract[.]"); *see also In re Foreman*, 850 N.E.2d 387, 392, 365 Ill. App. 3d 608, 302 Ill. Dec. 950 (2006) (holding SSPA did not apply to petition for approval of factoring transaction involving structured settlement agreement containing enforceable anti-assignment provision); *In re Nitz*, 739 N.E.2d 93, 98, 317 Ill. App. 3d 119, 250 Ill. Dec. 632 (2000) ("Where a structured settlement agreement does not permit the payments to be assigned, the court's authority to act on a petition [under the SSPA] seeking approval of the

assignment of payments under such an agreement is not invoked, and the petition should be dismissed."). Therefore, according to Plaintiffs, the trial courts could not hear and approve the petitions, and Defendants' representations that a court could in fact hear the factoring transactions were false. *See Brenston*, 998 N.E.2d at 120–21.

Defendants argue that the SAC fails in its entirety because they did not misrepresent whether an Illinois court could hear the petitions for approval of Plaintiffs' factoring transactions. The Illinois Supreme Court has held that Illinois circuit courts are courts of general jurisdiction and do not need the legislature to provide them jurisdictional authority, and, as a result, dispositions are not void merely because the trial court's order did not follow the possibilities established by the Illinois legislature. *See People v. Castleberry*, 43 N.E.3d 932, 938, 2015 IL 116916, 398 Ill. Dec. 22 (2015); *see also Seidel v. Residential Funding Co., LLC*, 2016 WL 687732, 2016 IL App (2d) 150161-U, at *5 (2016) (recognizing abrogation of *Brenston*'s holding that circuit court could not hear petitions and that qualified approval orders were void because SSPA did not grant approving court the authority to approve the transactions). The SSPA did not need to grant the Illinois courts authority to hear the petitions—the Illinois courts always could entertain the petitions. *See Castleberry*, 43 N.E.3d at 938; *Seidel*, 2016 WL 687732, at *5; *accord Williams v. Colvin*, 2014 WL 1340233, No. 12 C 7852, at *9 (N.D. Ill. Mar. 31, 2014) (anti-assignment clauses in structured settlement contract and annuity contract did not mean that annuity payments were non-assignable by law based on predecessor of SSPA, instead the statute required judicial approval of any assignment). Thus, the Illinois Courts could hear the petitions to approve Plaintiffs' factoring transactions, and therefore Defendants did not make any misrepresentations in telling Plaintiffs this or filing petitions with the Court. As a result, Plaintiffs have not alleged misrepresentations based on the SSPA and any claims

dependent on such a misrepresentation are dismissed. *See Braman v. The CME Grp., Inc.*, 149 F. Supp. 3d 874, 2015 WL 7776871, at *12 (N.D. Ill. 2015) (where plaintiffs failed to allege a false statement of material fact, their fraud claims fail); *cf. United States v. Weimert*, 819 F.3d 351, 355 (7th Cir. 2016) (misrepresentations sufficient for mail fraud involve either "false statements of fact" or "misleading half-truths and knowingly false promises").[8]

Plaintiffs also allege that the qualified orders approving their factoring transactions were void because the Illinois courts could not hear the petitions. *Castleberry* makes clear that this is not true. 43 N.E.3d at 938; *see also Steinbrecher v. Steinbrecher*, 759 N.E.2d 509, 518–19, 197 Ill. 2d 514, 259 Ill. Dec. 729 (2001) (although circuit court failed to follow procedure under the statute, this did not divest the court of jurisdiction or render the order void). Further, to the extent Plaintiffs' allege that the qualified approval orders are void because the Illinois courts were defrauded by the Mack Defendants, the Court cannot entertain such a claim. While the *Rooker-Feldman* doctrine does not prevent Plaintiffs from complaining to a federal court that Plaintiffs were damaged monetarily by Defendants, the *Rooker-Feldman* doctrine does prevent Plaintiffs from seeking to void the state court rulings. *In re JGWPT Holdings, Inc.*, No. 15-8005, slip op. at 2–3 (7th Cir. April 9, 2015) (citing *Iqbal v. Patel*, 780 F.3d 728, 729–30 (7th Cir. 2015); *Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769, 773 (7th Cir. 2014)). Plaintiffs admit that they cannot pursue causes of action based on qualified approval orders being void. *See* Doc.

---

[8] Defendants also argue in supplemental briefing that all of Plaintiffs' claims fail because 2015 amendments to the SSPA now permit Illinois courts to hear petitions for approval of factoring transactions for annuity rights arising from structured settlement contracts containing anti-assignment clauses. The amended SSPA, effective August 8, 2015, states "[a] court shall not be precluded from hearing an application for approval of a transfer of payment rights under a structured settlement where the terms of the structured settlement prohibit sale, assignment, or encumbrance of such payment rights . . . [and] shall have the authority to rule on the merits of the application and any objections to such application." 215 Ill. Comp. Stat. § 153/30(e) (2015). Because the Court finds that the SSPA did not have to grant Illinois courts authority to hear the petitions to approve Plaintiffs' factoring transactions, the Court need not address the impact of the SSPA amendments that merely state the same.

127 at 1 ("The entire point of the [Seventh Circuit's] order was that the [SAC] pled causes of action for fraud and other tortious conduct which resulted in a judgment adverse to the Plaintiffs. As such, those causes of action never reach the issue of whether the qualified order is void.").

Therefore, to the extent Plaintiffs' causes of action rely on Plaintiffs' theory that Illinois courts could not hear the petitions for approval or their allegations that the approval orders are void, the Court dismisses Plaintiffs' claims. However, the SAC relies on more alleged misrepresentations beyond whether a court could hear the petitions, so the Court does not dismiss the SAC in its entirety.

**B.** **Factoring Transactions Involving Anti-Assignment Clauses**

Plaintiffs also allege that the JGWPT Defendants, Settlement Funding, LLC, and the Mack Defendants made misrepresentations to each of the Plaintiffs by telling them that they could engage in factoring transactions despite the restraints of the anti-assignment clauses in their structured settlement contracts. Plaintiffs argue these representations were false because their structured settlement contracts contained anti-assignment clauses, which were enforceable. Illinois law certainly does not prohibit factoring transactions. *See, e.g.*, *Williams*, 2014 WL 1340233 at *8 (finding older version of SSPA did not bar factoring transactions but rather required assignments of structured settlement payments to receive judicial approval). On the other hand, Illinois courts have consistently held that in the face of enforceable anti-assignment provisions in structured settlement agreements, beneficiaries cannot sell the annuity payments. *See Brenston* , 998 N.E.2d at 121 (trial court has duty to enforce structured settlement contract's anti-assignment provision when asked to determine whether factoring transaction is valid); *In re Foreman*, 850 N.E.2d at 393–94 (holding structured settlement agreement did not permit assignments of payments and reversing circuit court's approval of assignments); *In re Nitz*, 739

14

N.E.2d at 98–99 (same); *In re Estate of Powless*, 734 N.E.2d 111, 116–17, 315 Ill. App. 3d 859, 248 Ill. Dec. 403 (2000) (factoring transactions were not barred by SSPA predecessor and annuity payments could be transferred without enforceable anti-assignment clause in structured settlement agreement and annuity contract); *Green v. Safeco Life Ins. Co.*, 727 N.E.2d 393, 397, 312 Ill. App. 3d 577, 245 Ill. Dec. 140 (2000) (anti-assignment provision in structured settlement agreement was enforceable against the beneficiary of the settlement's annuity payments so beneficiary could not sell rights to annuity payments in factoring transaction); *Henderson v. Roadway Exp.*, 720 N.E.2d 1108, 1112–13, 308 Ill. App. 3d 546, 242 Ill. Dec. 153 (1999) (same); *see also In re Crossman*, 259 B.R. 301, 306 (Bankr. N.D. Ill. 2001) (same); *In re Paul*, 355 B.R. 64, 68–69 (Bankr. N.D. Ill. 2000) (same).  The SAC alleges that each of the Plaintiffs—Sanders, Jennings, Rinck, and Hicks—sold their rights to annuity payments but had structured settlement contracts that contained enforceable anti-assignment clauses.

