IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VALERIO SANDERS, KENNETH JENNINGS and KEVIN RINCK, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:14-cv-9188 |
| JGWPT HOLDINGS, LLC, J.G. WENTWORTH, LLC, PEACHHI, LLC, PEACH HOLDINGS, INC., PEACHTREE FINANCIAL SOLUTIONS, LLC, PEACHTREE SETTLEMENT FUNDING LLC, SETTLEMENT FUNDING, LLC, D/B/A PEACHTREE SETTLEMENT FUNDING, BRIAN P. MACK, and THE MACK LAW GROUP, P.C., | ) ) ) ) ) ) ) ) ) ) ) | Judge Sara L. Ellis **TRIAL BY JURY REQUESTED ON THOSE CLAIMS SO TRIABLE** |
| Defendants. | ) | |

## THIRD AMENDED CLASS ACTION COMPLAINT

COME NOW Plaintiffs, Valerio Sanders, Kenneth Jennings and Kevin Rinck, by and through their attorneys, Cates Mahoney, LLC, Brad L. Badgley, P.C., The Holland Law Firm and Jeffrey M. Goldberg Law Offices, and for their Third Amended Class Action Complaint against JGWPT HOLDINGS, LLC, J.G. WENTWORTH, LLC, PEACHHI, LLC, PEACH HOLDINGS, INC., PEACHTREE FINANCIAL SOLUTIONS, LLC, PEACHTREE SETTLEMENT FUNDING LLC, SETTLELMENT FUNDING, LLC, d/b/a PEACHTREE SETTLEMENT FUNDING, BRIAN P. MACK and THE MACK LAW GROUP, P.C., state as follows:

## PARTIES

1.     At all times relevant herein, Plaintiff, Valerio Sanders, was (and is) a resident of Belleville, St. Clair County, Illinois and a citizen of the State of Illinois.

2.     At all times relevant herein, Plaintiff, Kenneth Jennings, was (and is) a resident of Chicago, Cook County, Illinois and a citizen of the State of Illinois.

3.     At all times relevant herein, Plaintiff, Kevin Rinck, was a resident of Plainfield, Will County, Illinois and a citizen of the State of Illinois, and is now a resident of Cook County, Illinois.

4.     Defendant, Peach Holdings, LLC was a Florida limited liability company formed in December, 2004.

5.     Subsequent to December, 2005, Peach Holdings, LLC, by contributing 100% of its membership interests, formed a new holding company, known as Peach Holdings, Inc. Peach Holdings, Inc. was originally formed in 2006 as a Florida for-profit corporation.

6.     In July, 2011, Peach Holdings, Inc. filed a "Certificate of Conversion" with the State of Florida with an attached "Certificate of Formation." The purpose of this filing was to convert Peach Holdings, Inc., a Florida corporation, into a Delaware limited liability company to be known as PeachHI, LLC.

7.     Thereafter, in July, 2011, PeachHI, LLC became a Delaware limited liability company with its principal place of business for PeachHI, LLC at 3301 Quantum Boulevard, Boynton Beach, Florida, 33426-8622. (This address remains the principal place of business for PeachHI, LLC.)

8.     PeachHI, LLC assumed all of the assets and liabilities of Peach Holdings, Inc.

9. PeachHI, LLC thus became the holding company for all of the assets and liabilities for the wholly owned, for profit, direct and indirect, subsidiaries that were in the business of purchasing deferred payment annuities (e.g., structured settlements) for an amount far less than the lifetime value of the annuity itself.

10. Prior to July, 2011, and at all times relevant herein, PeachHI, LLC, was joined with its wholly owned, direct and indirect, subsidiaries. These included Peachtree Financial Solutions, LLC, whose principal place of business was (and is) 3301 Quantum Boulevard, Boynton Beach, Florida, 33426-8622, Peachtree Settlement Funding LLC, whose principal place of business was (and is) 3301 Quantum Boulevard, Boynton Beach, Florida, 33426-8622, and Settlement Funding, LLC, a Delaware limited liability company, amongst others, for the purpose of purchasing deferred payment annuities, i.e., structured settlements.

11. At all times relevant herein, Peachtree Financial Solutions, LLC [1], Peachtree Settlement Funding LLC and Settlement Funding, LLC, along with other PeachHI, LLC entities, were in the business of purchasing deferred payment annuities (e.g., structured settlements) for an amount far less than the lifetime value of the annuity itself.

12. At all times relevant herein, Settlement Funding, LLC was also doing business as Peachtree Settlement Funding.

13. In May, 2011, PeachHI, LLC, and all of its wholly owned direct and indirect subsidiaries, joined with J.G. Wentworth, LLC, a Delaware limited liability company, to form a new company, JGWPT Holdings, LLC.

14. JGWPT Holdings, LLC is a Delaware corporation with its principal place of business located at 201 King of Prussia Road, Radnor, Pennsylvania 19087-5148.

---

[1] Liable only for conduct since formation on July 20, 2011

15.     As of the filing of this complaint, JGWPT Holdings, LLC and PeachHI, LLC, through its various J.G. Wentworth direct and indirect subsidiaries, and through the Peachtree Financial entities, including J.G. Wentworth, LLC, Peachtree Financial Solutions, LLC, Peachtree Settlement Funding LLC and Settlement Funding, LLC, have purchased and continue to purchase deferred payment annuities, otherwise referred to as structured settlements, from individuals/sellers.  (The combined entities, including all of the direct and indirect subsidiaries and partners of JGWPT Holdings, LLC and PeachHI, LLC will be referred to hereafter as, "the JGWPT entities.")

16.     At all times relevant herein, the JGWPT entities, such as J.G. Wentworth, LLC, Peachtree Financial Solutions, LLC, Peachtree Settlement Funding LLC and Settlement Funding, LLC, have played distinct roles in carrying out the conspiracy described herein.

17.     At all times relevant herein, the JGWPT entities, were doing business in the State of Illinois and actively filing cases in the Illinois state courts.

18.     As of the filing of Plaintiff's original complaint, JGWPT Holdings, LLC and the named Defendants were (and are) responsible for any and all of the conduct of any wholly owned, direct and indirect subsidiaries and partners, each of whom were separately engaged in the same conduct of purchasing deferred payment annuities, such as structured settlements, from individuals/sellers.

19.     At all times relevant herein, Brian P. Mack was (and is) an attorney licensed to practice law in the State of Illinois.

20.     At all times relevant herein, Brian P. Mack was (and is) a citizen of the State of Illinois.

21.     Brian P. Mack is a principal in The Mack Law Group, P.C., a law firm organized as an Illinois professional corporation with its principal place of business located at 20 South Clark Street, Suite 500, Chicago, Illinois, 60603.

## JURISDICTION AND VENUE

22.     Jurisdiction exists pursuant to 28 U.S.C. §1332(d) as minimal diversity of citizenship exists, the putative class consists of more than 100 members, and the amount-in-controversy exceeds $5,000,000.00.

23.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a), as Defendant Brian P. Mack, and The Mack Law Group, P.C., reside in this district.

## CLASS ACTION ALLEGATIONS

24.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs, on behalf of themselves and all others similarly situated, seek to represent the following class:

> Those individuals who sold all or a part of their structured settlement annuities to the Defendants, their affiliates or subsidiaries, under the provisions of the Illinois Structured Settlement Protection Act,[2] where the original structured settlement contract contained a valid and enforceable anti-assignment clause.

> Excluded from the Class are:  1) Any employees of the named Defendants, including all of the JGWPT direct and indirect subsidiaries and their officers and agents, and the immediate family of those persons; 2) Plaintiffs' Counsel; and 3) the Judge of the Court and any court personnel to which this case is assigned.

25.     Plaintiffs further state that the requirements of Federal Rule of Civil Procedure 23 have been met, in that:

a.     The members of the class are so numerous that joinder of all members is impracticable.  The class encompasses a multitude of individuals who sold their structured settlements to the JGWPT entities by filing petitions in Illinois courts relying on the applicability

---

[2] 215 ILCS 153/1,  *et seq.*

of the Illinois Structured Settlement Protection Act as the basis for obtaining a "Qualified Order" despite the fact that the seller's structured settlement contract contained a valid and enforceable anti-assignment clause.

      b.    Common questions of law and fact predominate over any questions affecting only individual members of the class. Such common questions include, but are not limited to:

> (1)    Whether the JGWPT entities, including the named JGWPT Defendants herein, engaged in a common scheme to defraud the Illinois courts by using the Illinois Structured Settlement Protection Act to obtain a "Qualified Order" when they knew, or should have known that the seller of the annuity had a valid and enforceable anti-assignment provision <u>in the annuity contract</u> that prohibited the assignment of the deferred payments; and/or,

> (2)    Whether Brian P. Mack, The Mack Law Group, P.C., or any other attorneys hired by the JGWPT entities, engaged in a common scheme to defraud the Illinois courts by using the Illinois Structured Settlement Protection Act to obtain a "Qualified Order" when they knew, or should have known that the seller of the annuity had a valid and enforceable anti-assignment provision <u>in the annuity contract</u> that prohibited the assignment of the deferred payments; and/or,

> (3)    <u>Whether the JGWPT entities, including the named JGWPT Defendants herein, engaged in a common scheme to conspire to breach various fiduciary duties and interfere with Plaintiffs' contracts; and/or,</u>

> (4)    Whether the JGWPT entities, including the named JGWPT Defendants herein, violated their fiduciary duties by failing to represent, or falsely representing, that Plaintiffs and the members of the putative class were not legally allowed to sell or encumber their structured settlements under Illinois law because the sellers were bound by enforceable anti-assignment clauses; and/or,

