UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VALERIO SANDERS, KENNETH JENNINGS, and KEVIN RINCK, | ) ) ) | |
| Plaintiffs, | ) ) | No. 14 C 9188 |
| v. | ) ) | Judge Sara L. Ellis |
| JGWPT HOLDINGS, LLC; J.G. WENTWORTH, LLC; PEACHHI, LLC; PEACH HOLDINGS, INC.; PEACHTREE FINANCIAL SOLUTIONS, LLC; SETTLEMENT FUNDING, LLC, D/B/A PEACHTREE SETTLEMENT FUNDING; BRIAN P. MACK; and THE MACK LAW GROUP, P.C., | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

When Plaintiffs Valerio Sanders, Kenneth Jennings, and Kevin Rinck needed quick cash, they sold their rights to receive periodic payments from structured settlements to Defendant Settlement Funding, LLC d/b/a Peachtree Settlement Funding ("Settlement Funding LLC"). Plaintiffs allege that Settlement Funding LLC conspired to swindle Plaintiffs and similarly situated individuals into selling their rights to structured settlement payments for far less than what they were worth with Defendants Brian P. Mack and his law firm the Mack Law Group, P.C. (collectively, the "Mack Defendants") and Defendants JGWPT Holdings, LLC, J.G. Wentworth, LLC, PeachHI, LLC, Peach Holdings, Inc., Peachtree Financial Solutions, LLC (collectively, the "JGWPT Defendants"). The JGWPT Defendants and the Mack Defendants move to dismiss Plaintiffs' Third Amended Class Action Complaint ("3AC").[1] The Court grants in part Defendants' motions, dismissing with prejudice Plaintiffs' tortious interference with

---
[1] Settlement Funding LLC moves separately to send Plaintiffs' claims to arbitration. Doc. 181.

contract claim and conversion claim against the JGWPT Defendants and dismissing with prejudice Plaintiffs' conversion claim against the Mack Defendants.

## ANALYSIS

The JGWPT Defendants and the Mack Defendants moved to dismiss Plaintiffs' last complaint, the Second Amended Class Action Complaint ("SAC"). Granting and denying Defendants' motions to dismiss, the Court ordered Plaintiffs to file the 3AC in order to tailor Plaintiffs' allegations to prior rulings. In the 3AC, Janeka Hicks is no longer a Plaintiff; JGWPT Holdings, Inc. is no longer a Defendant; and Plaintiffs no longer allege that Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)–(d). But beyond that, the 3AC varies little from the SAC. Because the underlying facts do not materially differ, the Court presumes familiarity with the facts as alleged by Plaintiffs and discussed in the Court's July 26, 2016 Opinion and Order, Doc. 167, and the Court does not fully repeat the facts herein.

### I. JGWPT Defendants' Motion to Dismiss

The JGWPT Defendants move to dismiss Plaintiffs' claims because (1) Plaintiffs waived the anti-assignment provisions of the annuity contracts that Plaintiffs transferred to Settlement Funding LLC, (2) Plaintiffs fail to sufficiently plead their claims, and (3) statutes of limitations bar Sanders' tort claims.

#### A. Waiver of Anti-Assignment Provisions

The JGWPT Defendants first argue that Plaintiffs have no case because they waived the anti-assignment provisions that would have prevented the assignment of structured settlement payments from Plaintiffs to Settlement Funding LLC. The JGWPT Defendant argue that "[t]he gravamen of each Plaintiffs' claims is the allegation that Settlement Funding LLC and the Mack

2

Defendants did not inform Plaintiff that they could not transfer their [structured settlement] Periodic Payments unless all interested parties . . . waived the anti-assignment provision." Doc. 180 at 10. Of course, that is only part of Plaintiffs' case against Defendants: Plaintiffs have always alleged that they were (1) "duped about the effect of their anti-assignment clauses" and (2) "induced to sell their contracts for far too little." *In re JGPWT Holdings, Inc.*, No. 15-8005, slip op. at 3 (7th Cir. Apr. 9, 2015). The anti-assignment clauses are important, but, even if Plaintiffs waived their anti-assignment claims, the Seventh Circuit and this Court have both recognized that Plaintiffs attack not just with the fact that they transferred their structured settlement payment rights—possibly when they could not—but also with how much they received as part of the transfer—and why they received so little. Therefore, the JGWPT Defendants incorrectly argue that the Court must dismiss Plaintiffs' claims if the Court now concludes that Plaintiffs waived their anti-assignment protections.

