UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VALERIO SANDERS, KENNETH JENNINGS AND KEVIN RINCK, | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | No. 14 C 9188 |
| v. | ) ) | Judge Sara L. Ellis |
| JGWPT HOLDINGS, LLC; J.G. WENTHWORTH LLC; PEACHHI, LLC, PEACH HOLDINGS, INC.; PEACHTREE FINANCIAL SOLUTIONS, LLC; PEACHTREE SETTLEMENT FUNDING LLC; SETTLEMENT FUNDING, LLC D/B/A PEACHTREE SETTLEMENT FUNDING; BRIAN P. MACK; AND THE MACK LAW GROUP, P.C., | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiffs Valerio Sanders, Kenneth Jennings, and Kevin Rinck all were beneficiaries of annuity payments paid to them as part of structured settlement contracts, and they sold the rights to those annuity payments to Defendant Settlement Funding, LLC d/b/a Peachtree Settlement Funding ("Settlement Funding") in "factoring" transactions. Plaintiffs believe that Settlement Funding and Defendants JGWPT Holdings, Inc., JGWPT Holdings, LLC, J.G. Wentworth, LLC, PeachHI, LLC, Peach Holdings, Inc., Peachtree Financial Solutions, LLC, and Peachtree Settlement Funding LLC (collectively with Settlement Funding, the "JGWPT Defendants") and Defendants Brian P. Mack and The Mack Law Group, P.C. (collectively, the "Mack Defendants") conspired to cheat Plaintiffs out of money in the factoring transactions. Settlement Funding moves to compel arbitration of Plaintiffs' claims pursuant to arbitration clauses included in the agreements memorializing the factoring transactions [181]. Because the parties do not

dispute that the arbitration clauses are mandatory and because Plaintiffs fail to establish a defense to arbitration, the Court compels arbitration of Plaintiffs' claims against Settlement Funding. Therefore the Court grants Settlement Funding's motion to compel arbitration and stays Plaintiffs' case against Settlement Funding pending the outcome of the arbitration. Because the Court compels arbitration, the related case of *Settlement Funding, LLC v. Sanders*, No. 14-6266 (N.D. Ill. filed August 14, 2014), is moot, and the Court dismisses it with prejudice.

**BACKGROUND**

Plaintiffs' structured settlement contracts provide periodic payments from annuities to satisfy settlement obligations. Settlement Funding is in the business of purchasing these annuity payments for an amount discounted to present cash value, in a process known as "factoring." Plaintiffs each entered into factoring transactions with Settlement Funding, memorialized in Absolute Assignment and UCC Article 9 Security Agreements (the "Agreements"). Pursuant to the Illinois Structured Settlement Protection Act ("SSPA"), 215 Ill. Comp. Stat. 153/1 *et seq.*, Settlement Funding and Plaintiffs sought court approval orders of each Agreement and factoring transaction. Sanders sold future annuity payments in three Agreements, Jennings sold future annuity payments in two Agreements, and Rinck sold future annuity payments in two Agreements.

Each Agreement contains an arbitration clause that reads:

> ARBITRATION
> Any and all controversies, claims, disputes, rights, interests, suits or causes of action arising out of or relating to this Agreement and the negotiations related thereto, or the breach thereof, shall be settled by binding arbitration administered by the American Arbitration Association. The demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association offices in your state of residence. The arbitration shall be held in the largest city in your state of residence. The arbitration shall be held before a single

2

> arbitrator selected in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect at the time that the demand for arbitration is filed. Discovery, specifically including interrogatories, production of documents and depositions shall be at the discretion of the arbitrator and to the extent permitted shall be conducted in accordance with, and governed by the Federal Rules of Civil Procedure.
>
> \*\*\*
>
> No arbitration arising out of or relating to this Agreement shall include, by consolidation or joinder or in any other manner, an additional person or entity not a party to this Agreement, except by written consent of the parties hereto, containing a specific reference to this Agreement and signed by the entity sought to be joined.
>
> \*\*\*
>
> The award rendered by the arbitrator shall be final, and judgment entered upon it in accordance with applicable law in any court having jurisdiction thereof. Such arbitrator shall identify the substantially prevailing party and shall include legal fees and expenses for the substantially prevailing party.
>
> This provision does not apply to the extent inconsistent with applicable state law regarding the transfer of structured settlement payments. In such case any disputes between the parties will be governed in accordance with the laws of the domicile state of the payee and the domicile state of the payee is the proper venue to bring any cause of action arising out of a breach of the agreement.