Settlement Funding, LLC and the Mack Defendants argue that they made no misrepresentations because anti-assignment clauses in structured settlement contracts can be waived, and Plaintiffs, the insurance companies, and the annuity guarantors (all beneficiaries of the anti-assignment provisions) universally waived the anti-assignment clauses.  Illinois contract law allows parties to a contract to waive benefits afforded by the contract.  *See In re Nitz*, 739 N.E.2d at 103 (citing *Guice v. Sentinel Techs., Inc.*, 689 N.E.2d 355, 361, 294 Ill. App. 3d 97, 228 Ill. Dec. 483 (1997)).  Accordingly, anti-assignment provisions in structured settlement contracts that prevent beneficiaries from transferring their rights to annuity payment can be waived by the provisions' beneficiaries.  *See In re Nitz*, 739 N.E.2d at 103; *see also Williams*, 2014 WL 1340233, at *8–9 (N.D. Ill. Mar. 31, 2014) (noting that anti-assignment clauses that require notice to insurance companies to make any assignment and the insurance companies'

acquiescence to the assignment both suggest that anti-assignment provisions are not absolute and can be waived). However, there still must be evidence to demonstrate the person or entity has waived the provision. *See In re Nitz*, 739 N.E.2d at 103–04. Waiver exists in express or implied "conduct inconsistent with an intent to enforce that right." *Guice*, 689 N.E.2d at 361.

Here, Plaintiffs do not allege that any beneficiary of the anti-assignment clauses in Plaintiffs' structured settlement contracts waived the enforcement of the anti-assignment clauses. The Mack Defendants and Settlement Funding, LLC argue that everyone waived the anti-assignment clauses—the insurance companies and other entities agreeing to pay Plaintiffs via annuity payments by declining to object to the petitions seeking approval of the factoring transactions and the Plaintiffs by selling their annuities. But although Plaintiffs sold their annuity payments, they allege that they did not know of or understand the anti-assignment provisions. Further, Plaintiffs did not allege that the insurance companies and annuity guarantors declined to enforce their rights under the anti-assignment clauses, and the Court is not convinced that Illinois law establishes that an insurance company waives an anti-assignment clause in a structured settlement by not objecting to a petition to approve a factoring transaction or by not appearing at the approval hearing. *See In re Nitz*, 739 N.E.2d at 104 (noting trial court did not find a "clear, unequivocal, and decisive act to waive [the] right to enforce the antiassignability provision of the settlement contract" so anti-assignment provisions in structured settlement contract were not waived). Taking the SAC in the light most favorable to Plaintiffs, the Court cannot conclude at the motion to dismiss stage that the anti-assignment clauses in Plaintiffs' structured settlement contracts were waived by all beneficiaries through explicit or implied conduct.[9] The Court, therefore, rejects Defendants' arguments at the motion to dismiss stage

_____

[9] Jennings alleges that the annuity guarantor for his annuity payments did not attend the May 2011 hearing on Settlement Funding, LLC's petition to approve its factoring transaction with Jennings. But he

that the beneficiaries to the anti-assignment clauses in Plaintiffs' structured settlement contracts waived those clauses, and the Court will not dismiss the SAC on this basis.

### C.    Improper Venue and Disclosures in Petitions

The Mack Defendants also argue that the SAC fails to state a claim to the extent it alleges that the Mack Defendants filed Petitions in inappropriate venues or did not timely provide the appropriate disclosures to Plaintiffs. Plaintiffs did not respond to the Mack Defendants' arguments. "A party's failure to respond to arguments the opposing party makes in a motion to dismiss operates as a waiver or forfeiture of the claim and an abandonment of any argument against dismissing the claim." *A.C. v. Standard Bank & Trust Co.*, No. 15 C 7693, 2016 WL 1407712, at *2 (N.D. Ill. Apr. 11, 2016) (quoting *Jones v. Connors*, No. 11 C 8276, 2012 WL 4361500, at *7 (N.D. Ill. Sep. 20, 2012)). The Court construes Plaintiffs' failure to respond as a concession to the merits of the Mack Defendants' arguments. Therefore, the Court dismisses Plaintiffs' claims to the extent they rely on the venue of the petitions or the timing of disclosures provided to Plaintiffs.

## II.    Statute of Limitations and Repose Defenses

Defendants argue that most of Plaintiffs' claims must be dismissed because they are time-barred. The Mack Defendants argue that all of Plaintiffs' state law claims must be dismissed because the SAC establishes that the Illinois statutes of limitations and repose for claims against lawyers have lapsed. The JGWPT Defendants argue that all of Sanders' Claims must be dismissed because the Illinois statutes of limitations for breach of fiduciary duty, tortious interference with contract, unjust enrichment, civil conspiracy, joint enterprise, and conversion

---

also alleges that they never received notice of the petition. Defendants have not shown the SAC unequivocally establishes the annuity guarantor and the other beneficiaries of Jennings' structured settlement contract waived any rights they had to the anti-assignment clause in Jennings' settlement contract.

bar his claims. The Mack Defendants and JGWPT Defendants also maintain that all of Sanders and Hicks' RICO claims and Rinck's RICO claims based on his 2010 petition are barred by the four-year RICO statute of limitations.

"Illinois has a specific statute of limitations, 735 Ill. Comp. Stat. § 5/13-214.3, that applies 'to all claims against attorneys concerning their provision of professional services,' including both tort and contract claims, such as breach of fiduciary duty or legal malpractice." *White v. Richert*, No. 15 C 8185, 2016 WL 3582083, at *4 (N.D. Ill. June 28, 2016) (quoting *Evanston Ins. Co. v. Riseborough,* 5 N.E.3d 158, 166, 2014 IL 114271, 378 Ill. Dec. 778 (Ill. 2014)). "An action for damages based on tort, contract, or otherwise . . . against an attorney arising out of an act or omission in the performance of professional services . . . must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 Ill. Comp. Stat. § 5/13-214.3(b). This does not apply solely to claims brought by a client against her attorney or only to claims of malpractice; instead the statute applies to "all claims against attorneys concerning their provision of professional services," whether rendered to the plaintiff or not. *Evanston Ins. Co.*, 5 N.E.3d at 166. The statute of limitations incorporates the discovery rule, delaying the statute's commencement until the plaintiff knows or reasonably should have known of the injury and that it might have been wrongful. *Carlson v. Fish*, 31 N.E.3d 404, 410, 2015 IL App (1st) 140526, 391 Ill. Dec. 728 (2015) (quoting *Dancor Int'l, Ltd. v. Friedman, Goldberg & Mintz*, 681 N.E.2d 617, 622, 288 Ill. App. 3d 666, 224 Ill. Dec. 302 (1997)).