> (5)    Whether Brian P. Mack and The Mack Law Group, P.C. violated their fiduciary or professional responsibilities by failing to represent, or falsely representing, that Plaintiffs and the members of the putative class were not legally allowed to sell or encumber their structured settlements under Illinois law because of the

existence of a valid and enforceable anti-assignment clause; and/or,

(6)    Whether the JGWPT entities, including the named JGWPT Defendants herein, engaged in a conspiracy to defraud, or otherwise tortiously deprive members of the class of their deferred-payment annuities by filing false pleadings in the Illinois courts, knowing that they could not otherwise obtain the deferred payments under the class member's structured settlement agreement because the agreement contained a valid and enforceable anti-assignment clause; and/or,

(7)    Whether Brian P. Mack, The Mack Law Group, P.C., or any other attorneys hired by the JGWPT entities, engaged in a conspiracy to defraud, defrauded, or otherwise tortiously deprived members of the class out of their deferred-payment annuities by filing false pleadings in the Illinois courts, knowing that the JGWPT entities could not otherwise obtain the deferred payments under the class members' structured settlement agreement because the agreement contained a valid and enforceable anti-assignment clause; and/or,

(8)    Whether Settlement Funding, LLC engaged in tortious interference with contracts; and/or,

(9)    Whether Brian P. Mack, The Mack Law Group, P.C., or any other attorneys hired by the JGWPT entities engaged in tortious interference with contracts; and/or,

(10)    Whether the JGWPT entities engaged in a conspiracy to tortiously interfere with contracts; and/or,

(11)    Whether Brian P. Mack, The Mack Law Group, P.C., or any other attorneys hired by the JGWPT entities engaged in a conspiracy to tortiously interfere with contracts; and/or,

(12)    Where the JGWPT entities intentionally filed, or caused to be filed, false pleadings with Illinois Courts in an attempt to avoid federal tax liability under 26 U.S.C. §130.

c.    Plaintiffs are members of the class and will fairly and adequately assert, represent and protect the interests of the class. The interests of Plaintiffs are coincident with, and not antagonistic to, those of the other members of the class. Plaintiffs have retained attorneys

who are experienced in class action litigation. The claims of Plaintiffs in this proposed class action assert claims typical of those individual members of the proposed class.

      d.    The prosecution of separate actions by individual members of the class could lead to inconsistent or varying adjudications with respect to individual members of the class and could substantially impair or impede the ability of other class members to protect their interests.

      e.    The class action vehicle is the most appropriate and superior form for the fair and efficient adjudication of this claim, given that:

    (1)    Common questions of law or fact predominate over any individual questions that may arise, such that there would be enormous economies to the courts and the parties in litigating the common issues on a class-wide basis instead of a repetitive individual basis;

    (2)    Class members' individual damage claims are too small to make individual litigation an economically viable alternative;

    (3)    Class treatment is required for optimal deterrence and compensation and for limiting legal expenses incurred by class members;

    (4)    Despite the relatively small size of individual class members' claims, their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with repetitive individual litigation;

    (5)    No unusual difficulties are likely to be encountered in management of this action as a class action in that all questions of law or fact to be litigated at the liability stage are common to the class; and,

    (6)    Class certification is fair and efficient because prosecution of separate actions would create a risk of adjudications with respect to individual members of the class which, as a practical matter, may be dispositive of the interests of other members not parties to the adjudication, or may substantially impair or impede their ability to protect their interests.

## **FACTS COMMON TO ALL COUNTS**

26.     At all times relevant herein, the JGWPT entities were engaged in the business of purchasing deferred payment annuities, such as structured settlements, from individuals/sellers.

27.     Hundreds of thousands of dollars' worth of these purchases were made from individuals who had received deferred payment annuities (i.e. structured settlements) as a result of having filed or having been the beneficiary of personal injury claims.

28.     J.G. Wentworth, LLC, Peachtree Financial Solutions, LLC, Peachtree Settlement Funding LLC and Settlement Funding, LLC were some of the JGWPT entities that engaged in the business of purchasing deferred payment annuities, such as structured settlements, from individuals/sellers.

29.     At various times relevant herein, the JGWPT entities misrepresented to individuals/sellers that they were competitors as opposed to being subsidiaries of each other or affiliated or related entities and thus not competitors.

30.     Each of the various JGWPT entities, despite being subsidiaries or wholly owned by a parent corporation, represented themselves to structured settlement companies as "competitors."

31.     Each of the various JGWPT entities used their different names to convince potential customers to sell the annuities to the JGWPT entities, despite the fact that the sellers could receive a better offer if they had known that the JGWPT entities were interrelated or if they had chosen to contact a group outside of the JGWPT entities.  '

32.     Each of the various JGWPT entities sends out advertisements or solicitations and "cold-calls" structured settlement recipients without disclosing their affiliation with the other JGWPT entities for the purpose of enticing potential sellers to do business with them instead of

their competitors, when in fact the other JGWPT entities are not their actual competitors, all to the sellers' detriment.

33.     At all times relevant herein, each of the various JGWPT entities are and were aware of the fact that Illinois law bars the transactions that they engaged in and seek to engage in, but each of the JGWPT entities have collectively decided to intentionally refrain from providing that information to Plaintiffs or potential sellers.

34.     Each of the various JGWPT entities utilize one of a handful of attorneys to carry out the detailed scheme to purchase structured settlements in violation of Illinois law as set forth herein.

35.     Upon information and belief, the various JGWPT entities utilized common resources to locate potential structured settlement recipients and determine methods of contacting them.

36.     Upon information and belief, the various JGWPT entities formed a joint enterprise to locate structured settlement recipients and to convince the potential sellers to sell their structured settlements.

37.     As evidence of the commingling of assets, resources and the conspiracy, on numerous occasions where the pleading filed in court was represented as filed by Settlement Funding, LLC, and the subject Assignment Contract was also represented as between the structured settlement recipient and Settlement Funding, LLC, the Affidavit that was prepared by Defendants and signed by the structured settlement recipient would aver that "Peachtree" was the

entity providing disclosure statements or requesting that the structured settlement recipient perform certain acts.[3]

38.     Potential clients with structured settlements and their contact information were shared among the JGWPT entities such that more than one of the JGWPT entities would call or send information via the United States mail to a potential seller.

39.     Upon information and belief, the conspiracy was formed in part for the unlawful purpose of purchasing structured settlements in Illinois which the JGWPT entities knew was in violation of the law in the State of Illinois.

40.     Upon information and belief, the conspiracy was also formed in part for the unlawful purpose of avoiding payment of federal taxes, which the JGWPT entities knew was against federal law.

41.     Upon information and belief, as part of this conspiracy, the JGWPT entities pooled resources, including staff and assets, in order to develop locations throughout the United States whereby the JGWPT entities could bring petitions to transfer structured settlements and have them approved with the least amount of scrutiny.

42.     This process involved researching attorneys and judges in various Illinois districts to determine the best locations in which to file petitions despite their shared knowledge that the petitions had no relation to the venue that they ultimately selected.

43.     In order to induce individuals to sell their deferred payment annuities (*hereafter* alternatively referred to as "annuities" or "structured settlements"), the JGWPT entities, including the JGWPT Defendants herein, used television, radio, print advertising and the internet to market themselves. In addition to the foregoing, at least one J.G. Wentworth entity,

---

[3] As further evidence of the interrelatedness of Defendants and the joint ownership and comingling of assets and resources, this Court can take judicial notice of the Corporate Disclosure statements filed in this matter [Doc. 3] which are admissions by JGWPT entities .

Settlement Funding, LLC, doing business as Peachtree Settlement Funding, would directly contact and solicit individuals who became beneficiaries of deferred payment annuities. These letters of solicitation and telephone calls would promise "quick cash" in exchange for the sale of the deferred benefits.

44.     For example, J.G. Wentworth used the Internet and YouTube to solicit sellers with a commercial, claiming:  "It's my money, and I need it now!"   At the conclusion of the video, an individual appears who says:  "It's your money, use it when you need it."  Underneath the video is "JG Wentworth – It's My Money & I Need it Now" commercial.  During the commercial is a continuous-running toll-free number – 1-866-386-3102.  *See*, http://www.youtube.com/watch?v=HX0fIi3H-es

45.     The Peachtree Financial Solutions, LLC website contains a video bearing a similar message which is called "Bridge the Gap."  *See,* http://www.peachtreefinancial.com/settlement-funding/how-it-works/.

46.     The video depicts how Peachtree Settlement Funding[4] can deliver "quick cash" to a beneficiary of a deferred payment annuity.  The process is illustrated with an animated dog standing in front of an empty food bowl while Peachtree Financial Solutions, LLC "bridges the gap" by building a bridge across a ravine to a pile of money.



*See*, http://www.peachtreefinancial.com/settlement-funding/how-it-works/.

---

[4] Settlement Funding, LLC is d/b/a Peachtree Settlement Funding.

47.     The video asks potential sellers:  "Do you need money now?  Do you have a structured settlement, but the monthly check isn't enough?  Do you need a way to bridge the gap and avoid a fall?  Peachtree can help you build a bridge to your money. …."  The video goes on to solicit the seller by illustrating and narrating the steps involved in getting the money.