As to whether Plaintiffs can plausibly allege that they did not waive their anti-assignment protections, the Court already laid out the fundamentals of this position in its last Opinion and Order. Doc. 167 at 14–17. Illinois law allows structured settlement payment recipients like Plaintiffs to waive anti-assignment protections contained in the contracts that established Plaintiffs' structured settlement payments. *In re Nitz*, 739 N.E.2d 93, 103, 317 Ill. App. 3d 119, 250 Ill. Dec. 632 (2000). Plaintiffs allege that they did not waive those provisions, but the JGWPT Defendants argue that Plaintiffs and all the other parties involved in Plaintiffs' structured settlements did, actually, waive those provisions. The JGWPT Defendants point to "stipulations" signed by Plaintiffs, which the JGWPT Defendants argue contain Plaintiffs' waiver of any anti-assignment language protections. The Court can consider these stipulations because the 3AC references and incorporates the stipulations, which Plaintiffs allege were part of

the paperwork that the parties submitted to state courts in order to receive "Qualified Orders" from the state courts that approved Plaintiffs' factoring transactions.

But the stipulations lack utility at the motion to dismiss stage. In Illinois, the law has always been "that a party who signs an instrument relying upon representations as to its contents when he has had an opportunity to ascertain the truth by reading the instrument and has not availed himself of the opportunity, cannot be heard to say that he was deceived by misrepresentations." *Leon v. Max E. Miller & Son, Inc.*, 320 N.E.2d 256, 260, 23 Ill. App. 3d 694 (1974) (citing *Nathan v. Leopold*, 247 N.E.2d 4, 9–10, 108 Ill. App. 2d 160 (1969)). But that is not true when the person inducing the signature is the signer's attorney. *See Nathan*, 247 N.E.2d at 9–10 ("Kasakoff was not his attorney, thus dispelling any notion that he might have been justified in relying on Kasakoff's representations."); *Wrobel v. Wojtasiek*, 173 N.E. 348, 352, 341 Ill. 330 (Ill. 1930) (holding that agreements are not enforced in favor of parties who use a "secret agent" to induce the counter-party into signing the agreement). Plaintiffs allege that the Mack Defendants misrepresented their allegiances and convinced Plaintiffs that the Mack Defendants were Plaintiffs' attorneys in order to mislead Plaintiffs to waive their anti-assignment protections, which the Court takes as true at the pleading stage. The Mack Defendants' alleged tainted work extends to the stipulations. The JGWPT Defendants raise an issue that the Court cannot resolve until after the parties complete discovery, and the Court denies the JGWPT Defendants' motion to dismiss to the extent the JGWPT Defendants argue that Plaintiffs waived any anti-assignment provisions.

### B. Pleading Deficiencies

The JGWPT Defendants also move to dismiss the 3AC by arguing that Plaintiffs do not sufficiently allege their tort claims and fail to abide by the pleading mandates of the Federal Rules of Civil Procedure.

#### 1. Breach of Fiduciary Duty

The JGWPT Defendants argue that Plaintiffs do not state a breach of fiduciary claim because Plaintiffs do not allege a fiduciary relationship with the JGWPT Defendants or a breach of that relationship. To state a claim for breach of fiduciary duty under Illinois law, Plaintiffs must allege a fiduciary duty and a breach of that duty that caused damages. *Hollerich v. Acri*, No. 14 CV 10411, 2017 WL 1316259, at *6 (N.D. Ill. Apr. 10, 2017). To plead a fiduciary relationship, Plaintiffs must show "that one party placed trust and confidence in the other so that the latter gained influence and superiority over the former." *Simon v. Wilson*, 684 N.E.2d 791, 797, 291 Ill. App. 3d 495, 225 Ill. Dec. 800 (1997).