Doc. 169-4, Ex. B at 2 (Sanders Agreement); *see also* Doc. 169-6, Ex. B at 2 (Sanders Agreement); Doc. 169-8, Ex. B at 2 (Sanders Agreement); Doc. 169-10, Ex. C at 2 (Jennings Agreement); Doc. 169-11 at 12–13 (Jennings Agreement); Doc. 169-13, Ex. A at 2 (Rinck Agreement); Doc. 169-14, Ex. A at 2 (Rinck Agreement).

Believing he had been defrauded out of money in his factoring transactions with Settlement Funding, Sanders filed suit in St. Clair County, Illinois on February 11, 2014 and then

amended. The JGWPT Defendants removed Sanders' suit to federal district court in the Southern District of Illinois on April 9, 2014.

On May 13, 2014, Settlement Funding filed a motion for extension of time to answer or otherwise plead. Settlement Funding argued that Sanders had included as Defendants entities who had not entered into factoring transactions with Sanders and that Sanders was compromising Settlement Funding's ability to arbitrate disputes arising from Sanders' Agreements. To try to avoid parallel proceedings in arbitration and litigation, Settlement Funding asked the court to defer Settlement Funding's responsive pleading in order to preserve Settlement Funding's right to arbitrate pending the court's ruling on the other JGWPT Defendants' joint motion to dismiss—if the other JGWPT Defendants' motion to dismiss was successful then Settlement Funding would file to compel arbitration; if the other JGWPT Defendants' joint motion to dismiss was unsuccessful, then "Settlement Funding would likely then choose to answer." Doc. 24 at 6. On June 4, 2014, Settlement Funding withdrew its motion for extension of time and filed a motion to compel arbitration. Sanders and new Plaintiffs Jennings, Rinck, Ramon Rosario, and Janeka Hicks then filed a second amended complaint on July 14, 2014.

On August 14, 2014, Settlement Funding filed a petition seeking to arbitrate Sanders, Jennings, and Rinck's claims in the Northern District of Illinois, which was assigned to this Court. In the petition, Settlement Funding alleged that the arbitration clauses in the Agreements required arbitration in Chicago. Settlement Funding then moved on August 15, 2014 to dismiss Sanders, Jennings, and Rinck's claims in the Southern District of Illinois for improper venue based on the arbitration clauses or to transfer Plaintiffs' claims to this District. Settlement Funding also moved to dismiss the claims of Rosario and Hicks, whom Settlement Funding did not believe could arbitrate because they were not bound by similar arbitration clauses. The other

Defendants also moved to dismiss the second amended complaint. Rosario then voluntarily dismissed his claims on October 8, 2014.

On November 13, 2014, the Southern District of Illinois transferred Sanders, Jennings, Rinck, Rosario, and Hicks' case and second amended complaint to the Northern District of Illinois. The Court then found this case related to the petition for arbitration, and this case was reassigned to the Court. After the Seventh Circuit found that the *Rooker-Feldman* doctrine did not bar all of Plaintiffs' claims, the Court ruled on the pending motions to dismiss the second amended complaint, dismissing some of Sanders, Jennings, Rinck, and Hicks' claims with prejudice and allowing amendment of other claims.

Sanders, Jennings, and Rinck filed a third amended complaint on September 2, 2016. Hicks did not participate in the third amended complaint and so is no longer a Plaintiff to the suit. Settlement Funding filed a new motion to compel arbitration in response to the third amended complaint, and the other Defendants' filed motions to dismiss, which the Court granted in part and denied in part, ordering the other Defendants to answer the third amended complaint.

**LEGAL STANDARD**

Congress passed the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, to codify the federal policy favoring the resolution of disputes through arbitration. *Kawasaki Heavy Indus. v. Bombardier Recreational Prods.*, 660 F.3d 988, 994 (7th Cir. 2011). Section 2 of the FAA states that contractual provisions "to settle by arbitration a controversy thereafter arising out of such contract or transaction" are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA requires courts to stay a proceeding and to compel the arbitration of any matter covered by a valid arbitration agreement. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 131 S. Ct.