The statute of limitations for Plaintiffs' claims of breach of fiduciary duty, tortious interference with contract, unjust enrichment, civil conspiracy, and conversion[10] are all five years. *See Travelers Cas. & Sur. Co. v. Bowman*, 893 N.E.2d 583, 587, 229 Ill. 2d 461, 323 Ill. Dec. 311 (2008) (breach of fiduciary duty); *Poulos v. Lutheran Soc. Servs. of Ill., Inc.,* 728 N.E.2d 547, 559, 312 Ill. App. 3d 731, 245 Ill. Dec. 465 (2000) (tortious interference); *Lewandowski v. Jelenski*, 929 N.E.2d 114, 119, 401 Ill. App. 3d 893, 340 Ill. Dec. 810 (2010) (unjust enrichment); *Lerman v. Turner*, No. 10-CV-2169, 2013 WL 4495245, at *20 (N.D. Ill. Aug. 21, 2013) (conversion); *Mauvais-Jarvis v. Wong*, 987 N.E.2d 864, 894–95, 2013 IL App (1st) 120070, 370 Ill. Dec. 98 (2013) (applying statute of limitations for underlying tort to civil conspiracy claim); *Lane v. Deutsche Bank, AG*, 44 N.E.3d 548, 553, 2015 IL App (1st) 142968, 398 Ill. Dec. 519 (2015) (applying five-year catch-all statute of limitations to claims against conspirators of fraud and breach of fiduciary duty). The discovery rule also applies to each claim. *See Henderson Square Condo. Ass'n v. LAB Townhomes, LLC*, 46 N.E.3d 706, 720–22, 2015 IL 118139, 399 Ill. Dec. 387 (2015) (applying discovery rule to breach of fiduciary duty claim); *Hukic v. Aurora Loan Servs., Inc.*, No. 05 C 4950, 2006 WL 1457787, at *4 (N.D. Ill. May 22, 2006) (noting discovery rule applied to tortious interference with contract claim under Illinois law); *Lewandowski*, 929 N.E.2d at 119 (discovery rule applies to unjust enrichment claim); *Lerman*, 2013 WL 4495245, at *20 (noting disagreement as to whether Illinois discovery rule applies to conversion claims and noting that discovery rule does not apply to conversion of negotiable instruments like checks but applying discovery rule to allegations that funds were converted by employee who allegedly breached fiduciary duty and defrauded her employer (citing *Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1136, 166 Ill.2d 72,

[10] As stated below, the Court dismisses Plaintiffs' joint enterprise claims with prejudice for other reasons, so the Court need not determine the statute of limitations for such a claim, which the JGWPT Defendants argue would be five-years.

209 Ill. Dec. 684 (1995) (instructing court to look at "whether the underlying facts support application of the discovery rule")); *Khan v. Deutsche Bank AG*, 978 N.E.2d 1020, 1036–37, 2012 IL 112219, 365 Ill. Dec. 517 (2012) (applying discovery rule to civil conspiracy claims tied to fraud and breach of fiduciary duty claims).

There is also a four year statutory limitations period for civil RICO claims. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156, 107 S. Ct. 2759, 97 L. Ed. 2d 121 (1987) (adopting four year limitations period for civil RICO). The civil RICO clock begins to run "when the plaintiffs discover, or should, if diligent, have discovered, that they had been injured by the defendants." *Cancer Found., Inc. v. Cerberus Capital Mgmt.*, 559 F.3d 671, 674 (7th Cir. 2009).

Plaintiffs argue that the discovery rule tolls the statutes of limitations on their claims against the Mack Defendants and on Sanders' claims and Sanders and Rinck's RICO claims because each Plaintiff did not discover the misrepresentations until shortly before each of them filed suit. In the Seventh Circuit, "[d]ismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (citation omitted). "[T]his irregular approach is appropriate only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Id.* (citation omitted) (internal quotation marks omitted). If there is any "conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Id.* Plaintiffs did not allege that they knew at the time that the

factoring transactions or any representations made about the factoring transactions were unlawful, and Plaintiffs allege that Defendants orchestrated a scheme to mask the unlawfulness of their acts to outsiders, so the SAC also does not suggest beyond a doubt that a diligent reasonable person should have known or discovered that Defendants' acts were unlawful. The Court cannot find based only on the SAC and its attached exhibits that there is no set of facts that would defeat the timing defenses raised by the Mack Defendants, but Defendants may re-raise their statute of limitations defenses after discovery is complete. *See id.*

The Mack Defendants also argue that the six-year statute of repose bars Sanders from bringing any claim against them. Illinois law authorizes the dismissal of a complaint for failure to file within the repose period, and the statute of repose for claims against attorneys states that an action may not be commenced at all more than six years after the date on which the negligent act or omission occurred. *O'Brien v. Scovil*, 774 N.E.2d 466, 467–68, 332 Ill. App. 3d 1088, 266 Ill. Dec. 360 (2002) (citing 735 Ill. Comp. Stat. § 5/13–214.3(c)). The period of repose begins when the acts of representation end, even if continuing omissions contribute to the injury. *Id.* But unlike the statute of limitations, the statute of repose is not subject to the discovery rule. *Fricka v. Bauer*, 722 N.E.2d 718, 723, 309 Ill. App. 3d 82, 88, 242 Ill. Dec. 934 (1999).

Plaintiffs, however, argue that the Mack Defendants fraudulently concealed from Sanders that he had a cause of action against them. Fraudulent concealment is "an exception to the statute of repose contained in section 13–214.3(c)." *DeLuna v. Burciaga*, 857 N.E.2d 229, 244, 223 Ill. 2d 49, 306 Ill. Dec. 136 (2006). It requires "efforts by [the Mack Defendants], above and beyond the wrongdoing upon which [Sanders'] claim is founded, to prevent, by fraud or deception, [Sanders] from suing in time," as well as for Sanders to have exercised "due diligence" to discover his claim. *Uppal v. Welch*, No. 15 C 8077, 2016 WL 2909652, at *7

(N.D. Ill. May 19, 2016) (quoting *Shropshear v. Corp. Counsel of City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001)). Considering Sanders' allegations that Defendants concealed their true intentions from Plaintiffs and that Defendants worked to hide their wrongful deeds, the Court finds that discovery may uncover facts to support fraudulent concealment. Therefore, the Court will not dismiss any of Plaintiffs' claims based on the statutes of limitations or the statute of repose at this time. *See Sidney Hillman*, 782 F.3d at 928.