48.     Specifically, those steps are identified as follows:   "Step 1 – We discuss your needs and confirm that our transaction matches those needs.  Peachtree offers the assistance you need.  Step 2 – We determine the value of your structured settlement payments over time and identify options available. Peachtree has years of experience and knows how to find a solution. Step 3 – We answer all of your questions and gather the necessary documentation.  Peachtree has simple, easy and efficient processes.  Step 4 – We prepare for and explain the court process, how it works, who needs to be present, and how long it takes.  Peachtree has a high rate of court approvals, and knows how to manage the process for you.   Step 5 – You've got money.  Peachtree has the financial backing to get you your cash quickly.  After funding, Peachtree is here to answer any additional questions.  We have established a solid foundation to insure a long-term relationship with you.  Just give us a call. And, once the bridge is built, it is easier to access more funds in the future.  Peachtree – building the bridge to your money."     *See*, http://www.peachtreefinancial.com/settlement-funding/how-it-works/. [5]

49.     In April, 2008, J.G. Wentworth launched a television commercial in an opera format that shows a Viking, singing:  "I have a structured settlement and I need cash now.  Call J.G. Wentworth – 877-CASH-NOW."   *See*, http://www.youtube.com/watch?v=ZbGw3A9Dg-Q. The commercial continues to solicit individuals with structured settlements to call J.G. Wentworth because, "It's your money.  Use it when you need it…"

---

[5] Importantly, for purposes of this Third Amended Complaint, Peachtree Financial has changed this page of its website to remove Steps 4 and 5.  See new webpage: http://peachtreefinancial.com/settlement-funding/how-it-works/

50.     Another J.G. Wentworth commercial launched in March, 2010, begins with the picture of a bus that shows as its destination:  "Structured Settlements."  The commercial then moves to inside the bus where a woman bus rider begins singing:  "I have a structured settlement and I need cash now.  Call J.G. Wentworth – 877-CASH-NOW."  The commercial continues to solicit individuals with structured settlements to call J.G. Wentworth because, "It's your money. Use it when you need it…"  *See*, http://www.youtube.com/watch?v=cN9OKXtzHtE.

51.     The purpose of the various websites, videos, print/television advertisements, and written and personal solicitations, was to fraudulently induce individuals to sell their future guaranteed payments from a structured settlement to one of the various JGWPT entities, including the Defendants herein, in exchange for an upfront, deeply discounted, lump sum cash payment.

52.     The JGWPT entities marketed themselves with the intent that potential sellers who saw these various forms of advertising would rely on the representations being made by the JGWPT entities that "quick cash" was available in exchange for the sale of structured settlement deferred payments.

53.     The JGWPT entities neither indicated that they were commonly owned nor that, without consent of all parties, it was against Illinois law to sell structured settlements which contain an anti-assignment clause.[6]

54.     In fact, the affidavits prepared by Settlement Funding, LLC and its' attorneys, which are presented to the potential sellers, state that Settlement Funding, LLC is actually doing business as "Peachtree Settlement Funding."  [*See* Exhibits 1-3 herein.][7]

---

[6] A "google" search of Settlement Funding, LLC done on June 17, 18, and 19, 2014 revealed that Peachtree Financial Solutions, an entity involved in the conspiracy, is the second organic search result.  There is no website for "Settlement Funding, LLC" as that entity is named herein.

55.     This fact is not disclosed in court filings, and, given that many of the various JGWPT entities involved in this conspiracy contain names which originate from the root word "peach," it further demonstrates the intentional obfuscation of which entity is actually doing business with a potential seller and what entity is responsible for the documents a potential seller receives.

56.     Indeed, the "Agreement" which allegedly forms the basis between the parties contains no reference to "Peachtree," yet the affidavit prepared for the structured settlement recipients claims that "Peachtree" made certain representations and disclosures to them.[8]

57.     Upon information and belief, the various JGWPT entities attempt to secure multiple purchases of annuity payments by using many different names and companies to purchase them.

58.     By way of example, and as this Court will see in the attached exhibits, Defendant, Settlement Funding, LLC, directs the individuals selling their annuities to sign affidavits that claim Settlement Funding, LLC is doing business as Peachtree Settlement Funding. Yet Peachtree Settlement Funding, LLC is allegedly a separate and distinct Nevada corporation that purchases annuities from payees in its own right.

59.     Upon information and belief, the JGWPT entities share resources, including client lists, in an attempt to identify potential sellers of structured settlements using various means, such as the websites identified herein, in order to generate leads and to ensure potential sellers receive multiple solicitations from all of them.

---

[7] This is of further concern as many of the Plaintiffs believe that Brian P. Mack was their lawyer and this is bolstered by the fact that the Defendants prepared legal forms for the Plaintiffs to sign and submit to Courts.

[8] The Agreement was prepared by legal counsel for the parties and was not prepared by the Plaintiffs or the putative members of the Class. In addition, the Defendants knew that the purpose of the agreement was to obtain an unlawful result in a Court of law; the Plaintiffs and the Class did not know the purpose of the contract was illegal and entered into the agreement in good faith.

60.     Those JGWPT entities that sent direct solicitations or telephoned potential sellers of structured settlements also intended that potential sellers who received these individual solicitations would rely on the representations being made by the JGWPT entities on their websites, promotional materials and the sales pitches of the JGWPT entities' employees.

61.     Upon information and belief, through direct or written communications, the JGWPT entities told the members of the class that they would "prepare for and explain the court process, how it works, who needs to be present, and how long it takes."

62.     Upon information and belief, through the same methods referenced above, the JGWPT entities represented to the members of the class that they had "a high rate of court approvals, and know how to manage the process for you."

63.     The putative class members herein and Plaintiffs did rely on the representations made by the JGWPT entities and sold either part, or all, of their deferred payment annuities under circumstances where the sale of these funds was contrary to Illinois law, and were a fraud upon the Internal Revenue Service of the United States Government under 26 U.S. Code § 130.

64.     The purchase of the deferred payments for an amount that is discounted to present cash value is generally known as "factoring." The JGWPT entities are "factoring companies." That is, they purchase the deferred settlement payments for an amount less than the long-term value of the annuity at a discounted rate.

65.     The circumstances which gave rise to Plaintiffs selling their deferred payment annuities are an example of the common and ubiquitous practice utilized by the JGWPT entities, including the JGWPT Defendants herein, to induce individual sellers to sell their structured settlements under fraudulent circumstances, as hereafter described.

66.     Plaintiffs herein were the beneficiaries of a structured settlement contract.  As a part of that settlement contract, the parties entered into a "Qualified Assignment, Release and Pledge Agreement."   These types of agreements are common because Section 130(a) of the Internal Revenue Code states that:  "Any amount received for agreeing to a qualified assignment shall not be included in gross income to the extent that such amount does not exceed the aggregate cost of any qualified funding assets."  26 U.S. Code § 130.  In other words, the periodic payments received from a structured settlement, entered into through the use of a qualified assignment, are "tax-free" to the beneficiary of the annuity.

67.     Because of the tax free nature of the deferred payments, many of the structured settlement agreements contain anti-assignment clauses – clauses that prohibit the beneficiary of the structured settlement from transferring or assigning the deferred payments.

68.     In 1999, in a case of first impression in Illinois, <u>Henderson v. Roadway Express</u>, <u>308 Ill.App.3d 546, 242 Ill.Dec. 153 at 157-58, 720 N.E.2d 1108, at 1112-1113 (1999)</u>, the Fourth District Appellate Court upheld the enforceability of the anti-assignment clause in a structured settlement contract.

69.     The <u>Henderson</u> Court stated:

> We find the anti-assignment provision was a bargained for provision that was intended to benefit all parties and, therefore, is enforceable against Henderson. As the United States Treasury Department has recently explained:
> 'Congress enacted favorable tax rules intended to encourage the use of structured settlements—and conditioned such tax treatment on the injured person's inability to accelerate, defer, increase[,] or decrease the periodic payments—because recipients of structured settlements are less likely than recipients of lump[-]sum awards to consume their awards too quickly and require public assistance.' United States Treasury Department, General Explanations of the Administration's Revenue Proposals, at 20 (February 1998).
>
> Structured settlements and the favorable tax treatment they enjoy also help guarantee predictability for insurers, which is important for transactions involving long-term liabilities. The current favorable tax treatment afforded to both annuity

owners, annuity issuers, and claimants presupposes that (1) the structured settlement payments constitute tax-free injury compensation to the recipient, and (2) the structured settlement recipient can receive the settlement payments only when they are due and cannot accelerate the payments or otherwise derive present economic benefit from payments due in the future. United States Treasury Department, General Explanations of the Administration's Revenue Proposals, at 20 (February 1998). More important than whether or not these tax concerns are real or will actually arise is the fact that the parties implemented the anti-assignment provisions with these concerns in mind. The language of the provisions tracks the qualified assignment language of section 130(c)(2)(B) of the Internal Revenue Code. 26 U.S.C. § 130(c)(2)(B) (1994). Clearly, the provisions were bargained for and cannot be simply discarded or waived.

720 N.E.2d at 1112-1113.

70. Since the Henderson court invalidated the transfer of an annuity in the face of an anti-assignment clause, five additional appellate courts in Illinois have invalidated the transfer of a structured settlement agreement where there is an anti-assignment clause. *See,* Settlement Funding, LLC v. Brenston, 2013 Il.App (4th) 120869, 998 N.E.2d 111, 375 Ill.Dec. 819; In re Foreman, 365 Ill.App.3d 608, 614, 302 Ill.Dec. 950, 850 N.E.2d 387, 392 (2nd Dist. 2006); Shaffer v. Liberty Life Assur. Co. of Boston, 319 Ill.App.3d 1048, 253 Ill.Dec. 837, 746 N.E.2d 285 (1st Dist. 2001); In re Nitz, 317 Ill.App.3d 119, 250 Ill.Dec. 632, 739 N.E.2d 93 (2nd Dist. 2000); Green v. Safeco Life Ins. Co., 312 Ill.App.3d 577, 245 Ill.Dec. 140, 727 N.E.2d 393 (5th Dist. 2000).[9]

71. Defendant, Brian P. Mack, was the attorney of record in the cases of Henderson, Shaffer, Nitz, and Brenston.

72. If there is no anti-assignment provision in the structured settlement contract, the beneficiary of the annuity has the ability to sell the deferred payments in the annuity. However,

---

[9] As further evidence that the JGWPT entities are aware their conduct is unlawful, the JGWPT entities have suspended their activities in Illinois. Nonetheless, representatives for the JGWPT entities are representing to prospective clients that the freeze on purchasing structured settlements is only for a limited time as there is a legal case pending (this one) that will be dismissed by this Court, and as soon as this occurs the purchase of structured settlements will resume.

because these annuity contracts receive favorable tax benefits,[10] where the beneficiary transfers his/her right to receive structured settlement payments in a structured settlement "factoring transaction," then the federal government imposes "a tax equal to 40 percent of the factoring discount as determined under 26 U.S.C.A. § 5891(c)(4) with respect to the factoring transaction." *See*, 26 U.S.C.A. § 5891(a).