The JGWPT Defendants characterize their promises to Plaintiffs as promises to follow the requirements of the Illinois Structured Settlement Protection Act ("SSPA"), 215 Ill. Comp. Stat. 153/1 *et seq.*, and the JGWPT Defendants argue that following the SSPA did not create a fiduciary relationship. A statute may create relationships that are "fiduciary." *See In re McGee*, 353 F.3d 537, 540–41 (7th Cir. 2003) (determining whether municipal code created fiduciary relationships). But the statute must impose a fiduciary relationship or the legislature must intend for the statute to create a right of action for breach of the imposed relationship. *See Haney v. Ill. Dev. Fin. Auth.*, --- N.E.2d ----, 53 Ill. Ct. Cl. 171, 178 (Ill. Ct. Cl. 1998) (rejecting the plaintiff's assertion that the defendant owed a fiduciary duty under a statute because the statute did not identify such a fiduciary duty and neither the statute's language nor legislative intent suggested a

5

right of action for violation of the statute). The JGWPT Defendants highlight Section 30 of the SSPA, which requires the transferee of settlement payment rights, rather than the third parties paying the structured settlement payments, to follow certain requirements of Sections 10 and 15 of the SSPA. *See* 215 Ill. Comp. Stat. 153/30(f) ("Compliance with the requirements set forth in Section 10 of this Act and fulfillment of the conditions set forth in Section 15 of this Act shall be solely the responsibility of the transferee in any transfer of structured settlement payment rights[.]"). Plaintiffs do not allege that the JGWPT Defendants were transferees, however, so the SSPA did not require the JGWPT Defendants to follow Section 30(f) of the SSPA, and the Court need not consider whether Section 30(f) of the SSPA imposed a fiduciary relationship between the JGWPT Defendants and Plaintiffs.

Plaintiffs instead allege that the JGWPT Defendants solicited Plaintiffs to initiate factoring transactions by promising to guide Plaintiffs to financial benefit in each factoring transaction. Other courts in this District have found fiduciary relationships where the defendant promised to guide the plaintiff to financial benefit. *See Hollerich v. Acri*, No. 14 CV 10411, 2017 WL 1316259, at *6 (N.D. Ill. Apr. 10, 2017) (finding that the plaintiffs alleged a fiduciary duty by alleging that the defendants solicited the plaintiffs and then advised the plaintiffs on money management in an investment scheme); *Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 903–04 (N.D. Ill. 2009) (finding that the plaintiff alleged a fiduciary duty by alleging that the plaintiff engaged the defendants to procure financial benefit, in the form of mortgage financing, and thus created a principal and agent relationship). Plaintiffs allege that after they spoke with representatives of the JGWPT Defendants and lawyers hired by the JGWPT Defendants, Plaintiffs felt that the JGWPT Defendants could provide them with a financial benefit greater than the financial benefit already guaranteed by their future structured

6

settlement payment rights. Plaintiffs further allege that they developed trust in the JGWPT Defendants and took a back seat to the JGWPT Defendants' efforts to create factoring transactions. The Court finds that Plaintiffs sufficiently allege a fiduciary relationship with the JGWPT Defendants.

The JGWPT Defendants argue that Plaintiffs fail to allege that the JGWPT Defendants accepted that fiduciary responsibility. "The dominant party must accept the responsibility, accept the trust of the other party before a court can find a fiduciary relationship." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 783 (7th Cir. 2015) (quoting *Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1119 (7th Cir. 1992)); *DeWitt County Pub. Bldg. Comm'n v. DeWitt County*, 469 N.E.2d 689, 700, 128 Ill. App. 3d 11, 83 Ill. Dec. 82 (1984) ("In order to establish a fiduciary relationship, the trust and confidence allegedly reposed by the first party must actually be accepted by the second party."). Plaintiffs allege that the JGWPT Defendants sought out Plaintiffs and then acted as if they were fulfilling their promise to guide Plaintiffs to financial benefit. Therefore, Plaintiffs sufficiently allege that the JGWPT Defendants accepted Plaintiffs' trust by taking advantage of the dominant position that the JGWPT Defendants built for themselves. *E.g., Hollerich*, 2017 WL 1316259, at *6 (finding that the defendants' alleged solicitation and acts to perpetrate the defendants' investment scheme created the fiduciary duty).