1740, 179 L. Ed. 2d 742 (2011). A federal court may compel arbitration where there is (1) a written agreement to arbitrate, (2) a dispute within the scope of the agreement, and (3) a refusal to arbitrate by one of the parties to the agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Agreements mandating arbitration are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Contract defenses, such as fraud, duress, and unconscionability, apply to agreements to arbitrate. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010). The party seeking to avoid arbitration bears the burden of establishing why the arbitration agreement should not be enforced. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000).

## ANALYSIS

Settlement Funding argues that the Court must compel arbitration because there is a valid agreement to arbitrate, Plaintiffs' dispute with Settlement Funding falls within the scope of the agreement to arbitrate, and Plaintiffs refuse to arbitrate. Plaintiffs do not dispute that the three necessary elements for arbitration exist. Instead, they argue that the Court cannot compel arbitration because Settlement Funding waived its right to arbitrate, judicial and equitable estoppel preclude arbitration, the arbitration agreement is procedurally and substantively unconscionable, and Settlement Funding's alleged breach of fiduciary duty precludes arbitration. The Court addresses each of Plaintiffs' arguments, in turn.

### I. Applicable Law

But before addressing Plaintiffs' defenses, the Court must first turn to the parties' dispute to determine whether the FAA or the Illinois Uniform Arbitration Act ("IUAA"), 710 Ill. Comp. Stat. 5/1 *et seq.*, controls. Regardless of whether the FAA or the IUAA apply, the outcome

would be the same because the FAA and IUAA are comparable, and Illinois courts look to the FAA when interpreting the IUAA. *See J & K Cement Const., Inc. v. Montalbano Builders, Inc.*, 456 N.E.2d 889, 893, 119 Ill. App. 3d 663, 75 Ill. Dec. 68 (1983) (noting common origins of federal and state acts and traditional reliance on federal decisions interpreting the FAA). Because Illinois looks to the FAA to interpret the IUAA and because the arbitration clause falls within the subject matter of the FAA because the Agreements "evidenc[e] a transaction involving commerce," 9 U.S.C. § 2, where structured settlement contract payment rights were sold in factoring transactions by Illinois residents to a Georgia company, the Court applies the FAA.

## II. Waiver of Right to Arbitrate

Plaintiffs argue that Settlement Funding waived its right to arbitrate. A party can waive the right to arbitrate either explicitly or implicitly. *Kawasaki*, 660 F.3d at 994. For an implicit waiver, "[c]ourts must 'determine whether based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate.'" *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008) (quoting *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004)). "Although a variety of factors may be considered, diligence or a lack thereof should weigh heavily in the court's determination of whether a party implicitly waived its right to arbitrate." *Id.* "Other factors that [are] consider[ed] include whether the allegedly defaulting party participated in litigation, substantially delayed its request for arbitration, or participated in discovery." *Kawasaki*, 660 F.3d at 994.

7

A.  **Participation in Court Proceedings**

First, Plaintiffs argue that Settlement Funding waived its right to arbitrate by substantively participating in proceedings in federal court. Plaintiffs argue that Settlement Funding has repeatedly been involved in litigation as this case has progressed, pointing out that Settlement Funding removed this case to federal court and watched other Defendants move to dismiss Plaintiffs' amended complaints for failure to state a claim. A party does not waive its right to arbitrate simply by removing a case from state court. *See Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1102 (N.D. Ill. 2015) (finding that the defendant did not waive its right to arbitrate by removing its case to federal court and then moving to compel arbitration); *Halim*, 516 F.3d at 562 (finding that the defendant did not waive arbitration after removing case). And Settlement Funding itself has not moved to dismiss Plaintiffs' claims for failure to state a claim, which regardless would not automatically constitute waiver.[1] *See Halim*, 516 F.3d at 562 (noting that a motion to dismiss does not automatically waive arbitration).