### III. Judicial Estoppel

The JGWPT Defendants and Mack Defendants also move to dismiss Plaintiffs' claims by arguing they are judicially estopped from attacking the factoring transactions that they previously entered and allowed Illinois courts to approve. Judicial estoppel is an equitable doctrine that protects the court from litigants "playing fast and loose" through "intentional self-contradiction . . . used as a means of obtaining unfair advantage." *See Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990). It requires that a party take a "clearly inconsistent position" from one, or part of one, litigation to the next. *Id.* Plaintiffs allege that they were deceived into entering into factoring transactions and obtaining transfer orders against their interest. This is not inconsistent with their prior involvement in state court petitions to approve the factoring transactions—the difference is they now allege fraud surrounding the purchase of the annuity payments. These are separate legal and factual positions. *See Himel v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 596 F.2d 205, 210 –11 (7th Cir. 1979) (prior lawsuit requesting reformation of a trust to allow trustee more flexibility in investing the trust was not an inconsistent position with lawsuit accusing trustee of mismanagement of the trust; lawsuits arose out of independent factual situations). The Court therefore will not bar Plaintiffs' suit on the basis of judicial estoppel.

**IV.     Defendant-Specific Defenses**

The JGWPT Defendants and the Mack Defendants both also raise several arguments for dismissal specific to them.

**A.     JGWPT Defendants' Defenses**

First, in a footnote, the JGWPT Defendants incorporate their prior argument from their first motion to dismiss Sanders' claims, mooted by Sanders' July 14, 2014 amended complaint, and argue that the Court should dismiss JGWPT Holdings, Inc., JGWPT Holdings, LLC, and Peachtree Settlement Funding, LLC because the three Defendants did not exist at the time of Sanders' factoring transactions. *See* Doc. 28 at 8–9. In addition to arguing that these three Defendants cannot be liable to Sanders, the JGWPT Defendants also argue that JGWPT Holdings, Inc., formed on June 21, 2013, cannot be liable for any of the claims in the SAC, and JGWPT Holdings, LLC, and Peachtree Settlement Funding, LLC, formed on May 21, 2011 and July 20, 2011 respectively, cannot be liable for any of the claims in the SAC except for claims arising from Jennings' August 2011 factoring transaction and Rinck's September 2012 factoring transaction.

Arguments in footnotes are typically waived. *See, e.g., U.S. E.E.O.C. v. Custom Cos.*, No. 02 C 3768, 2007 WL 1810495, at *4 (N.D. Ill. June 21, 2007). But since May 2014, Plaintiffs have been aware of the argument that these three Defendants came into existence after the relevant events. Plaintiffs filed the SAC after the JGWPT Defendants first raised the issue, yet Plaintiffs do not address the argument and did not plead any facts suggesting any of JGWPT Holdings, Inc., JGWPT Holdings, LLC, and Peachtree Settlement Funding, LLC plausibly could be liable for acts that occurred before their incorporation—under successor liability or otherwise. Therefore, the Court dismisses Plaintiffs' claims against JGWPT Holdings, Inc., JGWPT

Holdings, LLC, and Peachtree Settlement Funding, LLC to the extent they are alleged to be liable for harms that occurred prior to their incorporation. *See Eivaz v. Edwards*, No. 12-C-910, 2013 WL 989843, at *3 (E.D. Wis. Mar. 13, 2013) (dismissing claim against defendant that did not exist at the time of the events underlying promissory estoppel claim making claim implausible).

Second, the JGWPT Defendants also move to dismiss all of Plaintiffs' claims under Rule 8 and Rule 9(b) because Plaintiffs allege no facts specific to any of the individual JGWPT Defendants, instead lumping them together as "Defendants," "the JGWPT entities," and "the JGWPT defendant entities."[11] Under Rule 8, the complaint does not need to give specific facts but instead only put the defendants on notice of why they are being sued. *Blanton v. Roundpoint Mortg. Servicing Corp.*, No. 15 C 3156, 2016 WL 3653577, at *8–9 (N.D. Ill. July 7, 2016) (while count of claim stated allegations collectively against defendants, factual paragraphs described each individual defendant's conduct). "Group pleading" that refers to "Defendants" collectively is sufficient under Rule 8 when a plaintiff provides enough detail about the nature of the allegations to put each defendant on fair notice of the claims. *Frazier v. U.S. Bank Nat. Ass'n*, No. 11 C 8775, 2013 WL 1337263, at *3 (N.D. Ill. Mar. 29, 2013) (collecting cases). Here, Defendants complain that they are lumped together as "Defendants," "the JGWPT entities," and "the JGWPT defendant entities," but these allegations are specific enough for the

---

[11] The Court notes that all parties demonstrate in the SAC and the briefing on the motions to dismiss an overreliance on generalized descriptions of "Plaintiffs," "Defendants," third parties, and combinations of each to make or counter allegations and arguments meant to identify specific persons and entities. It is not the Court's role to generate or elaborate on the parties' arguments or to make sense of vague evidentiary representations. *See Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Int'l Inc.*, 533 F.3d 555, 562 (7th Cir. 2008) ("The district court cannot be expected to search through the entire record for evidence that may support a party's contentions."); *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999) ("A brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record.").

JGWPT Defendants to understand they are specifically implicated. Plaintiffs' allegations therefore are sufficient under Rule 8.

In claims of fraud or mistake, however, Plaintiffs must provide heightened detail. *Obi v. Chase Home Fin., LLC*, No. 10 C 3154, 2010 WL 4810609, at *3 (N.D. Ill. Nov. 19, 2010). Claims based on averments of fraud are scrutinized under Rule 9(b). *See Borsellino*, 477 F.3d at 507 (finding allegations that action arose out of pattern of fraud and racketeering activity and referenced fraud and conspiracy with defrauders showed fraud theory pervaded the entire case and claims of tortious interference and conspiracy were based in averments of fraud and subject to Rule 9(b)); *LoggerHead Tools, LLC v. Sears Holding Corp.*, No. 12-CV-09033, 2013 WL 1858590, at *7 (N.D. Ill. May 1, 2013) ("Whether or not unjust enrichment is an independent claim, as mentioned above, Rule 9(b) requires claims that include 'averments of fraud,' such as this one, to be pled with particularity."). The Court need not decide, however, whether all Plaintiffs' claims based on fraud and subject to Rule 9(b), however, because while the JGWPT Defendants state that they challenge the entire SAC under Rule 9(b), they go no further than generally arguing in one sentence that they are all lumped together as co-conspirators. Instead, they focus specific argument regarding Rule 9(b) only regarding Plaintiffs' RICO claims. *See* Doc. 66 at 7–8 (arguing that communications sustaining fraud were not alleged as to each JGWPT Defendant and citing *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992) (analyzing RICO claim)); *Id.* at 8 (challenging RICO § 1962(d) conspiracy claim). It is not the Court's responsibility to find arguments, facts, and supporting case law for the parties. *See Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006) (it is the "advocate's job . . . to make it easy for the court to rule in his client's favor"); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). While

the Court reviews the RICO claims below, the Court will not dismiss the entire SAC based on the generalized argument of failure to meet Rule 9(b) requirements. *See Milligan v. Bd. of Trustees of S. Illinois Univ.*, 686 F.3d 378, 386 (7th Cir. 2012) (collecting cases, court need only consider arguments advanced by specific points in support of the general argument).