73.     In order to avoid the tax liability, the U.S. Code allows for a specific exception. That exception states:  "The tax under subsection (a) shall not apply in the case of a structured settlement factoring transaction in which the transfer of structured settlement payment rights is approved in advance in a **<u>qualified order</u>**."  26 U.S.C.A. § 5891(b).  [emphasis added.]

74.     More specifically, the purpose of 26 U.S.C.A. § 5891 is to deter the purchasers of deferred-payment rights (such as the JGWPT entities) from taking advantage of the beneficiaries of these structured settlements who are entitled to receive tax-free settlement payments.  The tax imposed is basically a penalty tax imposed on purchasers of deferred-payment rights under structured settlements. The practical effect of Section 5891 is to compel the JGWPT entities, including the JGWPT Defendants herein, and other factoring companies to comply with State structured settlement protection acts,[11] which require that transfers of structured settlement payment rights receive advance court (or administrative authority) approval.

75.     For those States, like Illinois, that have enacted a formal, State structured settlement act, the law provides the vehicle by which the factoring companies, like the JGWPT entities, can receive a "Qualified Order" and avoid paying the penalty tax.

76.     Under the terms of Section 5891, a "Qualified Order means a final order, judgment, or decree which -

---

[10] *See*, 26 U.S.C.A. §130.
[11] As referenced heretofore, Illinois has enacted the Structured Settlement Protection Act, 215 ILCS 153/1, *et seq.*

(A)      finds that the transfer described in paragraph (1) –

          (i)      does not contravene any Federal or State statute or the order of any court or responsible administrative authority, and

          (ii)      is in the best interest of the payee, taking into account the welfare and support of the payee's dependents, and

(B)      is issued –

          (i)      under the authority of an applicable State statute by an applicable State court, or

          (ii)      by the responsible administrative authority (if any) which has exclusive jurisdiction over the underlying action or proceeding which was resolved by means of the structured settlement.

26 U.S.C.A. § 5891(b)(2).

77.      The term "issued under the authority of an applicable State statute" means: a statute providing for the entry of an order, judgment, or decree described in paragraph (2)(A) which is enacted by -

(A)      the State in which the payee of the structured settlement is domiciled, or

(B)      if there is no statute described in subparagraph (A), the State in which either the party to the structured settlement (including an assignee under a qualified assignment under section 130) or the person issuing the funding asset for the structured settlement is domiciled or has its principal place of business.

26 U.S.C.A. § 5891(b)(3).

78.      The term "applicable state court" means: with respect to any applicable State statute, a court of the State which enacted such statute. *See*, 26 U.S.C.A. § 5891(b)(3).

79.      Once a court issues the "Qualified Order," that order is "dispositive for purposes of the exception under this subsection." 26 U.S.C.A. § 5891(b)(5). In other words, the tax is not due where there is a "Qualified Order" entered.

80.     Illinois enacted the Structured Settlement Protection Act, 215 ILCS 153/1, *et seq*. (*hereafter* "the Act"), to allow beneficiaries of structured settlements to sell their deferred payments to factoring companies, such as the JGWPT entities, including the JGWPT Defendants herein.

81.     As noted by the many appellate opinions examining this issue:

> The Illinois General Assembly enacted provisions of the Structured Settlement Protection Act (215 ILCS 153/1 to 35 (West 2004)), and its predecessor statute (215 ILCS 5/155.34 (West 1998)), to protect settlement recipients from the growing number of factoring companies using the allure of quick and easy money to induce settlement recipients to cash out their future payments at substantial discounts, depriving victims and their families of the long-term financial security the structured settlements were designed to provide. *See*, *In re Shaffer,* 319 Ill.App.3d 1048, 1057, 253 Ill.Dec. 837, 746 N.E.2d 285, 293 (2001); *In re Nitz,* 317 Ill.App.3d 119, 123, 250 Ill.Dec. 632, 739 N.E.2d 93, 97–98 (2000).

Brenston, 998 N.E.2d at 119.

82.     This Act requires certain disclosures be made to the Court and prevents the assignment or transfer of deferred annuity payments without meeting many pre-conditions that are designed to protect the seller from the consequences of their sale to factoring companies, such as the JGWPT entities, including the Defendants named herein.

## **FACTS SPECIFIC TO THE PLAINTIFFS**

### **Valerio Sanders**

83.     As noted previously, Plaintiff, Valerio Sanders, herein was the beneficiary of a structured settlement contract.  The settlement contract was structured to provide Plaintiff, Valerio Sanders ("Sanders"), deferred payments as follows:

> One Hundred Fifty Dollars and No Cents ($150.00) monthly beginning 01-27-1996 through 4-27-2008, increasing 5% and compounded annually (148 payments guaranteed).  The obligation of Howard University to make

the first monthly payment of One Hundred Fifty Dollars and No Cents ($150.00) due on January 27, 1996 for Valerio Montez Sanders will be discharged upon mailing a check or sending _via_ wire transfer such payment to the specified address within 30 days of the execution of this Settlement Agreement.

Thirty Six Thousand Five Hundred Ten Dollars and No Cents ($36,510.00) annually beginning 04-27-2004 through 04-27-2007 (4 payments guaranteed).

Fifty Thousand Dollars and No Cents ($50,000.00) lump sum guaranteed on 04-27-2011.

One Hundred Thousand Dollars and No Cents ($100,000.00) lump sum guaranteed on 04-27-2016.

84.     The structured settlement contract also contained a "Non-assignment" provision which stated:  "The periodic payments to be received by the Payee(s) pursuant to paragraph 28   are not subject to anticipation, alienation, sale or transfer, assignment, pledge or encumbrance by Payee(s)."     Sanders was one of the payees to which this clause applied.

85.     In other words, the beneficiary of the structured settlement had no right to assign or transfer any of the periodic payments.  This "non-assignment" provision is also known as an anti-assignment clause.

86.     The circumstances of Sanders' commercial transactions are common to all of the commercial transactions entered into by members of the putative class in selling their deferred payment annuities to the JGWPT entities, including Defendants herein.

87.     Further, the paperwork filed by Brian P. Mack, through his law office, The Mack Law Firm, P.C., and the paperwork filed by other attorneys and/or law firms retained by the JGWPT entities was common for all of the JGWPT entities represented in the commercial transactions, including Defendants herein.

88.     More specifically, Plaintiff, Valerio Sanders, while a minor, became the beneficiary of a deferred payment annuity as a result of the settlement of a personal injury claim.

89.     At the time the structured settlement was entered into, an Estate had to be opened for Sanders, as he was a minor.  That Estate was opened in St. Clair County, Illinois,[12] where Valerio Sanders resided.

90.     When Valerio Sanders became an adult, he began receiving telephone calls, on his cell phone, from one of the JGWPT entities. The JGWPT entity offered to buy out his deferred payments for a quick, lump sum of cash.  Upon information and belief, Sanders believes the first telephone calls were from an individual named Priscilla Wright, who identified herself as being with "Peachtree."

91.     Upon information and belief, the JGWPT entities share employees that represent themselves as working for a number of the JGWPT entities and can approve transactions on behalf of multiple JGWPT entities.

92.     When Sanders refused, Settlement Funding, LLC, d/b/a "Peachtree" sent "sample checks" via the U.S. mail, offering to make money readily available in exchange for the sale of his deferred payment annuities.

93.     At first, Sanders refused.  However, in 2006, Sanders was in need of some cash. Therefore, relying on the representations of Peachtree, Valerio Sanders contacted the JGWPT entity in order to sell a portion of his deferred-payment annuity.

94.     Upon indicating his desire to sell a portion of his annuities, attorney Brian P. Mack contacted Sanders to set up the paperwork.

---

[12] The Estate was opened in the Twentieth Judicial Circuit, St. Clair County, Illinois, 96-P-0010.

95.     On September 1, 2006, on behalf of Settlement Funding, LLC, not "Peachtree," attorney Brian P. Mack filed a "Petition for Approval Of Transfer Of Structured Settlement Payment Rights Between Settlement Funding, LLC And Valerio Montez Sanders."[13]   This Petition was filed in the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois, Cause No. 06-MR-246.  [*See* Exhibit 4 herein.]

96.     The Petition stated that it was being brought "pursuant to the Illinois Structured Settlement Protection Act, 215 ILCS 153/1, *et seq*., and the Federal Tax Code, 26 USC Section 5891, *et seq*….."

97.     In paragraph 4 of said Petition, Brian P. Mack informed the court that Settlement Funding, LLC was seeking a "Qualified Order," as required by "26 USC 5891, et. seq."

98.     Attached to the Petition was Exhibit A, the "Settlement Agreement and Release." Paragraph 4 of the Agreement stated as follows:

> **4.     Nonassignment**
>
> The periodic payments to be received by the Payee(s)[14] pursuant to paragraphs 2B are not subject in any manner to anticipation, alienation, sale or transfer, assignment, pledge or encumbrance by Payee(s).

99.     The prayer for relief in the Petition sought an "Order pursuant to 215 ILCS 153/1, et seq., and Section 26 USC Section 5891, approving the sale and assignment of structured settlement payment rights…"

100.     The Petition filed by Brian P. Mack also claimed:  "That the assignment does not contravene any federal or state statutes or the order of any court or responsible administrative authority."   At the time Brian P. Mack alleged this in his Petition on behalf of <u>Sanders</u> and

---

[13] At the time Brian P. Mack filed this Petition, he was affiliated with the law firm of Richardson, Stasko, Boyd & Mack, LLC.