The JGWPT Defendants also suggest that Plaintiffs allege no harm because Plaintiffs received exactly what they contracted in their factoring transactions. "Once a fiduciary relationship is shown to exist, the presumption is that a transaction between the dominant and servient parties which profits the dominant party is fraudulent." *In re Estate of Feinberg*, 6 N.E.3d 310, 323, 2014 IL App (1st) 112219, 379 Ill. Dec. 233 (2014). Plaintiffs allege that the JGWPT Defendants ultimately profited from their alleged scheme at the expense of Plaintiffs,

7

sharing in the profits earned by Settlement Funding LLC's receipt of Plaintiffs' future rights to structured settlement payments. This is enough at the pleading stage to allege a breach of the alleged fiduciary duty.

Finally, the JGWPT Defendants attack some of Plaintiffs' theories underlying Plaintiffs' breach of fiduciary duty claim. The Court has already held that Plaintiffs cannot pursue "causes of action [that] rely on Plaintiffs' theory that Illinois courts could not hear the petitions for approval or . . . that the approval orders are void." Doc. 167 at 14. Plaintiffs cannot attack the Qualified Orders issued by state courts to prove their breach of fiduciary duty claim. And to the extent Plaintiffs' claims arise from Plaintiffs' anti-assignment protections, the Court has held that those are fact issues better addressed after discovery.

The JGWPT Defendants also attack Plaintiffs' allegations that Defendants hid the fact that Defendants' intentions were hostile to Plaintiffs. The JGWPT Defendants argue that Plaintiffs' agreements with Settlement Funding LLC contained arbitration provisions that indicated to Plaintiffs that the parties were or might become adverse. The JGWPT Defendants fail to convince the Court at this stage that rules for resolving potential future disputes between Settlement Funding LLC and Plaintiffs meant that a future dispute would occur. The JGWPT Defendants also do not explain why the potential for a future dispute between Settlement Funding LLC and Plaintiffs meant that the JGWPT Defendants were adverse to Plaintiffs.

The JGWPT Defendants also argue that the agreements told Plaintiffs the results of the factoring transactions so Plaintiffs cannot claim the JGWPT Defendants acted differently than they promised. But Plaintiffs allege that to gain their trust, the JGWPT Defendants told Plaintiffs that the factoring transactions would result in financial benefit. The factoring transaction agreements may have disclosed the final results, but Plaintiffs allege those results

were different than what the JGWPT Defendants promised to Plaintiffs in order to gain their trust and that the JGWPT Defendants used the Mack Defendants, purportedly acting as Plaintiffs' attorneys, to convince Plaintiffs that the results would be better than they were.  Plaintiffs thus allege enough at the pleading stage to move forward on their breach of fiduciary duty claims.

### 2. Tortious Interference with Contract

The JGWPT Defendants additionally argue that Plaintiffs fail to state a claim for tortious interference with contract because Plaintiffs do not allege that the JGWPT Defendants induced any third party to breach.  "To establish a tortious interference with contract claim under Illinois law, a plaintiff must show: '(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's conduct; and (5) damages."  *Douglas v. Lofton*, No. 12 C 8592, 2013 WL 5940749, at *4 (N.D. Ill. Nov. 6, 2013) (quoting *Hess v. Kanoski & Assoc.*, 668 F.3d 446, 454 (7th Cir. 2012)).  Plaintiffs allege that Settlement Funding LLC and the Mack Defendants filed petitions seeking approval of factoring transactions in state courts to induce the breach of the contracts that paid structured settlement payments to Plaintiffs.  Plaintiffs do not allege that the JGWPT Defendants filed the petitions nor do Plaintiffs allege any plausible way in which the JGWPT Defendants directed their actions at the third parties who ceased paying Plaintiffs and began paying Settlement Funding LLC.

Plaintiffs do allege that before the petitions were filed, the JGWPT Defendant solicited Plaintiffs and pushed them to enter the factoring transactions that Plaintiffs allege caused the breaches of Plaintiffs' contracts with third parties.  But "[i]nducement to breach a contract involves acts aimed at parties other than a plaintiff[.]"  *Israel v. Nat'l Canada Corp.*, 658 N.E.2d

1184, 1193, 276 Ill. App. 3d 454, 213 Ill. Dec. 163 (1995). Plaintiffs do not allege that the JGWPT Defendants aimed their acts at third parties; they only allege the JGWPT Defendants aimed their acts at Plaintiffs. Plaintiffs thus fail to a state tortious interference of contract claim against the JGWPT Defendants. Because Plaintiffs' theory of using the Qualified Orders to induce third parties to breach contracts relies on acts that Plaintiffs have repeatedly alleged were performed only by Settlement Funding LLC and the Mack Defendants, the Court's dismissal is with prejudice.