But Plaintiffs primarily take issue with Settlement Funding's motion for extension of time where Settlement Funding told the court in the Southern District of Illinois that Settlement Funding wanted time to file a motion to compel arbitration to first see whether or not the other Defendants' arguments could dispose of Plaintiffs' claims. Delaying arbitration to weigh options is frowned upon. *See Cabinetree of Wis. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995) ("That is the worst possible reason for delay."). Settlement Funding's motion for extension of time admitted that Settlement Funding was contemplating whether it wanted to

---

[1] The parties agree that Settlement Funding never moved to dismiss Plaintiffs' claims. Settlement Funding moved to dismiss Hicks' and Rosario's claims, which Settlement Funding admitted were not covered by an agreement to arbitrate. Doc. 67 at1 nn.1–2. Settlement Funding also moved to dismiss Sanders, Jennings, and Rinck's claims for improper venue in order to compel arbitration. Doc. 68. To the extent Plaintiffs seek to hold Settlement Funding accountable for the acts of other JGWPT Defendants, the JGWPT Defendants are all separate legal entities and the Court rejects that contention.

move to compel arbitration based on the court's rulings on other Defendants' motions. The motion for extension of time thus was a clear admission that Settlement Funding was weighing its options.

But Settlement Funding also championed arbitration from the beginning. It consistently told the court, even when filing the motion for extension of time, that it wanted to preserve its right to arbitrate. The motion for extension of time noted that Sanders' joinder of the JGWPT Defendants was making it difficult for Settlement Funding to arbitrate. And Settlement Funding quickly withdrew the motion for extension of time, but did not do so because of any adverse rulings. *Cf. Penn. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2011 WL 210805, at *4 (N.D. Ill. Jan. 20, 2011) (finding waiver after eight-month delay and motion to dismiss that indicated the plaintiff wanted judicial forum until it received unfavorable rulings). It then filed a motion to compel arbitration and motions and petitions in order to be in front of a court with the ability to compel arbitration in Chicago.

All in all, Settlement Funding filed its motion to compel arbitration less than two months after the JGWPT Defendants removed this case to federal court and less than a month after filing its motion for extension of time. It only weighed its options for a short period of time, filing a motion to compel arbitration in this case and a petition for arbitration in a parallel case. And it never took advantage of discovery, a motion to dismiss, or a ruling on another Defendant's motion to dismiss while seeking arbitration. Consequently, the Court finds that Settlement Funding's actions do not constitute waiver.

### B. Prior Waiver of Mandatory Arbitration

Second, Plaintiffs argue that Settlement Funding waived its right to arbitrate by using the judicial process, rather than an arbitrator, to obtain approval of Plaintiffs' factoring transactions.

9

After the parties signed the Agreements, a state court judge approved Plaintiffs' structured settlement transfers, pursuant to the SSPA. Plaintiffs argue that Settlement Funding waived any future right under the Agreements to invoke arbitration by not then using arbitration to approve the transfers.

The Agreements' arbitration clauses state that the parties are to arbitrate "[a]ny and all controversies, claims, disputes, rights interest, suits or causes of action arising out of or relating to [the Agreements] and the negotiations related thereto, or the breach thereof." *See, e.g.*, Doc. 169-4, Ex. B at 2. The arbitration clauses only call for the arbitration of disputes. The factoring transactions were not disputes, so they were not covered by the arbitration clause. Plaintiffs fail to show waiver.[2]

## III. Estoppel

Plaintiffs argue that estoppel precludes Settlement Funding from arbitration because Settlement Funding changed its position about arbitration with courts and with Plaintiffs. Specifically, Plaintiffs complain that Settlement Funding took the position that it would not move for arbitration if the court in the Southern District of Illinois denied some or all of the other Defendants' motions to dismiss and Plaintiffs' case proceeded to discovery. Plaintiffs' theory appears to be an extension of their waiver argument.

### A. Judicial Estoppel

Plaintiffs argue that judicial estoppel precludes arbitration. "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *Matter of*

---

[2] The Court need not resolve whether the arbitration clause also might not be applicable to approvals of factoring transactions because the arbitration clauses exempt their application that is inconsistent with the SSPA and the SSPA mandated court approval of factoring transactions. *See* 215 Ill. Comp. Stat. 153/15.

*Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990).[3] Judicial estoppel applies to positions in different proceedings, transferred cases, and the same case. *Walton v. Bayer Corp.*, 643 F.3d 994, 1002 (7th Cir. 2011). "There are certain clear prerequisites that must obtain before judicial estoppel applies: (1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position." *1st Source Bank v. Neto*, 861 F.3d 607, 612 (7th Cir. 2017) (citation omitted) (internal quotation marks omitted). As discussed when reviewing waiver, Settlement Funding withdrew its motion for extension of time, in which Settlement Funding said it might not file a motion to compel arbitration, and then filed a motion to arbitrate. As a result, Settlement Funding never succeeded in maintaining its first position—this Court and the court in the Southern District of Illinois did not adopt it—and so Settlement Funding cannot be held to that position as a result. Plaintiffs' argument as to judicial estoppel fails.

### B. Equitable Estoppel

Plaintiffs also argue that equitable estoppel applies. "Equitable estoppel applies where: (1) a party has made some misrepresentation or omission of a material fact; (2) that party has knowledge, either actual or implied, that the representations were false at the time that they were made; (3) the other party was not aware that the representations were false both at the time that they were made and the time that they were acted upon; (4) the party making the representations intended or expected the representations to be acted upon; (5) the party to whom the representations were made did in fact rely upon the representations; and (6) the party acting upon

---

[3] Federal and Illinois law are interchangeable on judicial estoppel. *Kale v. Obuchowski*, 985 F.2d 360, 361 (7th Cir. 1993); *Anderson v. Holy See*, 878 F. Supp. 2d 923, 937 n.7 (N.D. Ill. 2012) ("Federal courts apply federal judicial estoppel rules in state law cases, though the Seventh Circuit has used Illinois law and federal law related to judicial estoppel interchangeably because the cases use consistent approaches." (citations omitted)), *aff'd sub nom. Anderson v. Catholic Bishop of Chicago*, 759 F.3d 645 (7th Cir. 2014), and *aff'd sub nom. Anderson v. Catholic Bishop of Chicago*, 759 F.3d 645 (7th Cir. 2014).

11

the representations would be prejudiced unless the party making the representations was estopped." *Dale v. Groebe & Co.*, 431 N.E.2d 1107, 1111, 103 Ill. App. 3d 649, 59 Ill. Dec. 350 (1981).

Plaintiffs argue that Settlement Funding's motion for extension of time led them to believe that Settlement Funding would not assert its right to arbitration. "Under both federal and Illinois law, in order to invoke equitable estoppel, a plaintiff must show not only misconduct by the defendants, but also that he actually and reasonably relied on the misconduct." *Ashafa v. City of Chicago*, 146 F.3d 459, 463 (7th Cir. 1998) (citing *Hamilton v. Komatsu Dresser Indus., Inc.*, 964 F.2d 600, 605 (7th Cir.1992), and *Augustus v. Somers*, 662 N.E.2d 138, 144, 278 Ill. App. 3d 90, 214 Ill. Dec. 784 (1996)). Settlement Funding withdrew its motion for extension of time less than one month after it filed the motion. Settlement Funding then filed a motion to arbitrate. Plaintiffs could not have reasonably relied on the withdrawn motion for extension of time, especially in light of Settlement Funding's subsequent and continuous assertion of its right to arbitrate.

Plaintiffs also argue that immediately after the motion for extension time, they failed to file a motion for default judgment against Settlement Funding in reliance on Settlement Funding's position. First, Sanders was the only Plaintiff at the time; Jennings and Rinck had yet to join the case so they could not have relied on the motion for extension of time. And the party to be estopped must know "at the time he or she made the representations that they were untrue." *Boelkes v. Harlem Consol. Sch. Dist. No. 122*, 842 N.E.2d 790, 797, 363 Ill. App. 3d 551, 299 Ill. Dec. 753 (2006). The motion for extension of time equivocated on whether Settlement Funding would forego its claimed right to arbitration. *See* Doc. 24 at 6 ("Settlement Funding would likely then choose to answer, as well."). The motion for extension of time clearly stated

that Settlement Funding wanted to file a motion to compel arbitration. The motion for extension of time asked for more time for Settlement Funding to determine the best course of action. The Court finds no intent by Settlement Funding to make knowingly untrue statements. Plaintiffs' argument as to equitable estoppel fails.