### B. The Mack Defendants' Defenses

The Mack Defendants also move to dismiss Plaintiffs' state law claims against them under the prior litigation rule and the absolute litigation privilege doctrine. There is no civil cause of action for misconduct that occurred in prior litigation, so attempts to redress injuries from prior litigation should be brought during the initial litigation. *See Johnson v. Johnson & Bell, LTD.*, 7 N.E.3d 52, 57, 2014 IL App (1st) 122677, 379 Ill. Dec. 626 (2014). This Illinois law, however, applies to review of another court's order during litigation proceedings and is often most applicable when the absolute litigation privilege is invoked. *See Squires-Cannon v. Forest Pres. Dist. of Cook Cty.*, No. 15 C 6876, 2016 WL 561917, at *8 (N.D. Ill. Feb. 12, 2016) (considering absolute litigation privilege argument and refusing to review state court's litigation rulings, including motions for sanctions and enforcement orders); *Johnson*, 7 N.E.3d at 57 (noting complaint framed claim as a defamation claim to avoid absolute litigation privilege and refusing to revisit federal courts rulings on document production during litigation). Here, Plaintiffs allege acts by the Mack Defendants that occurred before any court proceeding was commenced—in fact, Plaintiffs allege that the last bad acts by the Mack Defendants were the filing of petitions for qualified approval orders that commenced court proceedings.[12] Thus, this rule does not save the Mack Defendants from Plaintiffs' state law claims.

---

[12] However, as discussed previously, to the extent Plaintiffs allege the Mack Defendants' actions require the vacation of the Illinois courts' approval orders, the Court has no power to do so under *Rooker-Feldman*.

The Mack Defendants also argue that Plaintiffs' state law claims are barred by the absolute litigation privilege, which protects anything said or written during a legal proceeding. *Skopp v. First Fed. Sav. of Wilmette*, 545 N.E.2d 356, 360, 189 Ill. App. 3d 440, 136 Ill. Dec. 832 (1989). However, the Mack Defendants admit that no Illinois court has applied the privilege in circumstances similar to Plaintiffs' allegations. Instead, the privilege appears to be interpreted in Illinois solely as a bar against litigating defamatory statements made by an attorney during litigation. *See Johnson*, 7 N.E.3d at 56 ("An attorney is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if he has some relation to the proceeding."); *id.* at 57 (noting Illinois courts have not extended privilege to tortious interference claims). The Court will not expand the privilege beyond its common interpretation to protect the Mack Defendants from charges of fraud, not defamation. *See Insolia v. Philip Morris Inc.*, 216 F.3d 596, 607 (7th Cir. 2000) ("Innovative state law claims should be brought in state court."). Thus, the Court will not dismiss the Mack Defendants based on these defenses.

V.      **Failure to State a Claim**

        A.      **Plaintiffs' RICO Claims (Counts IV and V)**

        Plaintiffs allege that Defendants violated 18 U.S.C. § 1962(c) by using either JGWPT Holdings, Inc. or an association-in-fact enterprise of all Defendants to defraud Plaintiffs through patterns of racketeering. To state a claim under § 1962(c), Plaintiffs must demonstrate they have standing, as required by statute, and allege "(1) conduct (2) of an enterprise (3) through a pattern of racketeering activity." *DeGuelle v. Camilli*, 664 F.3d 192, 198–99 (7th Cir. 2011) (citation omitted). "In alleging a RICO pattern, liability is limited to persons who have personally

committed at least two predicate acts of racketeering" by alleging "two predicate acts of fraud by each RICO Defendant with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." *Guaranteed Rate, Inc. v. Barr*, 912 F. Supp. 2d 671, 684 (N.D. Ill. 2012). Additionally, to recover under RICO, Plaintiffs must allege that their injuries arise "by reason of" a violation of § 1962, requiring both "but for" and proximate causation. 18 U.S.C. § 1964(c); *DeGuelle*, 664 F.3d at 199. The JGWPT Defendants and the Mack Defendants move to dismiss the RICO claims for several reasons. Because the Court finds that Plaintiffs have not adequately alleged any of the Defendants committed two predicate acts sufficient to sustain their § 1962(c) claims, the Court need not address Defendants' other arguments for dismissal.

A "RICO plaintiff must, at a minimum, describe the predicate acts of fraud with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998) (citation omitted) (internal quotation marks omitted). Rule 9(b) "applies to allegations of mail and wire fraud and by extension to RICO claims that rest on predicate acts of mail and wire fraud." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994).

The Mack Defendants argue that Plaintiffs make only conclusory allegations against Defendants, improperly lumping Defendants together and alleging that "Defendants" committed predicate acts of mail fraud without identifying the particular mailings, how these mailings were part of a pattern of racketeering activity, or how the mail fraud was interrelated. Plaintiffs argue that they have done enough to plead predicate acts of mail fraud, stating that they alleged the Mack Defendants used the mail to send fraudulent pleadings to the Sangamon County Circuit

Court and that they need not state the exact date on which the Mack Defendants petitioned the Court.

After careful review of the SAC and the parties' filings, Court finds that Plaintiffs have failed to allege sufficient predicate acts with the requisite specificity.  In their opposition to the Mack Defendants' motion to dismiss, Plaintiffs rely on two allegations to establish that the Mack Defendants used the mail to send fraudulent pleadings to the Sangamon County Court. Specifically, they allege that the "[u]nlawful use of the mails to carry out their fraudulent scheme was utilized to solicit, to disseminate communications, and to file paperwork in the Illinois courts," Doc. 49 ¶ 282, and that "the U.S. mail was used to send documents to the class member and the court in order to carry out the scheme to defraud," *id.* ¶ 286.  "[L]oose references to mailings and telephone calls in furtherance of a purported scheme to defraud will not do." *Petri v. Gatlin*, 997 F. Supp. 956, 983 (N.D. Ill. 1997) (citation omitted) (internal quotation marks omitted).  While the Court might be allowed to infer these facts when considering a motion to dismiss pursuant to Rule 12(b)(6), Plaintiffs' allegations, scrutinized under Rule 9(b), "are not entitled to the same leniency." *Id.*  Here, Plaintiffs do not adequately connect the filing of the petitions, acts which do not require use of the mail, to the alleged use of the mail by the Mack Defendants.  Although Plaintiffs presumably could do this, because they have not and instead rely on vague allegations of the use of the mail, the Court finds the pleading insufficient at this time. *See Merryman Excavation, Inc., v. Int'l Union of Operating Eng'rs*, No. 06 C 5160, 2007 WL 1232198, at *4 (N.D. Ill. Apr. 25, 2007) ("The only particular allegations of predicate acts of "mail and extortionate communications" are set forth in portions of the Amended Complaint unrelated to the RICO allegations, and are not set forth with the requisite level of detail required to fulfill the heightened pleading standard."); *Petri*, at 984 (finding it reasonable to expect

plaintiffs to be able to describe mailings in which they were involved as recipients, collecting cases).