[14] Valerio Sanders was one of the Payee(s) referenced.

Settlement Funding, LLC, Brian P. Mack knew that this allegation was false and misleading as Sanders' settlement contract had a valid and enforceable anti-assignment clause.

101.    Attached to the Petition were additional Exhibits, all prepared by Brian P. Mack.

102.    Despite Brian P. Mack's knowledge that without express consent from all parties, Illinois law would not allow a transfer of the deferred payments under the Illinois Structured Settlement Protection Act because of Sanders' valid and enforceable anti-assignment clause, Brian P. Mack nevertheless presented his Petition to a St. Clair County court.  The presiding judge approved the Petition and, on September 15, 2006, issued a "Qualified Order" prepared by Brian P. Mack.

103.    Neither Brian P. Mack, the Mack Law Group, P.C., Settlement Funding, LLC, nor any of the JGWPT entities informed Sanders that the transaction was unlawful under Illinois law.

104.    The "Qualified Order" allowed for all of the relief sought by Settlement Funding, LLC.  The result was that the Court approved an order allowing Sanders to transfer $47,010.00 to Settlement Funding, LLC in exchange for the lump sum of "$36,475.92, less legal and processing fees."  [*See* Exhibit 5 herein.]

105.    The conduct of Brian P. Mack and Settlement Funding, LLC in their failure to inform Sanders that the order obtained from the court was in violation of Illinois and federal law was contrary to applicable law.

106.    Subsequent to the Order entered on September 15, 2006, Peachtree, through a woman named Priscilla Wright, continued to directly solicit Sanders to induce him to sell additional deferred payments, offering quick cash.

107. Subsequently, Sanders again agreed to enter into a commercial transaction with Settlement Funding, LLC wherein Sanders offered to sell additional deferred payments to Settlement Funding, LLC.

108. Again, Brian P. Mack was the attorney contacted by Settlement Funding, LLC. Brian P. Mack again prepared all of the necessary paperwork, including the legal paperwork, for the completion of the commercial factoring transaction.

109. On April 25, 2007, on behalf of Settlement Funding, LLC, Brian P. Mack again filed a "Petition for Approval Of Transfer Of Structured Settlement Payment Rights Between Settlement Funding, LLC, And Valerio Montez Sanders."[15] This Petition was filed in the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois, Cause No. 07-MR-118. [*See* Exhibit 6 herein.]

110. The Petition again stated that it was being brought "pursuant to the Illinois Structured Settlement Protection Act, 215 ILCS 153/1, *et seq*., and the Federal Tax Code, 26 USC Section 5891, *et seq*....."

111. In paragraph 4 of said Petition, Brian P. Mack informed the court that Settlement Funding, LLC was seeking a "Qualified Order," as required by "26 USC 5891, et. seq."

112. Again, none of the JGWPT entities nor Brian P Mack nor The Mack Law Group, P.C. informed Sanders that the transaction was unlawful nor did they explain the anti-assignment clause which Sanders did not understand.

113. The prayer for relief in the 07-MR-118 Petition also sought an "Order pursuant to 215 ILCS 153/1, et seq., and Section 26 USC Section 5891, approving the sale and assignment of structured settlement payment rights..."

---

[15] At the time Brian P. Mack filed this Petition, he was affiliated with The Mack Law Group, P.C., a defendant herein, and was acting within the scope of his employment as an employee of The Mack Law Group, P.C. when he performed the legal services for Settlement Funding, LLC.

114.    The Petition filed by Brian P. Mack again claimed:  "That the assignment does not contravene any federal or state statutes or the order of any court or responsible administrative authority."   Once again, at the time Brian P. Mack alleged this in his Petition, on behalf of Sanders and Settlement Funding, LLC, Brian P. Mack knew that this allegation was false and misleading as Plaintiff's settlement contract had a valid and enforceable anti-assignment clause.

115.    Attached to the 07-MR-118 Petition were additional Exhibits, all prepared by Brian P. Mack.

116.    Once again, despite Brian P. Mack's knowledge that Illinois law would not allow a transfer of the deferred payments under the Illinois Structured Settlement Protection Act because of Sanders' valid and enforceable anti-assignment clause, Brian P. Mack nevertheless presented his Petition to a St. Clair County court.  The presiding judge approved the Petition and, on May 29, 2007, issued a "Qualified Order" prepared by Brian P. Mack.

117.    The "Qualified Order" allowed for all of the relief sought by Settlement Funding, LLC.  The result was that the Court approved an order allowing Plaintiff to transfer $74,500.00 to Settlement Funding, LLC in exchange for a deeply discounted, present lump sum of $22,253.00 less $2,200.00 in legal and processing fees. [*See* Exhibit 7 herein.]

118.    Subsequent to the second commercial transaction, Settlement Funding, LLC continued to contact Sanders for the purpose of buying the remainder of his deferred payments. Sanders agreed to sell his deferred payments once again to Settlement Funding, LLC.

119.    Again, Brian P. Mack, acting within the scope of his employment with The Mack Law Group, LLC, contacted Sanders to prepare all the necessary paperwork.

120.    On September 14, 2007, Brian P. Mack, on behalf of Settlement Funding, LLC, filed a "Petition for Approval Of Transfer Of Structured Settlement Payment Rights Between

Settlement Funding, LLC, And Valerio Montez Sanders."[16] This time, however, for reasons unknown to Sanders, this Petition was filed in the Circuit Court for the Third Judicial Circuit, in Madison County, Illinois, Cause No. 07-CH-1029. [See Exhibit 8 herein.]

121. At the time this Petition was filed, Sanders did not live in Madison County and the filing of this Petition in Madison County was contrary to 215 ILCS 153/25(b) of the Illinois Structured Settlement Protection Act.

122. The Petition, nevertheless, again stated that it was being brought "pursuant to the Illinois Structured Settlement Protection Act, 215 ILCS 153/1, et seq., and the Federal Tax Code, 26 USC Section 5891, et seq….."

123. The Petition also falsely stated that jurisdiction and venue were proper in the court because it was brought in a circuit court of the county where the action leading to the settlement could have been maintained.

124. This was a fraudulent misrepresentation of fact to the court as the petition was filed in Madison County and Sanders had never lived in Madison County nor did the action accrue there.

125. Upon information and belief, an attorney for The Mack Law Group, P.C. drafted a fraudulent affidavit to confer jurisdiction. Indeed, the address claimed in the affidavit does not exist and was made up by an attorney for The Mack Law Group, P.C.

126. This time, in paragraph 4 of the Petition, Brian P. Mack, acting within the scope of his employment with The Mack Law Group, P.C., admitted to the court that Settlement Funding, LLC sought to avoid the imposition of [the] forty percent (40%) excise tax and that

---

[16] At the time Brian P. Mack filed this Petition, he was affiliated with The Mack Law Group, P.C., a defendant herein, and was acting within the scope of his employment as an employee of The Mack Law Group, P.C. when he performed the legal services for Settlement Funding, LLC.

"the transfer of the structured settlement payment rights must be approved by a "Qualified Order."

127. In paragraph 4 of said Petition, Brian P. Mack informed the court that Settlement Funding, LLC was seeking a "Qualified Order," as required by "26 USC 5891, et. seq."

128. In the 07-CH-1029 Madison County Petition, Brian P. Mack attached the "Qualified Assignment, Release And Pledge Agreement," not the "Settlement Agreement and Release." Although there were many attachments to the 07-CH-1029 Madison County Petition, Brian P. Mack failed to inform the court that the settlement agreement had a valid and enforceable anti-assignment clause. The failure by Brian P. Mack, acting within the scope of his employment for The Mack Law Group, P.C., was a material omission of fact and a fraud upon the court.

129. The prayer for relief in the 07-CH-1029 Madison County Petition also sought an "Order pursuant to 215 ILCS 153/1, et seq., and Section 26 USC Section 5891, approving the sale and assignment of structured settlement payment rights…"

130. The 07-CH-1029 Madison County Petition filed by Brian P. Mack again claimed: "That the assignment does not contravene any federal or state statutes or the order of any court or responsible administrative authority." Once again, at the time Brian P. Mack alleged this in his Petition, on behalf of Sanders and Settlement Funding, LLC, Brian P. Mack knew that this allegation was false and misleading as Sanders' settlement contract had a valid and enforceable anti-assignment clause.

131. Again, none of the JGWPT entities nor Brian P. Mack nor The Mack Law Group, P.C. told Sanders that the proposed transaction was a violation of Illinois law nor explained the anti-assignment clause.

132.    Further, none of the JGWPT entities nor Brian P. Mack sought a waiver from any of the other parties to settlement contract which contained the anti-assignment clause and whose express consent was necessary to waive the anti-assignment clause.

133.    Attached to the 07-CH-1029 Petition were additional Exhibits, all prepared by Brian P. Mack.

134.    Once again, despite Brian P. Mack's knowledge that Illinois law would not allow a transfer of the deferred payments under the Illinois Structured Settlement Protection Act because of Sanders' valid and enforceable anti-assignment clause, Brian P. Mack nevertheless presented his Petition to the Madison County court.  The presiding judge approved the 07-CH-1029 Madison County Petition and, on November 15, 2007, issued a "Qualified Order" prepared by Brian P. Mack.  [*See* Exhibit 9 herein.]

135.    The "Qualified Order" allowed for all of the relief sought by Settlement Funding, LLC.  The result was that the Court approved an order allowing Sanders to transfer $65,000.00 to Settlement Funding, LLC in exchange for a deeply discounted, present lump sum of "$19,200.00 less processing fees."