### 3. Conversion

The JGWPT Defendants also move to dismiss Plaintiffs' conversion claim. Plaintiffs must allege (1) they have a right to the property at issue; (2) they have a right to the immediate possession of the property; (3) they have made a demand for the property; and (4) the JGWPT Defendants wrongfully and without authorization assumed control or ownership of the property. *G.M. Sign, Inc. v. Elm St. Chiropractic, Ltd.*, 871 F. Supp. 2d 763, 767 (N.D. Ill. 2010) (citing *Gen. Motors Corp. v. Douglass*, 565 N.E.2d 93, 96–97, 206 Ill. App. 3d 881, 151 Ill. Dec. 822 (1990)). Plaintiffs allege that the JGWPT Defendants and Settlement Funding LLC received future structured settlement payments in Plaintiffs' factoring transactions. The JGWPT Defendants now point out that the petitions for Qualified Orders attached to the 3AC state that Settlement Funding LLC was the only entity to receive a structured settlement payment in a factoring transaction. Because Plaintiffs' exhibits that they attach to the 3AC demonstrate that only Settlement Funding LLC took Plaintiffs' structured settlement payment rights, the Court dismisses Plaintiffs' claim for conversion against the JGWPT Defendants. The Court further finds that amendment would be futile to state a claim that the JGWPT Defendants took the structured settlement payment rights because such an allegation would contradict Plaintiffs'

10

exhibits attached to the complaint. *See Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) ("The fact remains that where a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim."). Therefore, the Court dismisses the conversion claim against the JGWPT Defendants with prejudice.

### 4. Civil Conspiracy

The JGWPT Defendants move to dismiss Plaintiffs' civil conspiracy claim, arguing that there is no underlying tort against any alleged co-conspirator. "To succeed on a civil conspiracy claim, a plaintiff must establish an underlying tort," and under Illinois law "conspiracy becomes actionable only when the underlying conduct which is the subject of the conspiracy is independently tortious." *Ablan v. Bank of Am. Corp.*, 665 F. App'x 544, 545 (7th Cir. 2016) (quoting *Champion Parts, Inc. v. Oppenheimer & Co.*, 878 F.2d 1003, 1008 (7th Cir. 1989)). The JGWPT Defendants make their argument expecting the Court to have dismissed all claims against all the Mack Defendants and the JGWPT Defendants. The Court does not do so, so the JGWPT Defendants' argument fails. *Cf. id.* (finding Illinois conspiracy claim properly dismissed where underlying torts were properly dismissed).

### 5. Rule 8

The JGWPT Defendants also argue that Plaintiffs do not allege each individual JGWPT Defendants' conduct with enough specificity to meet Federal Rule of Civil Procedure 8. As the Court previously held, Plaintiffs may group plead as long as Plaintiffs provide notice to each JGWPT Defendant of the nature of Plaintiffs' claims. *See* Doc. 167 at 24. Plaintiffs allege that the JGWPT Defendants obscured their individual identities, and Plaintiffs allege what they claim

11

to know about the individual JGWPT Defendants when possible. The Court denies the JGWPT Defendants' motion on this issue.

### 6. Rule 9(b)

The JGWPT Defendants also argue that Plaintiffs have not sufficiently alleged the fraud that the JGWPT Defendants committed in violation of Federal Rule of Civil Procedure 9(b). The JGWPT Defendants devoted very little to this argument in their last motion to dismiss but now add that "Plaintiffs do not allege a single communication made to Plaintiffs by any of the JGWPT Defendants that was allegedly false and induced Plaintiffs to transfer portions of their Periodic Payments to Settlement Funding [LLC]." Doc. 180 at 27. "A plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)). The Court's review of the 3AC finds that Plaintiffs allege that the JGWPT Defendants contacted Plaintiffs while concealing their individual identities by purporting to be a "Peach" or "J.G. Wentworth" company and by concealing their conspiratorial affiliation in order to direct Plaintiffs into factoring transactions  Given Plaintiffs allegations that the JGWPT Entities' hid their identities, Plaintiffs allege enough of the JGWPT Defendants' involvement in the fraudulent scheme to proceed to discovery. *See Gelco Corp. v. Major Chevrolet, Inc.*, No. 01 C 9719, 2002 WL 31427027, at *9 (N.D. Ill. Oct. 30, 2002) (noting that the plaintiffs did not yet know identities of individuals who had performed specific acts in the fraudulent scheme); *In re Newell Rubbermaid Inc. Sec. Litig.*, No. 99 C 6853, 2000 WL 1705279, at *14 (N.D. Ill. Nov. 14, 2000) ("In this case, plaintiffs have satisfied the Court that without some discovery, they are unable to identify who said what to which analyst.").