## IV. Unconscionability

Plaintiffs argue that the arbitration clauses are procedurally and substantively unconscionable and thus invalid under Illinois law. "Unconscionability can be either 'procedural' or 'substantive' or a combination of both." *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622, 222 Ill. 2d 75, 305 Ill. Dec. 15 (2006).

### A. Procedural Unconscionability

Plaintiffs argue that the arbitration clause is procedurally unconscionable. "Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it" and "also takes into account the disparity of bargaining power." *Id.* at 622 (citation omitted); *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 264, 223 Ill. 2d 1, 306 Ill. Dec. 157 (2006). Plaintiffs argue that (1) they did not know that the Agreements were form contracts instead of negotiated by Plaintiffs' representatives, (2) they did not receive the Agreements ahead of time, (3) they had no ability to read the Agreements before they signed, (4) they were never shown the entirety of the Agreements, and (5) the Agreements and their contents were never explained by Settlement Funding or Mack before Plaintiffs signed them. Plaintiffs attack the Agreements as a whole as procedurally unconscionable; they make no argument that only the arbitration agreement is procedurally unconscionable. Because Plaintiffs attack the entirety of their Agreements and how they were presented to Plaintiffs, not just the arbitration clauses in the Agreements, these issues

are better left for the arbitrator than decided by the Court. *See Gore v. Alltell Commn's*, 666 F.3d 1027, 1036–37 (7th Cir. 2012) (holding that issue regarding whether arbitration was procedurally unconscionable "is properly resolved by the arbitrator in the first instance because [the plaintiff] attacks the entire [agreement], not just the arbitration clause itself"). Plaintiffs have failed to show that the arbitration clause itself is procedurally unconscionable and so the Court turns to substantive unconscionability.

### B. Substantive Unconscionability

Substantive unconscionability "concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Kinkel*, 857 N.E.2d at 267 (citation omitted) (internal quotation marks omitted). It is found when contract terms are "so one-sided as to oppress or unfairly surprise an innocent party," when there is an "overall imbalance in the obligations and rights imposed by the bargain," or when there is a "significant cost-price disparity." *Id.* (citation omitted) (internal quotation marks omitted).

Plaintiffs first argue that a "cost-shifting provision" makes the arbitration clause in each Agreement prohibitively unfair. Doc. 204 at 19. Plaintiffs hypothesize that they could end up winning on some claims but remain required to pay the substantially prevailing Settlement Funding's fees and expenses. But Plaintiffs cite no Illinois law that such a bilateral cost-shifting provision is unconscionable, and, further, the cost-shifting provision would apply equally to either side, not just to Plaintiffs. Because Plaintiffs only speculate that the provision would be unfair to them and because speculation is not enough to show unconscionability, *see Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003) ("[T]he party opposing arbitration . . . must provide some individualized evidence that it likely will face prohibitive costs in the arbitration at issue and that it is financially incapable of meeting those costs."), this point fails.

14

Plaintiffs also argue that it is unfair that the arbitration clauses in the Agreements bar Plaintiffs from participating in a judicial proceeding but still allow Settlement Funding to seek court approval of factoring transactions. As discussed when reviewing waiver, the factoring transactions themselves were not covered by the arbitration clauses. Further, Plaintiffs provide no reason why Settlement Funding would not be compelled to arbitrate a dispute covered by the arbitration clause. This point fails as well.

Plaintiffs next argue that the location of arbitration in Illinois' largest city, Chicago, is unfair to Sanders. Rinck and Jennings appear to live in Cook County, Illinois, but Plaintiffs represent that Sanders lives five hours away from Chicago. But Plaintiffs have not shown that Sanders cannot travel that distance, how much it costs to travel that distance, or that Sanders cannot pay to travel. *Cf. Plattner v. Edge Sols., Inc.*, No. 03-CV-2646, 2004 WL 1575557, at *1 (N.D. Ill. Apr. 1, 2004) (finding that arbitration clause was substantively unconscionable because the estimated $1300–$2500 travel costs for plaintiff were prohibitive in light of the plaintiff's financial difficulties). Plaintiffs fail to show that this requirement is unconscionable.