Plaintiffs also do not adequately describe any mail fraud from the Mack Defendants to any of the Plaintiffs. While they allege that the Mack Defendants made false statements to Plaintiffs about whether the factoring transactions could occur, they do not allege that any of the Mack Defendants' alleged misrepresentations about the vitality or legality of the factoring transactions were made via the mail. Nor do they allege that the Mack Defendants provided any documents to Plaintiffs via the mail. Because Plaintiffs have not adequately pleaded predicate acts, the Court dismisses the § 1962(c) claim against the Mack Defendants.

Similarly, Plaintiffs' have not sufficiently alleged predicate acts of mail fraud with particularity against the JGWPT Defendants and Settlement Funding, LLC. A pattern of racketeering activity consists of at least two predicate acts of racketeering. *Am. Med. Ass'n v. 3Lions Publ'g, Inc.*, No. 14 C 5280, 2015 WL 1399038, at *4 (N.D. Ill. Mar. 25, 2015). Plaintiffs base their RICO claims only on predicate acts of mail fraud,[13] but they have alleged only one mail communication from any of the JGWPT entities to Plaintiffs. Plaintiffs allege that Settlement Funding, LLC sent "sample checks via the U.S. mail" to Sanders, but Plaintiffs allege no other mailings from any of the JGWPT entities to Sanders. Doc. 49 ¶ 100. There is no alleged communication between Jennings and a JGWPT entity via mail. *See id.* ¶¶ 148–155. While Rinck allegedly received solicitations from "Peachtree," the SAC does not identify how they were sent. *Id.* ¶ 165. And while Hicks allegedly received representations from "Peachtree," the SAC does not identify how they were sent either. The SAC's allegations, identifying an

---

[13] Mail fraud requires the defendant use "the United States mail as a carrier," which makes mail fraud parallel to rather than synonymous to wire fraud, which requires "the use of an interstate telephone call or electronic communication made in furtherance of the scheme." *Compare United States v. Fenzl*, 731 F. Supp. 2d 796, 799 (N.D. Ill. 2010) (mail fraud)*, with United States v. Leahy*, 464 F.3d 773, 787 (7th Cir. 2006) (wire fraud).

undated mailing of sample checks from Settlement Funding, LLC to Sanders, are insufficient to identify two separate predicate acts with the specificity required by Rule 9(b). *Matrix IV, Inc. v. Am. Nat. Bank & Trust Co. of Chicago*, No. 06 C 1661, 2007 WL 853968, at *11 (N.D. Ill. Mar. 15, 2007) (by alleging only one potential act of mail fraud from defendant, plaintiff failed to allege sufficient predicate acts for § 1962(c) claim).

Nor do Plaintiffs' general allegations of Defendants using the mail satisfy their pleading burden for their § 1962(c) claims. In their allegations for their breach of fiduciary claim, which is incorporated into Plaintiffs' § 1962(c) RICO claim, Plaintiffs do allege that the JGWPT entities mailed them the necessary documents to engage in factoring transactions, but these vague allegations generalizing the JGWPT entities' general scheme are not specific enough to establish mail fraud with the particularity required by Rule 9(b). *See Merryman Excavation, Inc.*, 2007 WL 1232198, at *4 (loose and generalized allegations of predicate acts throughout extremely long complaint did not provide enough detail to fulfill the heightened pleading standard of Rule 9(b)); *see also Pelfresne v. Vill. of Rosemont*, 22 F. Supp. 2d 756, 764 (N.D. Ill. 1998) (lumping defendants together to allege mail fraud was insufficient because plaintiff did not allege two specific mailings by each defendant). Similarly, while Plaintiffs generally allege that the JGWPT entities used the United States mail to solicit and communicate with potential sellers of annuity payments, they have not alleged that any of the specific JGWPT Defendants solicited or communicated with any of the Plaintiffs via the mail. Plaintiffs are correct that the SAC describes the JGWPT Defendants' general participation in the alleged scheme to defraud Plaintiffs, but it does not allege that any of the JGWPT Defendants committed any of the predicate acts of mail fraud. *Compare Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F. Supp. 2d 978, 994–95 (N.D. Ill. 2010) (RICO claim against all defendants failed to identify

specific individual defendants' participation in mail, wire, and financial institution fraud beyond alleging loose allegations that "RICO defendants" had engaged in mail and wire fraud, and factual allegations did not identify movants' use of mail or wire at all) *with DT Boring, Inc. v. Chicago Pub. Bldg. Comm'n*, No. 15 C 11222, 2016 WL 3580756, at *9 (N.D. Ill. June 28, 2016) (plaintiff made "specific allegations with respect to each defendants' conduct and roll [sic] in the alleged scheme to defraud, identified each defendants' false statements and/or misrepresentations, and . . . specified the form, date, sender, and recipient of each of the offending mail and wire communications that make up the predicate acts").

Because Plaintiffs' § 1962(c) claim fails against all Defendants, Plaintiffs' RICO conspiracy claims under § 1962(d) fail as well. *See United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 856–57 (7th Cir. 2013).[14] Therefore, the Court dismisses both RICO claims without prejudice. Moving forward, if Plaintiffs chose to further pursue their RICO claims, they must specify their RICO allegations against each Defendant. *See Pelfresne*, 22 F. Supp. 2d at 764–65.

---

[14] The JGWPT Defendants also argue that the § 1962(d) claim fails because Plaintiffs do not sufficiently allege that each Defendant committed a predicate act. "The members of the RICO conspiracy must personally participate in the agreement to conduct the affairs of an enterprise, but they do not need to personally agree to perform the predicate acts; rather, the members need only agree that someone will perform the predicate acts." *Merryman Excavation, Inc.*, 2007 WL 1232198, at *5 (citing *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 965 (7th Cir. 2000)). The Mack Defendants also argue that Plaintiffs have not sufficiently alleged a RICO conspiracy to state a claim under § 1962(d) because they fail to provide anything other than conclusory allegations that Defendants violated § 1962(d). "Conclusory allegations of conspiracy are not sufficient to state a claim" under RICO; rather, the plaintiff must allege 'supportive facts.'" *Fosco v. Difronzo*, No. 09 C 1882, 2009 WL 2244611, at *4 (N.D. Ill. July 28, 2009) (citations omitted) (internal quotation marks omitted); *Lachmund v. ADM Investor Services, Inc.,* 191 F.3d 777, 784–85 (7th Cir., 1999) (RICO conspiracy claim must be dismissed if it fails "to allege any facts indicating an agreement by the [defendants] as to which roles they would play in the enterprise or any agreement by the defendants that someone would commit two specific predicate acts on behalf of the enterprise"). Because the Court dismisses the § 1962(d) claims for another independent reason, the Court need not address Defendants' other arguments for dismissal.