**Kenneth Jennings**

136.    On May 10, 2011 and August 9, 2011, Settlement Funding, LLC, by and through its attorneys, The Mack Law Group, P.C., filed "Petition[s] for Approval of Transfer of Structured Settlement Payment Rights Between Settlement Funding, LLC, and Kenneth Jennings," and attached various exhibits.  [*See* Exhibits 10-11 herein.]

137.    The May 10, 2011 Petition was granted on May 13, 2011. [*See* Exhibit 12 herein.]

138.    The August 9, 2011 Petition was voluntarily withdrawn for reasons unknown.

139.    There is no indication that Settlement Funding, LLC, its attorneys, nor any of the other entities reached out to the annuity guarantors to apprise them ahead of time that the May 10, 2011 Petition was going to be filed.

140.    Further, none of the JGWPT entities nor Brian P. Mack sought a waiver from any of the other parties to settlement contract which contained the anti-assignment clause and whose express consent was necessary to waive the anti-assignment clause.

141.    Not surprisingly, and upon information and belief, by design, the annuity guarantor, did not appear three days later at the hearing to object or have its rights determined when the Order was entered.

142.    Notably absent from this Petition is the actual annuity agreement which demonstrates the anti-assignment clause.[17]

143.    The affidavit attached to the May 10, 2011 Petition as Exhibit E claims disclosures were made by "Peachtree."

144.    At no time did Settlement Funding, LLC, Brian P. Mack or The Mack Law Group, P.C. inform Kenneth Jennings that the transfers violated Illinois law.

**Kevin Rinck**

145.    On February 19, 2010 and January 11, 2011, Settlement Funding, LLC, by and through its attorneys, The Mack Law Group, P.C., filed "Petition[s] for Approval of Transfer of Structured Settlement Payment Rights Between Settlement Funding, LLC and Kevin Rinck" and associated exhibits.  [*See* Exhibits 13-14 herein.]

146.    As above, the "Qualified Order" transferring payments to Settlement Funding, LLC was entered three days later without the annuity issuers or guarantors appearing.

---

[17] This is the exact fraud on the Court that Brian P. Mack, The Mack Law Group, P.C. and Settlement Funding, LLC were found to have committed in the Brenston case and, upon information and belief, this conduct is intentional and part of the joint enterprise that Defendants are operating, which includes concealing material facts from the Court.

147.    Plaintiff, Kevin Rinck ("Rinck"), signed an identical affidavit as the ones described above, wherein Settlement Funding, LLC claimed to be d/b/a Peachtree Settlement Funding,

148.    As evidence of the fact that Peachtree Settlement Funding, LLC, is a separate corporation, even while Settlement Funding, LLC claims to be doing business under that name, is the fact that on September 25, 2012, Peachtree Settlement Funding, LLC filed a Petition in Sangamon County, Illinois alleging it was going to buy a portion of Rinck's settlement.

149.    As further evidence of the joint enterprise and conspiracy that Defendants were a part of, the facts of Rinck's transfers are instructive, and upon information and belief, illustrative of Defendants' conduct.

150.    Rinck first contacted an entity known only to him as J.G. Wentworth to sell a portion of his structured settlement.

151.    In 2009 and 2010, an entity known as J.G. Wentworth Originations, LLC, a Nevada Limited Liability Corporation, filed Petitions in Sangamon County, Illinois seeking to have the Court approve transfers of his structured settlement payments.

152.    Rinck later received information that he could have received more money if he had gone to someone else to sell the payments.

153.    "J.G. Wentworth" representatives informed him that he could not do so as he could only sell to one company.

154.    Nevertheless, Rinck, despite placing no phone calls or sending out any forms through the Internet, began receiving solicitations from a company known only to him as "Peachtree."

155.     "Peachtree" informed him that "J.G. Wentworth" was wrong and that he could sell his payments to other companies and they would be glad to assist him.

156.     Shortly thereafter, Settlement Funding, LLC filed petitions to purchase payments from Rinck.

157.     As noted previously, Rinck was the beneficiary of a structured settlement contract. The settlement contract was structured to provide Plaintiff, Kevin Rinck:

> The amount of Three Thousand One Hundred Forty Dollars and no Cents ($3,140) compounded at 2% per annum will be paid to Claimant on the 15th day of every month, commencing June 15, 2001 for the life of Kevin Rinck or for 360 monthly payments, whichever is longer. The last guaranteed payment will be made on May 15, 2031.
>
> Plus the following payments:
>
> $50,000 Guaranteed Payable on August 1, 2012
> $55,000 Guaranteed Payable on August 1, 2013
> $60,000 Guaranteed Payable on August 1, 2016

158.     The structured settlement contract also contained a "Non-assignment" provision which stated: "The amount paid and to be paid to Claimant are his sole and separate property and no other person has any right or interest therein. No amount payable under this Agreement shall be subject to anticipation or assignment by any payee thereof, nor to attachment, seizure or legal or equitable process by any creditor of any payee prior to its actual receipt by such payee, nor may any payee accelerate, defer, increase or decrease any payment. Rinck was the payee to which this clause applied.

159.     This agreement also contemplated that the duty to make payments to Rinck would be assigned to a third party, but there was no indication that Rinck could assign the right to receive those payments.

160.    A further "Uniform Qualified Assignment" was executed on May 9, 2001 wherein Rinck was the Claimant, Canadian National and Illinois Central Railroad d/b/a Canadian National/Illinois Central Railroad Company or CN/IC were the Assignors, Keyport Life Insurance Company was Assignee, and Liberty Life Assurance Company of Boston was Annuity Issuer.

161.    As part of this assignment whereby Keyport Life Insurance Company undertook the duty to make the above-described payments, there was also an anti-assignment clause which read, in pertinent part, "None of the Periodic Payments may be accelerated, deferred, increased or decreased and may not be anticipated, sold, assigned or encumbered."

162.    In other words, the beneficiary of the structured settlement had no right to assign or transfer any of the periodic payments.  This "non-assignment" provision is also known as an anti-assignment clause.

163.    The circumstances of Rinck's commercial transactions are common to all of the commercial transactions entered into by members of the putative class in selling their deferred payment annuities to Settlement Funding, LLC.

164.    Further, the paperwork filed by Brian P. Mack, through his law office, The Mack Law Firm, P.C., was common for all of the transfers of Rinck and the proposed class.

165.    On February 19, 2010, a "Petition For Approval of Transfer of Structured Settlement Payment Rights Between Settlement Funding, LLC, and Kevin Rinck" was filed in the Circuit Court of Sangamon, County, Illinois.

166.    This Petition was filed by Brian P. Mack on behalf of Settlement Funding, LLC and sought transfer of portions of Rinck's structured settlement.  [*See* Exhibit 13 herein, Cause No. 2010 CH 203].

167.    The Petition stated that it was being brought "pursuant to the Illinois Structured Settlement Protection Act, 215 ILCS 153/1, *et seq*., and the Federal Tax Code, 26 USC Section 5891..."

168.    In paragraph 3 of said Petition, Brian P. Mack alerted the court that Settlement Funding, LLC was seeking a "Qualified Order," as required by "26 USC Section 5891, et. seq."

169.    Brian P. Mack did not attach the original structured settlement contract or the assignment of payment duties described above, both of which contained an anti-assignment clause.

170.    The Petition sought to purchase 84 payments Rinck was due under his structured settlement.

171.    The Petition was voluntarily withdrawn by Defendants on March 29, 2010.[18]

172.    On January 11, 2011, a "Petition For Approval of Transfer of Structured Settlement Payment Rights Between Settlement Funding, LLC, and Kevin Rinck" was filed in the Circuit Court of Sangamon, County, Illinois.

173.    This Petition was filed by Brian P. Mack on behalf of Settlement Funding, LLC and sought transfer of portions of Plaintiff's structured settlement. [*See* Exhibit 14 herein, Cause No. 2011 CH 43].

174.    The Petition stated that it was being brought "pursuant to the Illinois Structured Settlement Protection Act, 215 ILCS 153/1, *et seq*., and the Federal Tax Code, 26 USC Section 5891..."

175.    In paragraph 3 of said Petition, Brian P. Mack alerted the court that Settlement Funding, LLC was seeking a "Qualified Order," as required by "26 USC Section 5891, et. seq."

---

[18] This Petition was originally set for hearing on March 12, 2010 but that was changed by Brian P. Mack and Settlement Funding, LLC to March 29, 2010. Curiously, without any further filings, the Petition was dismissed pursuant to court order on March 29, 2010.

176.    Brian P. Mack and Settlement Funding, LLC did not attach the original structured settlement nor the subsequent assignment of payment duties referenced above.

177.    Additionally, Brian P. Mack and Settlement Funding, LLC claimed in the Petition to the court that the court had previously authorized the sale of a portion of Rinck's structured settlement "[o]n or about March 12, 2010".

178.    In fact, there is no such March 12, 2010 order in the case file and pursuant to the file received from the Sangamon County Circuit Clerk, Defendants actually dismissed that Petition voluntarily as noted above.

179.    In addition, the Petition authored by Brian P. Mack and authorized by Settlement Funding, LLC states, 'The Petition, and all supporting exhibits, complies with 215 ILCS 153/1 *et. seq.*"

180.    Attached to the Petition as Exhibit A is the assignment agreement between Settlement Funding, LLC and Kevin Rinck. It was executed on January 8, 2011.

181.    Attached to the Petition as Exhibit B is the Illinois disclosure form that is required by the Illinois Structured Settlement Protection Act to be given to the seller of structured settlement payments.

182.    The Illinois Structured Settlement Protection Act requires that the disclosure be presented to the seller of the payments at a minimum three days before the execution of any agreement to sell payments.  215 ILCS 153/10.