### C. Statutes of Limitations

Finally, the JGWPT Defendants argue that Sanders' claims come too late and are barred by several statutes of limitations. The Court rejected that same argument against the SAC, noting that the discovery rule might save Sanders' claims. The JGWPT Defendants now argue that Plaintiffs needed to plead the date of discovery to take advantage of the discovery rule. But this is not true—even if "the complaint itself does not explicitly allege when [a] plaintiff first learned of the [harm]," well-pleaded facts and exhibits to the complaint may "support[ ] an inference" that the plaintiff "may be able to establish a defense to the statute of limitations." *Skinner v. Midland Funding, LLC*, No. 16 C 4522, 2017 WL 1134490, at *3 (N.D. Ill. Mar. 27, 2017). And "[a]s long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). This is especially true when the plaintiff alleges that the defendants "have taken significant effort to conceal" their wrongdoing. *Id.* at 929. Here, Plaintiffs allege that Sanders' factoring transactions occurred more than five years ago. This would place Sanders' claims outside the statute of limitations periods for his tort claims, which are each five years, as discussed in the Court's prior Opinion and Order. *See* Doc. 167 at 17–21. But Plaintiffs also all allege that they discovered Defendants' wrongdoing shortly before suit and well within the statute of limitations period. The JGWPT Defendants may re-raise this argument if discovery shows that the statute of limitations applies to Sanders' claims, but the Court will not rule on the issue at this time.

### III. Mack Defendants' Motion to Dismiss

The Mack Defendants also move to dismiss the 3AC, arguing that the statutes of limitations and repose for claims against attorneys bar Plaintiffs' claims, that judicial and estoppel bar Plaintiffs' claims, and that Plaintiff have failed to sufficiently plead their claims.

#### A. Time Bars

The Mack Defendants argue that some or all of Plaintiffs' claims come too late. The Mack Defendants raised these same defenses in the SAC, which the Court rejected as a reason to dismiss the SAC because the Court found that there were conceivable facts consistent with the allegations that could defeat the time bar defenses. Doc. 167 at 20–22. The Mack Defendants again argue that the Illinois statute of repose for claims against attorneys bars Sanders' claims. As the Court discussed in its last Opinion and Order, fraudulent concealment is "an exception to the statute of repose." *DeLuna v. Burciaga*, 857 N.E.2d 229, 244, 223 Ill. 2d 49, 306 Ill. Dec. 136 (2006). Plaintiffs still allege facts that suggest the Mack Defendants fraudulently concealed information that prevented Sanders from suing in time.

The Mack Defendants also argue that the Illinois two-year statute of limitations for claims against attorneys bars Plaintiffs' claims. But, again, as the Court noted before, Plaintiffs allege that they did not discover the unlawfulness of their factoring transactions—which they allege were unlawful because Defendants deceived them into selling their structured settlement payments for far less than they were worth—until soon before they filed suit. *See* Doc. 167 at 20–22; *Skinner*, 2017 WL 1134490, at *3. Ultimately, the evidence may not support Plaintiffs' allegations of fraudulent concealment, but until discovery is complete, the Mack Defendants have not convinced the Court that Plaintiffs cannot defeat the statute of repose or the statute of limitations. The Court will not dismiss Plaintiffs' claims at this stage.

14

**B.    Estoppel**

The Mack Defendants argue also that Plaintiffs' claims are barred by the doctrines of judicial estoppel and collateral estoppel. As the Court explained in its last Opinion and Order, judicial estoppel does not bar Plaintiffs' claims because they allege that they were defrauded into entering into factoring transactions. *See* Doc. 167 at 22. The thrust of Plaintiffs' allegations remain the same in the 3AC. The Court will not bar Plaintiffs' claims under the doctrine of judicial estoppel.