Plaintiffs also challenge the provision in the arbitration clause that prohibits the joinder or addition of any other party other than the parties that signed the Agreement. Both parties interpret the provision as a class action waiver. Class action waivers are valid in arbitrations. *Am. Exp. Co. v. Italian Colors Rest.*, --- U.S. ----, 133 S. Ct. 2304, 2312, 186 L. Ed. 2d 417 (2013) (class action arbitration waiver was not to be ignored in face of costs to plaintiff); *Concepcion*, 563 U.S. at 352 (California law against class action waivers preempted by FAA). Further Plaintiffs' concern is with potential "plaintiffs who may be seeking remedies for small amounts but who will be unable to vindicate them as a result of legal fees, travel fees and arbitration costs." Doc. 204 at 20. But Plaintiffs allege that they and class members are each

15

owed thousands and thousands of dollars by Settlement Funding, not small amounts.  Plaintiffs fail to show unconscionability here.

Finally, Plaintiffs argue that arbitration deprives Plaintiffs of an effective remedy—in arbitration, Plaintiffs will not be able to overturn the state court approvals of their factoring transactions because the arbitrator will have no power to reverse the Illinois courts.  As the Court has already ruled and as Plaintiffs acknowledge in their brief, Plaintiffs have no power to void those state court approval orders in federal court.  Doc. 167 at 13.  Plaintiffs can only seek to void and overturn the state court judgments in state court.  Therefore, by proceeding to arbitration, Plaintiffs would not lose a remedy that they would have in federal court and therefore they would be no worse off in arbitration.  Plaintiffs' last argument for substantive unconscionability fails.

## V.        Breach of Fiduciary Duty

Finally, Plaintiffs argue that the Court cannot compel arbitration because they have alleged in their third amended complaint that Settlement Funding breached its fiduciary duty to them and, therefore, they allege that any agreement with their fiduciaries, including the agreements to arbitrate, are presumed fraudulent.  It is true that "[o]nce a fiduciary relationship is shown to exist, the presumption is that a transaction between the dominant and servient parties which profits the dominant party is fraudulent." *In re Estate of Feinberg*, 6 N.E.3d 310, 323, 2014 IL App (1st) 112219, 379 Ill. Dec. 233 (2014).  But Plaintiffs have only alleged that Settlement Funding breached a fiduciary duty when entering the Agreements; they have not shown that a fiduciary duty existed or that the Agreements are fraudulent.  If Plaintiffs could escape arbitration by merely alleging that a breach of fiduciary duty bound them to the arbitration clause, then every plaintiff seeking to avoid an arbitration clause would allege such a

16

breach of fiduciary duty.  Further, Plaintiffs' argument attacks the entire Agreement for fraud, not just the arbitration clause.  "[F]raud as a defense to enforcement of an arbitration agreement is limited to fraud in the making of the arbitration agreement itself, not fraud in the inducement of the contract as a whole."  *Felland v. Clifton*, No. 10-CV-664-SLC, 2013 WL 3778967, at *5 (W.D. Wis. July 18, 2013).  Plaintiffs thus fail to meet their burden of establishing this defense.

Therefore Plaintiffs fail to demonstrate a defense that precludes arbitration.  Plaintiffs must arbitrate their claims against Settlement Funding, and the claims in this litigation against Settlement Funding will be stayed pending the outcome of the arbitration.  *See Wal-mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 51 F. Supp. 3d 713, 721 & n.1 (N.D. Ill. 2014) (noting that proper course of action is to stay proceedings until resolution of arbitration); *cf. HTG Capital Partners, LLC v. Doe*, No. 15 C 02129, 2016 WL 612861, at *7–8 (N.D. Ill. Feb. 16, 2016) (noting that courts dismiss actions sent to arbitration where all claims are arbitrable and court would have no other role except to confirm arbitration award).

## CONCLUSION

For the foregoing reasons the Court grants Settlement Funding's motion [181] and compels arbitration of Plaintiffs' claims against Settlement Funding.  The Court stays Plaintiffs' claims against Settlement Funding pending resolution of the arbitration.  The Court dismisses related case *Settlement Funding, LLC v. Sanders*, Case No. 14-6266 (N.D. Ill. filed August 14, 2014), as resolved by Case No. 14-9188's transfer to the Northern District of Illinois and the Court's order to compel arbitration as sought in the petition.

Dated: September 27, 2017

SARA L. ELLIS  
United States District Judge