### B.    Plaintiffs' State Law Claims

#### 1.    Breach of Fiduciary Duty (Count I)

Plaintiffs allege that Defendants breached fiduciary duties they owed to Plaintiffs that arose from the factoring transaction process.  To state a claim for breach of fiduciary duty under Illinois law, Plaintiffs must allege "(1) a fiduciary duty existed, (2) the duty was breached, and (3) the breach of the duty proximately caused damages."  *Gavin/Solmonese LLC. v. Kunkel*, No. 16-CV-1086, 2016 WL 3612123, at *4 (N.D. Ill. July 6, 2016).  The JGWPT Defendants move to dismiss the breach of fiduciary claim against them, arguing Plaintiffs have not established that the JGWPT Defendants owed any fiduciary duty to the Plaintiffs.

"A fiduciary relationship exists when there is a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one reposing the confidence."  *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 782 (7th Cir. 2015) (citing *Hensler v. Busey Bank,* 596 N.E.2d 1269, 1274, 231 Ill. App. 3d 920, 173 Ill. Dec. 390 (1992)).  Plaintiffs allege that the JGWPT Defendants voluntarily undertook a duty to explain the court approval process for factoring transactions to Plaintiffs and manage the process for Plaintiffs.  They further allege that based on the JGWPT Defendants' representations, Plaintiffs placed their trust in them to guide and complete the factoring transactions.  Therefore, Plaintiffs have sufficiently alleged that the JGWPT Defendants owed a duty to Plaintiffs.

As for Settlement Funding, LLC, Plaintiffs allege that they entrusted Settlement Funding, LLC to see the factoring transactions through court approval based on Settlement Funding, LLC's promises to handle everything for Plaintiffs.  They also allege that they granted power of attorney to Settlement Funding, LLC to obtain qualified orders of approval, specifically giving

the power to do "all acts and things that [Plaintiff] might do regarding the Assigned Payments and . . . any other act, which, in the sole discretion of [Settlement Funding, LLC], as my Attorney-in-Fact is necessary or expedient for it to obtain all of the benefits of the bargain contemplated by this transaction." Doc. 49-8 at 7 (Sanders); Doc. 49-13 at 19 (Jennings); Doc. 49-16 at 7 (Rinck); Doc. 49-19 at 12 (Hicks). Executing a power of attorney creates a fiduciary responsibility. *In re Estate of Savage*, 631 N.E.2d 797, 799, 259 Ill. App. 3d 328, 197 Ill. Dec. 575 (1994) (citing *White v. Raines*, 574 N.E.2d 272, 279, 215 Ill. App. 3d 49, 158 Ill. Dec. 478 (1991)). Plaintiffs have alleged that, after they granted Settlement Funding, LLC power of attorney to finalize each factoring transaction, Settlement Funding, LLC took advantage of Plaintiffs and misled them into unfair factoring deals. Thus, Plaintiffs have sufficiently alleged that Settlement Funding, LLC owed them fiduciary duty that was breached.

Finally, Plaintiffs allege that the Mack Defendants represented them as their attorneys and breached the fiduciary duties they owed as Plaintiffs' attorneys. "The attorney-client relationship is a fiduciary relationship as a matter of law." *Client Funding Sols. Corp. v. Crim*, No. 10-CV-482, 2014 WL 1292451, at *8 (N.D. Ill. Mar. 31, 2014) (citing *Evanston Ins. Co.*, 5 N.E.3d at 171)). "Among the fiduciary duties imposed upon an attorney are those of fidelity, honesty, and good faith, both in the discharge of contractual obligations to, and professional dealings with, a client. When, in the course of his professional dealings with a client, an attorney places personal interests above the interests of the client, the attorney is in breach of fiduciary duty by reason of the conflict." *Id.* (citing *Doe v. Roe,* 681 N.E.2d 640, 645, 289 Ill. App. 3d 116, 224 Ill. Dec. 325 (1997)). While Plaintiffs do not allege that they had an express attorney-client relationship with Mack or any other attorney, they do allege that Mack represented himself to be Plaintiffs' lawyer when seeking approval of the factoring transactions. They also allege

that Hicks believed that Mack was her attorney and that each Plaintiff relied on Mack to prepare

the final factoring transactional documents and petitions for court approval, and that the Mack

Defendants knew this while he finalized the documents and obtained qualified approval orders.

Whether an attorney-client relationship exists is a question of law that often turns on findings of

fact—a client cannot unilaterally create an attorney-client relationship, and the putative client's

belief that the attorney is representing him is only one consideration, but if an attorney knows

that a person is relying on the attorney's performance of services and performs, the Court can

find an attorney-client relationship. *Meriturn Partners, LLC v. Banner & Witcoff, Ltd.*, 31

N.E.3d 451, 455–56, 2015 IL App (1st) 131883, 391 Ill. Dec. 775 (2015). So even though

Plaintiffs also allege that Settlement Funding, LLC told each Plaintiff that Mack and his law

firms represented Settlement Funding, LLC, and although the factoring transaction documents

indicate that Mack represented Settlement Funding, LLC, taking all facts and inferences in

Plaintiffs' favor, the Court finds that the SAC sufficiently alleges that the Mack Defendants had

a fiduciary relationship with Plaintiffs. Therefore, the Court will not dismiss Plaintiffs' breach of

fiduciary duty claims.

### 2. Unjust Enrichment (Count III)

Plaintiffs allege that Defendants were unjustly enriched because the Mack Defendants

and other Defendants received attorney's fees and processing costs for the petitions seeking

approval of Plaintiffs' factoring transactions despite the Illinois courts' approval orders being

void. However, as the Court has already noted and Plaintiffs acknowledge, claims based on the

validity of the Illinois courts' approval orders cannot proceed. The unjust enrichment claim is

such a claim, so the Court dismisses it.

### 3.     Joint Enterprise (Count VII)

Plaintiffs allege that Defendants joined together to defraud Plaintiffs in factoring transactions and therefore are liable under Illinois law for joint enterprise.[15]  The Mack Defendants argue that Illinois law does not support an independent claim of "joint enterprise" for harm that does not arise out of personal injury.  Plaintiffs argue that other Illinois cases have allowed joint enterprise claims, however the cases they cite do not demonstrate that this is true.  Plaintiffs cite *Yokel v. Hite*, 809 N.E.2d 721, 348 Ill. App. 3d 703, 284 Ill. Dec. 155 (2004), as providing the elements of a joint enterprise claim.  However, in *Yokel*, the court merely analyzed whether plaintiffs sufficiently alleged that the plaintiffs and defendant had been a part of joint enterprise that created a fiduciary duty between them.  809 N.E.2d at 723, 726 ("Joint venture partners stand in a fiduciary relationship with each other as a matter of law.").  And Plaintiffs' reliance on *Grubb v. Illinois Terminal Co.*, 8 N.E.2d 934, 366 Ill. 330 (1937), also does not support their argument that there is an independent joint enterprise claim under Illinois law.  In *Grubb*, the court analyzed whether a third party driver's contributory negligence could be imputed to her passenger, the plaintiff, when the two engaged in a "joint enterprise" driving trip.  *See* 8 N.E.2d at 938 (noting that "when two or more persons are engaged in a joint enterprise or undertaking in the use of an automobile, the contributory negligence of one will bar recovery by either, where the claimed damage arises out of a matter within the scope of a joint undertaking"); *see also id.* at 339–40 (determining whether driver and passenger had engaged in joint enterprise to travel).