183.    As is obvious, the referenced Exhibit B was signed on January 8, 2011, the exact same day Rinck executed the agreement, not 3 days prior as is required under the law.[19]

---

[19]  Upon information and belief, the common custom and practice for Brian P. Mack and Defendants was to have all the paperwork signed at the same time, including the disclosure and the assignment agreement which is a violation of the Illinois Structured Settlement Protection Act.

184.    These are deliberately false statements in violation of Illinois Supreme Court Rule 137 intended to mislead the Court into believing that the Petition complies with the Illinois Structured Settlement Protection Act when it obviously does not.

185.    The prayer for relief in the Petition sought an order pursuant to 215 ILCS 153/1, et seq., and Section 26 USC Section 5891, approving the sale and assignment of structured settlement payment rights.

186.    The Petition filed by Brian P. Mack also claimed:  "The transfer does not contravene any federal or state statutes or the order of any court or responsible administrative authority."  At the time Brian P. Mack alleged this in his Petition on behalf of Rinck and Settlement Funding, LLC, Brian P. Mack knew that this allegation was false and misleading as Rinck's settlement contract had a valid and enforceable anti-assignment clause.

187.    Attached to the Petition were additional Exhibits, all prepared by Brian P. Mack.

188.    Despite Brian P. Mack and Settlement Funding, LLC's knowledge that Illinois law would not allow a transfer of the deferred payments under the Illinois Structured Settlement Protection Act, without express consent of all parties, because of Rinck's valid and enforceable anti-assignment clause, Brian P. Mack nevertheless presented his Petition to a Sangamon County court.  The presiding judge approved the Petition and, on January 14, 2011, issued a "Qualified Order" transferring the structured settlement payments.  [*See* Exhibit 15 herein.]

189.    Neither Brian P. Mack nor Settlement Funding, LLC informed Rinck that the transaction was unlawful under Illinois law nor did they explain the anti-assignment clause.

190.    Further, none of the JGWPT entities nor Brian P. Mack sought a waiver from any of the other parties to settlement contract which contained the anti-assignment clause and whose express consent was necessary to waive the anti-assignment clause.

191.    The "Qualified Order" allowed for all of the relief sought by Settlement Funding, LLC. The result was that the Court approved an order allowing Rinck to transfer $145,000.00 to Settlement Funding, LLC in exchange for the lump sum of $90,205.10 minus fees and expenses.

192.    Rinck was never provided the name "Settlement Funding, LLC," except in legal documents requiring his signature, and is unfamiliar with how this entity obtained his contact information.

193.    Rinck is further unaware of how "Peachtree" obtained his contact information for the purpose of sending him solicitations, but now believes that "Settlement Funding, LLC" and "Peachtree" are in fact the same company.

## COUNT I
### (Breach of Fiduciary Duty)

194.    Plaintiffs re-allege and reincorporate Paragraphs 1- 201 as though fully set forth herein.

195.    At all times relevant herein, the JGWPT entities, including Defendants named herein, through their advertising and direct solicitations, induced beneficiaries of deferred payment annuities (i.e. structured settlements) to enter into commercial transactions, the substance of which was to sell a part or all of the anticipated future payments for a discounted present lump sum of cash.

196.    As identified above, the JGWPT entities jointly used solicitations and advertisements to induce structured settlement recipients to sell their structured settlements.

197.    One of the websites used by the joint enterprise/conspiracy was the one indicated at paragraph 52, *supra*.

198.    That website represented as part of the purchase of structured settlements that each and every one of the various JGWPT entities and persons involved in the transaction or at least one of them, would explain to the seller of the structured settlement payments "how the court process works."[20]

199.    The website and promotional materials also represented that Defendants would "manage the [court] process" for the sellers.

200.    As such, each and every one of the participants in the purchase of the structured settlement was bound by the duty, voluntarily undertaken, to explain the court process to the potential structured settlement sellers and manage it for them.

201.    Plaintiffs allowed Defendants to manage the Court process for them based on Defendants' representations and placed their trust in Defendants based on those representations.

202.    Each of the various Defendants breached that duty by:

a.  Failing to inform the sellers that the "court process" they were engaging in was in violation of Illinois law; and/or

b.  Having class members sign agreements and court documents when the JGWPT entities knew, or should have known, that the class member could not assign deferred payments where the structured settlement had an anti-assignment clause without express agreement from all parties to that agreement; and/or,

c.  Proceeding with the factoring agreement, so that the JGWPT entities could reap hundreds of thousands of dollars from class members in exchange for a markedly reduced cash sum, knowing full-well that a class member with an anti-assignment clause could not transfer the deferred payments under Illinois law without express agreement from all parties to that agreement; and/or

d.  Having class members sign agreements and court documents when Brian P. Mack or the Mack Law Group, P.C. knew, or should have known, that the class member could not assign deferred payments where the structured settlement had an anti-assignment clause without express agreement from all parties to that agreement; and/or,

---

[20] Upon information and belief, oral and written representations and solicitations to the Class contained the same representations.

e.  Proceeding with the factoring agreement, so that Brian P. Mack and the Mack Law Group, P.C., could reap thousands of dollars from class members in legal fees, knowing full-well that a class member with an anti-assignment clause could not transfer the deferred payments under Illinois law without express agreement from all parties to that agreement; and/or

f.  Authorizing Brian P. Mack and the Mack Law Group, P.C. to act as an attorney for the Plaintiffs without disclosing that his and Settlement Funding, LLC's interests were adverse to theirs and that the transaction they were engaging in was illegal.

g.  Failing to inform the Plaintiffs and other class members that amount received was not accurately reflected in the stated interest amount; and/or

h.  Failing to inform the Plaintiffs and other class members that the amount received was substantially less the other competitors in the market despite having a fiduciary duty to inform the Plaintiffs and other class members.

203.    More specifically, the JGWPT entities, including Defendants herein, intentionally failed to inform potential sellers (i.e. the class members herein) that a valid and enforceable anti-assignment clause prohibited the sale of deferred payment annuities, without express agreement from all parties to that agreement, because the JGWPT entities intended to defraud the seller and the Illinois courts by filing false pleadings under the Illinois Structured Settlement Protection Act in order to obtain large amounts of deferred cash payments for discounted present lump sum amounts and reap the tax benefits regarding same in violation of federal law.

204.    When an individual, such as Plaintiffs or other member of the putative class, approached a JGWPT entity (or was approached by the JGWPT entities), including Defendants herein, to sell a portion of (or all of) their deferred payments for a present lump sum of cash, the JGWPT entity required the entry of a "Qualified Order," as required under 26 U.S.C.A. § 5891 in order to avoid any tax consequences that would be imposed by the tax code.

205.    When a potential seller (i.e. class member) had a valid and enforceable anti-assignment clause, the JGWPT entities, including Defendants herein, would, nevertheless, routinely hire lawyers, including Brian P. Mack and his law firm, The Mack Law Group, P.C., to act as legal counsel to obtain a "Qualified Order" pursuant to the Illinois Structured Settlement Protection Act so that the deferred payments could be purchased at a deeply discounted rate, and without any tax consequences.

206.    At all times relevant herein, Brian P. Mack and The Mack Law Group, P.C. were acting as independent contractors and were not employees of any of the JGWPT entities named herein though they also represented themselves as lawyers for Plaintiffs in breach of numerous ethical rules and fiduciary duties.

207.    In order to avoid the penalty tax imposed by 26 U.S.C.A. § 5891, after the JGWPT entities negotiated with the seller for the purchase of his/her deferred payments, at the request of one of the JGWPT entities, including Defendants herein, Brian P. Mack, through his law office, The Mack Group, P.C.[21] would contact the seller (class member), including Plaintiffs herein, and create all of the necessary paperwork to present before a court to obtain a "qualified order."

208.    The JGWPT entity chose the attorney and that attorney prepared and handled all of the legal paperwork necessary to obtain the "Qualified Order" and, in these cases, Brian P. Mack held himself out as the lawyer for both parties to the transaction.

209.    Once the seller had agreed to sell the deferred payment to a JGWPT entity, Brian P. Mack, through The Mack Law Firm, P.C., or another attorney through another law firm, would personally counsel the seller, including Plaintiffs herein, on how to create Illinois

---

[21] Prior to forming his own law firm, Brian P. Mack acted as counsel for the JGWPT entities while working at a different law firm that is not a named defendant herein.

jurisdiction and venue, how to find a "friendly court," how to avoid appearing in court, how to obtain the services of "independent counsel" if they wanted representation in addition to that of Brian P. Mack as required by the Act or inform them they could waive the right, and how to finalize the details to obtain the lump sum payment.

210. In fact, the JGWPT entities, including the JGWPT Defendants herein, in conjunction with Brian P. Mack and The Mack Law Firm, P.C., affirmatively misled the sellers who had valid and enforceable anti-assignment clauses in their structured settlement contracts into believing that the sellers could make an assignment of their deferred payments merely by asking an Illinois court to enter an order allowing such a transfer.

211. Once the seller agreed to trade his/her deferred payments to a JGWPT entity, including any of the named JGWPT entities herein, not knowing about the prohibition for the transfer of funds where there was a valid and enforceable anti-assignment provision under the Act, the JGWPT entities proceeded to negotiate and offer the seller a lump sum of cash for his/her deferred payments.

212. This lump sum payment was far below the amount of cash the seller would have received under the deferred payment annuity and the amount claimed paid was not accurately reflected as to the claimed percentage rate contained in the agreements and was less than they could have received from other factoring companies.

213. Nevertheless, once the price for the deferred payments was agreed upon, the JGWPT entity involved used the legal services of Brian P. Mack and his law firm to intentionally and fraudulently mislead the court by filing a petition for a "Qualified Order" under the Act, even though Brian P. Mack had been the attorney of record in four separate cases where Illinois courts had enforced the anti-assignment clause, negating the sale of the deferred payments.