The Mack Defendants also argue that collateral estoppel bars Plaintiffs' claims because the state courts' Qualified Orders approving Plaintiffs' factoring transactions decided all issues raised by Plaintiffs' 3AC. "To invoke collateral estoppel under Illinois' preclusion rules, a defendant must demonstrate that: '(1) the issue decided in the prior adjudication is identical to the issue presented in the current case; (2) the prior adjudication resulted in a final judgment on the merits; and (3) the plaintiff was a party or is in privity with a party in the prior adjudication.'" *Trettenero v. Kendall County*, No. 16 C 05892, 2017 WL 168478, at *2 (N.D. Ill. Jan. 17, 2017) (quoting *Ill. State Chamber of Commerce v. Pollution Control Bd.*, 398 N.E.2d 9, 11, 78 Ill. 2d 1, 34 Ill. Dec. 334 (1979)). "[I]t must "conclusively appear that the matter of fact was so in issue that it was necessarily determined'" and collateral estoppel does not apply "if there is any uncertainty on the point." *Id.* (quoting *Wells v. Coker*, 707 F.3d 756, 762 (7th Cir. 2013)). Plaintiffs allege claims that were never decided in the state courts that issued the Qualified Orders—the petitions for Qualified Orders sought approval of transfers, not adjudication of claims regarding the Mack Defendants' involvement in the alleged factoring transaction scheme. Therefore the Court cannot say that collateral estoppel applies to Plaintiffs' claims against the Mack Defendants.

### C. Pleading Deficiencies

#### 1. Breach of Fiduciary Duty

The Mack Defendants argue that Plaintiffs do not allege the fiduciary relationship between Plaintiffs and the Mack Defendants or the harm caused by the breach of duty with enough detail to satisfy the pleading requirements of Rule 9(b). "A fiduciary duty claim premised on the allegation that a defendant knowingly misled a plaintiff in breach of a fiduciary duty sounds in fraud and therefore is subject to the heightened pleading standards of Rule 9(b)." *Cornielsen v. Infinium Capital Holdings, LLC*, 168 F. Supp. 3d 1033, 1047 (N.D. Ill. 2016). Plaintiffs allege that the Mack Defendants represented themselves as plaintiffs' attorneys in face-to-face meetings in which the Mack Defendants induced Plaintiffs to sign away continuous streams of money for pennies on the dollar. Plaintiffs also allege that the Mack Defendants' actions caused Plaintiffs to lose out on better deals from other settlement factoring vendors. The Court, as it did in its last Opinion and Order, finds that Plaintiffs sufficiently plead a fiduciary relationship and harm caused by the breach of that relationship. *See* Doc. 167 at 34–35. The Mack Defendants attach letters sent to Plaintiffs that stated the Mack Defendants were not Plaintiffs' lawyers. Because Plaintiffs' allege that they believed they had an attorney-client relationship with the Mack Defendants despite the Mack Defendants saying they represented Settlement Funding LLC, these letters create factual issues that cannot be resolved at the motion to dismiss stage.

#### 2. Tortious Interference with Contract

The Mack Defendants argue that Plaintiffs allege no contract with a third party with which Defendants could interfere in order to support a claim for tortious interference with contract. A claim for tortious interference with contract requires a valid and enforceable contract

16

between the plaintiff and a third party. *Douglas*, 2013 WL 5940749, at *4. When Plaintiffs suffered injuries long ago, the tortfeasors that harmed Plaintiffs entered into settlement agreements with Plaintiffs to extinguish liability in exchange for monetary payment to Plaintiffs. In order to pay Plaintiffs with minimal tax burdens, the settling tortfeasors and their insurers then assigned their payment obligations to third parties, essentially purchasing a future right to structured settlements to be paid to Plaintiffs. Plaintiffs then received the structured settlement payments from the same assignee-payors who now pay the structured settlement payments to Settlement Funding LLC. The Mack Defendants incorrectly argue that Plaintiffs do not allege that Plaintiffs were party to a contract.[2]