Further, Plaintiffs' defense of the propriety of their joint enterprise claim paints it as a conspiracy claim.  *Compare* Doc. 80 at 9 ("[T]he theory of joint enterprise in Illinois is merely a construct to determine when two or more entities may be considered to be liable for the actions

---

[15] Plaintiffs plead civil conspiracy in a separate count.  *See* Doc. 49 (Count VI).

of any of the group when such action is related to the joint enterprise."), *with McMahan v.*

*Deutsche Bank AG*, 938 F. Supp. 2d 795, 809 (N.D. Ill. 2013) ("The function of a civil

conspiracy claim is to extend liability in tort beyond the active wrongdoer to those who have

merely planned, assisted or encouraged the wrongdoer's acts." (citation omitted) (internal

quotation marks and alterations omitted)). In fact, Plaintiffs' joint conspiracy claim is nearly

identical to their civil conspiracy claim; the two Counts contain virtually the same allegations.

*Compare* Doc. 49 ¶¶ 305–309 (conspiracy), *with* Doc. 49 ¶¶ 311–316 (joint enterprise).

Plaintiffs' joint enterprise claim is therefore duplicative of their conspiracy claim, and because

no Defendant has presented a reason to dismiss Plaintiffs' conspiracy claim, preserving

Plaintiffs' intent to hold conspirators liable for violations of state law by others in furtherance of

the conspiracy, the Court dismisses the joint enterprise claim.[16]

### 4.    Conversion (Count VIII)

Plaintiffs allege that Defendants have converted their annuity payments and fees, costs,

and attorney's fees associated the factoring transactions. To state a claim for conversion under

Illinois law, Plaintiffs must allege (1) they have a right to the property at issue; (2) they have a

right to the immediate possession of the property; (3) they have made a demand for the property;

and (4) Defendants wrongfully and without authorization assumed control or ownership of the

property. *DeGeer v. Gillis*, 707 F. Supp. 2d 784, 789 (N.D. Ill. 2010). To establish conversion

of money, "the sum in question must constitute a 'specific chattel.'" *DeGeer*, 707 F. Supp. 2d at

789 (citation omitted). Plaintiffs must plead that the money or the right to take immediate

---

[16] The JGWPT Defendants argue that without a joint enterprise claim, Plaintiffs cannot seek punitive damages. However, Illinois law allows for the recovery of punitive damages for civil conspiracy. *Sarno v. Thermen*, 608 N.E.2d 11, 21, 239 Ill. App. 3d 1034, 180 Ill. Dec. 889 (1992). To the extent the JGWPT Defendants argue that their conduct is undeserving of punitive damages, they are free to make those arguments at the appropriate time after discovery. *See Metro Premium Wines v. Bogle Vineyards, Inc.*, No. 11 C 911, 2011 WL 2432957, at *8 (N.D. Ill. June 14, 2011) (refusing to strike punitive damages claim at motion to dismiss stage where claims, if true, could support such an award).

possession of the money, describable as a specific fund or specific coins or bills, belonged to them at all times and that Defendants converted it to their own use. *United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016); *Payton v. County of Kane,* 301 F. Supp. 2d 835, 839 (N.D. Ill. 2004).

The JGWPT Defendants argue that Plaintiffs have not alleged that Defendants have no right to Plaintiffs' property. But Plaintiffs allege that the JGWPT entities—including the JGWPT Defendants and Settlement Funding, LLC—have taken money from the Plaintiffs through illegal transactions and allege the factoring transactions are unlawful because the anti-assignment clauses in Plaintiffs' structured settlement contracts were enforceable and prevented transfers of the annuity payments to Defendants. This is enough to allege that Defendants had no right to the specific chattel taken at the pleading stage.

The JGWPT Defendants also argue that Plaintiffs have not adequately alleged what property was converted because Plaintiffs allege that not only were their present and future annuity payments taken from them, but that they also lost fees, costs, and attorney's fees associated with the Mack Defendants' work on petitions for qualified orders approving factoring transactions between Settlement Funding, LLC and Plaintiffs. But Plaintiffs allege that their rights to specific annuity payments from their annuity guarantors on specific dates were taken, which is enough to specifically identify chattel to maintain a claim for conversion under Illinois law. *See, e.g.*, *DeGeer*, 707 F. Supp. 2d at 790 (plaintiff identified specific chattel for conversion claim by alleging defendant took control of specific bonus owed to him and where it could be found).

But Plaintiffs also allege that Defendants deducted fees, costs, and attorney's fees from lump sums paid to Plaintiffs and therefore converted money, and the JGWPT Defendants

challenge whether this allegation can support a conversion claim. "[A]n action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money." *In re Thebus*, 483 N.E.2d 1258, 1260, 108 Ill. 2d 255, 91 Ill. Dec. 623 (1985). Plaintiffs allege that Defendants did not pay them their full lump sum payments, diverting some to fees, costs, and attorney's fees. The fees, costs, and attorney's fees cannot be the basis for a conversion claim if Plaintiffs only allege that Defendants failed to pay the full lump sum payments; the Court, therefore, dismisses the conversion claim to the extent it alleges Defendants wrongly took fees, costs, and attorney's fees by deducting money from the lump sum payments.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Mack Defendants' motion to dismiss [63], grants in part and denies in part the JGWPT Defendants' motion to dismiss [65], and grants in part and denies in part Settlement Funding's motion to dismiss [67]. The Court dismisses Plaintiffs' claims with prejudice to the extent Plaintiffs allege that Illinois court orders approving Plaintiffs' factoring transactions are void and to the extent Plaintiffs claims are based on the propriety of the petitions' venues and disclosures. The Court dismisses JGWPT Holdings, Inc., JGWPT Holdings, LLC, and Peachtree Settlement Funding, LLC without prejudice to the extent they are alleged to be liable for harms that occurred prior to their incorporation. The Court dismisses without prejudice Plaintiffs' RICO claims because Plaintiffs have not sufficiently alleged predicate acts to support a § 1962(c) or § 1962(d) claim against any Defendant. The Court dismisses with prejudice Plaintiffs' unjust enrichment claims because Plaintiffs admit they cannot pursue the theory on which the claims rely. The Court dismisses with prejudice Plaintiffs' joint enterprise claims, which are duplicative of Plaintiffs' conspiracy claims. The Court dismisses without prejudice Plaintiffs' conversion claims to the

extent they allege conversion of fees, costs, and attorney's fees associated with petitions for approval of factoring transactions but does not dismiss the conversion claims to the extent they allege conversion of Plaintiffs' rights to their annuity payments.  Due to the SAC's overwhelming size and its reliance on theories that Plaintiffs will not and cannot pursue any longer and for the sake of judicial economy, the Court orders Plaintiffs to file a Third Amended Complaint by September 2, 2016, in a manner consistent with the Court's Opinion and Order. *See Scott v. Steingold*, No. 97 C 7871, 1998 WL 704287, at *2 (N.D. Ill. Sept. 30, 1998) (dismissing RICO complaint with leave to file amended complaint in the interests of judicial economy).

Dated: July 26, 2016

_____
SARA L. ELLIS
United States District Judge