214. At all times relevant herein, the JGWPT entities used their advertising and solicitations to cause the sellers of the deferred payment annuities to believe that they could obtain cash for the structured settlements, but intentionally failed to inform the potential sellers that if there was a valid and enforceable anti-assignment clause in the settlement contract, no lump sum payment could be received in exchange for the seller assigning the deferred payments because any such "order" issued by an Illinois court could not have been approved without the express agreement of all parties to waive any anti-assignment language. Moreover, the legal proceeding would violate federal law.

215. Brian P. Mack and The Mack Law Firm, P.C., and other attorneys not named herein, filed cases all over Illinois seeking a "Qualified Order" under the Act for the purpose of securing the deferred annuity payments for the JGWPT entity in exchange for the lump sum of cash being paid to the seller, and for the purpose of aiding and abetting the JGWPT entity to violate federal law by avoidance of the penalty tax.

216. Brian P. Mack knew that he could not obtain a "Qualified Order" for the JGWPT entities using the Illinois Structured Settlement Protection Act where the seller had a valid and enforceable anti-assignment clause in the settlement agreement without express agreement from all parties to that agreement, and was affirmatively violating Illinois law and federal law each and every time he did so.

217. Moreover, the JGWPT entities knew that they could not obtain a "Qualified Order" using the Illinois Structured Settlement Protection Act where the seller had a valid and enforceable anti-assignment clause in the settlement agreement and were affirmatively violating Illinois law and federal law each and every time they did so.

218.   In addition to the voluntarily assumed duties described above, the Illinois Structured Settlement Protection Act ("ISSPA"), 215 ILCS 153/30(f) states that compliance with certain sections of the ISSPA are "solely the responsibility of the transferee in any transfer of structured settlement payment rights" and that no other parties have any responsibility thereto or bear any responsibility for non-compliance therewith.

219.   One of the sections referenced in 215 ILCS 153/30 is Section 15 of the ISSPA.

220.   Section 15 of the ISSPA, entitled, "Approval of transfers of structured settlement payment rights" states that, among other things, there must be a finding that "the transfer does not contravene any applicable statute or the order of any court or other governmental authority." 215 ILCS 153/15(3).

221.   In this case, it was Defendants who were under the duty to inform the court that there was a conflict between orders of appellate courts nullifying these transfers and Defendants knowingly and intentionally failed to inform the court of these decisions.

222.   As a direct result of Defendants' intentional concealment of the court orders which would disallow the transfers, which Defendants had a duty to disclose under 215 ILCS 153/15(3) and applicable rules of Professional Conduct, the transfer orders were approved.[22]

223.   As a result of the transfer orders, Plaintiffs were proximately damaged in that Plaintiffs lost their future structured settlement payments to which they were entitled which would not have occurred but for Defendants conduct in breach of their fiduciary duties to Plaintiffs.

---

[22] The Defendants also engaged in further fraud upon the courts of Illinois. The Petitions indicate that the ISSPA has been complied with. One of the provisions is that the individual selling the documents receive a "Disclosure" form listing certain information and that they receive it three (3) days before they execute the agreement with the factoring company. As noted above, here, the documents were presented to Plaintiffs on the same day in direct violation of the statute and Defendants then fraudulently represented to the circuit court that they had complied with the statute.

224.     As a direct and proximate result of the breach of fiduciary and statutory duties described herein, Plaintiffs and the class members have been damaged by the fraudulent and deceptive conduct in that Plaintiffs and the class members have surrendered millions of dollars in structured settlement payments in exchange for paltry, present cash, discounted sums.

225.     As a direct and proximate result of the uniform, deceptive and illegal conduct of Defendants in breaching their assumed and statutory duties which were committed by the JGWPT entities, Brian P. Mack, and The Mack Law Group, P.C., Plaintiffs and the class members have been financially harmed and seek monetary damages, including punitive damages and attorney fees.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for the relief requested hereafter.

## COUNT II
### (Tortious Interference With Contract)

226.     Plaintiffs re-allege and reincorporate Paragraphs 1-233 as though fully set forth herein.

227.     Defendants were aware that Plaintiffs had structured settlement contracts which guaranteed them future payments and Defendants were aware that the contracts were valid and enforceable.

228.     Defendants acted in concert by filing petitions in various courts seeking to transfer those guaranteed payments from the payee to themselves.

229.     These petitions were served on the annuity guarantors and, via the acts described herein, Defendants obtained qualified orders to obtain payment of future structured settlements.

230. Defendants utilized the qualified orders to induce the annuity guarantors to breach the contracts with Plaintiffs and deny Plaintiffs the contractually specified payments that were owed.

231. The annuity guarantors, upon receipt of the void qualified orders, did thereafter breach the contracts with Plaintiffs, which stated that the payments were not assignable, and made Defendants, JGWPT entities, beneficiaries of the anticipated payments and paid the JGWPT entities monies which should have been due to Plaintiffs.

232. As a direct and proximate result of the tortious acts described herein, Plaintiffs and the class members have been damaged in that Plaintiffs and the class members have surrendered millions of dollars in structured settlement payments in exchange for paltry, present cash, discounted sums.

233. As a direct and proximate result of the uniform deceptive and fraudulent practices of the JGWPT entities, including the named JGWPT Defendants herein, Brian P. Mack, and The Mack Law Group, P.C., Plaintiffs and the class members have been financially harmed and seek monetary damages, including punitive damages and attorney fees.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for the relief requested hereafter.

## COUNT III
### (Civil Conspiracy)

234. Plaintiffs re-allege and reincorporate Paragraphs 1-287 as though fully set forth herein.

235.     As previously alleged, the various Defendants had actual knowledge that the act of buying a structured settlement where the structured settlement contained an anti-assignment clause was unlawful in this State without express agreement from all parties to that agreement.

236.     Nevertheless, Defendants each engaged in a concerted effort not only to identify structured settlement recipients in order to seek to purchase those settlements but also misrepresented their affiliations with each other to convince the recipients so identified to sell their structured settlements to the JGWPT entities.

237.     The JGWPT entities concerted efforts included the pooling of resources and information, among other agreements, to seek out structured settlement recipients and identify target courts where the JGWPT entities could push through the unlawful transactions with the least amount of scrutiny.

238.     Each of the JGWPT entities, through their contributions of resources, research and information, encouraged, facilitated and planned the ongoing conspiracy to buy structured settlements from structured settlement recipients despite the fact that Defendants knew that practice was unlawful in Illinois where the structured settlement contained an anti-assignment clause.

239.     As a direct and proximate result of Defendants' action, Plaintiffs and the class members have paid unearned fees and commissions, have lost monies to which they are lawfully entitled and were otherwise financially harmed, and seek monetary damages, including punitive damages.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for the relief requested hereafter.

## COUNT IV
### (Conversion)

240.     Plaintiffs re-allege and reincorporate Paragraphs 1-294 as though fully set forth herein.

241.     As noted above, the JGWPT entities have taken from the various Plaintiffs in this litigation certain and varying amounts of money through illegal transactions.

242.     These monies are not just present and future annuity payments, but also the associated fees, attorney's fees and costs that Plaintiffs were forced to pay in support of the illegal and void transaction.

243.     As the transactions are clearly illegal, Defendants have no right to the money they have taken, and will take, from Plaintiffs and the class members.

244.     Plaintiffs, pursuant to their structured settlement contracts, had an absolute and unassignable right to those monies.

245.     The JGWPT entities had no legal right to the structured settlement monies.

246.     As such, Defendants have property, specifically money, in their possession which they refuse to return to Plaintiffs and which Defendants have no legal right to possess.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for the relief requested hereafter.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and members of the Class demand judgment on each claim for relief, jointly and severally, as follows:

A.     For an Order authorizing, directing and supervising the conduct of early and expedited discovery on the allegations of this Complaint; and,

B.     For an award of compensatory damages for Plaintiffs' individual claims related to their losses as a result of the illegal and fraudulent transfer of his or her deferred payments; and,

C.       For an award of punitive damages for Plaintiffs' individual claims; and,

D.       For certification of the class to be represented by counsel herein; and,

E.       On behalf of the members of the class, an award for compensatory damages and punitive damages; and,

F.       For an award to Plaintiffs and members of the class for their costs and expenses in this litigation, including reasonable attorneys' fees and expert fees; and,

G.       For injunctive relief against Defendants to prohibit them from continuing to defraud the class and the courts of Illinois; and,

H.       For an award to Plaintiffs and members of the class for such other and further relief as may be just and proper under the circumstances.

Respectfully submitted,

By: /s/ David Cates
David Cates, #6289198
Ryan J. Mahoney, #6290113
**CATES MAHONEY, LLC**
216 West Pointe Drive, Suite A
Swansea, IL 62226
Telephone:     618-277-3644
Facsimile:      618-277-7882
E-mail:         dcates@cateslaw.com
                  rmahoney@cateslaw.com

Brad L. Badgley #0090131
**Brad L. Badgley, P.C.**
26 Public Square
Belleville, Illinois 62220
Telephone:     618-235-1000
Facsimile:      618-235-1086

Eric D. Holland
R. Seth Crompton
The Holland Law Firm
300 N. Tucker Blvd.
Suite 801
St. Louis, MO 63101
Telephone: 314-241-8111
Facsimile: 314-241-5554

Jeffrey M. Goldberg
Jeffrey M. Goldberg Law Offices
20 North Clark St.
Suite 3100
Chicago, IL 60602
Telephone: 888-396-3914
Facsimile: 312-236-5913

*Attorneys for Plaintiffs & the Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of September, 2016, I electronically filed "Plaintiffs' Third Amended Class Action Complaint", with the Clerk of the Court using the CM/ECF system, which will send notification of such filing(s) to all parties of record.

/s/ David Cates