### 3. Civil Conspiracy

The Mack Defendants argue that Plaintiffs do not sufficiently plead their conspiracy claims against the Mack Defendants. "To succeed in a claim of civil conspiracy under Illinois law, the plaintiffs must eventually establish: (1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258, 188 Ill. 2d 102, 241 Ill. Dec. 787 (1999)). "The agreement is a necessary and important element of

---

[2] To the extent that Plaintiffs argue that they were also third party beneficiaries of contracts that were breached, they provide no support for their suggestion that their status as third party beneficiaries could support a claim for tortious interference with contract. The Seventh Circuit has suggested that "the tort of intentional interference with contract is meant to protect the parties (including third-party beneficiaries, assignees, and others having the rights of parties) to contracts." *CSY Liquidating Corp. v. Harris Trust & Sav. Bank*, 162 F.3d 929, 932–33 (7th Cir. 1998) (citing *Org. of Minority Vendors, Inc. v. Ill. Cent. Gulf R.R.*, 579 F. Supp. 574, 605 (N.D. Ill. 1983)). Plaintiffs do not cite any law "that allows for a plaintiff/third-party beneficiary to state a tortious interference with contract claim." *See Douglas*, 2013 WL 5940749, at *4 (dismissing tortious interference claim with prejudice because Plaintiff "was not a party to the [contract] and has failed to identify a proper exception that applies under the circumstances").

17

this cause of action." *Id.* (quoting *McClure*, 720 N.E.2d at 258). Plaintiffs allege that "Defendants each engaged in a concerted effort . . . to identify structured settlement recipients [and] convince the recipients so identified to sell their structured settlements[.]" Doc. 169 ¶ 236. Further, Plaintiffs allege that the JGWPT Defendants and Settlement Funding LLC "routinely hire[d] lawyers, including [the Mack Defendants], to act as legal counsel to obtain a 'Qualified Order' . . . so that the deferred payments could be purchased at a deeply discounted rate." *Id.* ¶ 205. Plaintiffs recount that the Mack Defendants were hired and then performed unlawful work, including falsely representing themselves to Plaintiffs as Plaintiffs' lawyers and breaching fiduciary duties owed to Plaintiffs in order to consummate the factoring transactions and accomplish the conspiracy's unlawful goals. By alleging that "the [Mack Defendants] acted in concert with [the alleged co-conspirators] to commit any unlawful act" after being hired specifically to accomplish the conspiracy's unlawful purpose, Plaintiffs sufficiently allege the outlines of the Mack Defendants' participation in the alleged conspiracy. *Cf. Rosenbaum v. White*, 692 F.3d 593, 606 (7th Cir. 2012) (noting that civil conspiracy claim against lawyers could not stand, under Indiana law, which defines a conspiracy with the same terms as Illinois law, because "[t]here is no evidence that, nor do the plaintiffs contend that, the substance of the work that [the alleged co-conspirator] hired the [defendant attorneys] to perform was unlawful"). The Court denies the Mack Defendants' motion as to the civil conspiracy claim.

        4. **Conversion**

The Mack Defendants also argue that Plaintiffs have no stand-alone claim against the Mack Defendants for conversion. Plaintiffs concede that in light of the Court's prior rulings, "the Mack Defendants may not be individually liable for conversion." Doc. 185 at 20. Instead, they ask to pursue their conversion claim against the Mack Defendants as part of their civil

conspiracy claim.  As discussed, Plaintiffs may pursue their conspiracy theory against the Mack Defendants, but, because Plaintiffs admit they have no stand-alone claim for conversion against the Mack Defendants, the Court dismisses that claim with prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the JGWPT Defendants' motion to dismiss [179] and the Mack Defendants' motion to dismiss [183].  The Court reiterates that Plaintiffs' claims are dismissed with prejudice to the extent the claims rely on allegations that Illinois courts could not hear petitions for approval or that the Illinois courts' orders approving the transactions are void.  The Court dismisses with prejudice Plaintiffs' tortious interference with contract claim and conversion claim against the JGWPT Defendants.  The Court dismisses Plaintiffs' conversion claim against the Mack Defendants with prejudice.  The JGWPT Defendants and the Mack Defendants shall answer the remaining claims in the Third Amended Class Action Complaint by July 14, 2017.

Dated: June 20, 2017

_____
SARA L. ELLIS
United States District Judge